## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SEPRACOR INC.,

            Plaintiff,

v.

DEY, L.P. and DEY, INC.

            Defendants.

C.A. No. 06-113-KAJ

## OPENING BRIEF OF PLAINTIFF SEPRACOR INC. IN SUPPORT OF
## MOTION TO STRIKE THE JURY TRIAL DEMAND
## OF DEFENDANTS DEY, L.P. AND DEY, INC.

OF COUNSEL

Jack M. Stover
Jayson R. Wolfgang
BUCHANAN INGERSOLL & ROONEY PC
One South Market Square
213 Market Street, 3rd Floor
Harrisburg, PA 17101-2121
(717) 237-4800 (Phone)
(717) 233-0852 (Fax)
stoverjm@bipc.com
wolfgangjr@bipc.com

Todd R. Walters
Susan M. Dadio
BUCHANAN INGERSOLL & ROONEY PC
1737 King Street, Suite 500
Alexandria, VA 22314-2727
(703) 836-6620 (Phone)
(703) 836-2021 (Fax)
walterstr@bipc.com
dadiosm@bipc.com

Richard D. Kirk (rk0922)
Ashley B. Stitzer (as3891)
THE BAYARD FIRM
222 Delaware Ave., Suite 900
P.O. Box 25130
Wilmington, DE 19899
(302) 655-5000 (Phone)
(302) 658-6395 (Fax)
rkirk@bayardfirm.com
astitzer@bayardfirm.com

Attorneys for Plaintiff,
SEPRACOR INC.

July 7, 2006

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION/PROCEDURAL HISTORY ...................................................... 1

     A.    Hatch-Waxman Act.................................................................................. 1

     B.    Sepracor's Patents.................................................................................. 2

     C.    Dey's ANDA ......................................................................................... 3

     D.    Sepracor's Hatch-Waxman Action Against Dey ......................................... 3

II.   APPLICABLE LAW ..................................................................................... 4

     A.    Motions To Strike Under Rule 12(f).......................................................... 4

     B.    There is No Right to a Jury Trial in a Statutory Action Under The Hatch-
          Waxman Act ........................................................................................ 4

III.  THERE IS NO RIGHT TO A JURY TRIAL IN THIS ACTION .......................... 7

IV.   CONCLUSION AND REQUESTED RELIEF.................................................. 10

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aventis Pharma Deutschland GmbH v. Cobalt Pharms., Inc.*, 355 F. Supp. 2d 586 (D. Mass. 2005) .................................................................................................. 1, 2

*Biovail Labs., Inc. v. Torpharm, Inc.*, No. 01 C 9008, 2002 WL 1732372 (N.D. Ill. July 25, 2002).................................................................................................... 4, 7

*Brooks Furniture Mfg. v. Dutailier Int'l, Inc.*, 393 F.3d 1378 (Fed. Cir. 2005) ................. 9

*Chauffeurs Local No. 391 v. Terry*, 494 U.S. 558 (1990)) .................................................. 5

*Continental Bank, N.A v. Everett*, No. 90 C 1476, 1994 WL 171660 (N.D. Ill. March 30, 1994).................................................................................................................... 9

*Glaxo Group Ltd. v. Apotex, Inc.*, No. 00 C 5791, 2001 WL 1246628 (N.D. Ill. Oct. 16, 2001)............................................................................................................... 4, 5, 6

*Glaxo, Inc. v. Novopharm Ltd.,* 110 F.3d 1562 (Fed. Cir. 1997)) .................................. 2, 6

*In re Apotex Inc.*, 49 Fed. Appx. 902 (Fed. Cir. 2002)....................................................... 7

*In re Lockwood*, 50 F.3d 966, 969 (Fed. Cir. 1995), *cert. granted*, 515 U.S. 1121, *vacated*, 515 U.S. 1182 (1995) ................................................................................ 5

*In re Tech. Licensing Corp.*, 423 F.3d 1286 (Fed. Cir. 2005) ........................................... 4

*Pfizer Inc. v. Novopharm Ltd.*, No. 00 C 1475, 2001 WL 477163 (N.D. Ill. May 3, 2001) .............................................................................................................. 5

*Sanofi-Synthelabo v. Apotex Inc.*, No. 02 Civ. 2255 RWS, 2002 WL 1917871 (S.D.N.Y. Aug. 20, 2002) ..................................................................................................... 4, 7

*Syntex (U.S.A.) LLC v. Apotex, Inc.*, 407 F.3d 1371, 1375-76 (Fed. Cir. 2005)................ 1

*Tegal Corp. v. Tokyo Electra Am. Inc.*, 257 F.3d 1331 (Fed. Cir. 2001) ........................... 4

*Tull v. United States*, 481 U.S. 412, 417-18 (1987)............................................................. 5

*Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339 (Fed. Cir. 2000) ... 9

**Statutes/Rules**

21 U.S.C. § 355(j)................................................................................................................. 3

21 U.S.C. § 355(j)(2)(A)(vii)(IV) ................................................................................. 1, 2, 3

21 U.S.C. § 355(j)(2)(b)(i)..................................................................................................... 2

21 U.S.C. § 355(j)(2)(C)........................................................................................................ 8

21 U.S.C. § 355(j)(5)(B)(iii) ................................................................................................. 2

35 U.S.C. § 271(e)(1)............................................................................................................. 1

35 U.S.C. § 271(e)(2)......................................................................................................... 2, 6

35 U.S.C. § 271(e)(4)............................................................................................................. 8

35 U.S.C. § 285...................................................................................................................... 8

FDCA § 505(j)(2)(A)(vii)(IV) ............................................................................................... 3

Fed. Cir. R. 47.6..................................................................................................................... 7

Fed. R. Civ. P. 11 ................................................................................................................... 9

Fed. R. Civ. P. 12(f)............................................................................................................... 4

Pub. L. No. 98-417, 98 Stat. 1585 ......................................................................................... 1

This opening brief is filed in support of the motion of Plaintiff Sepracor Inc.

("Sepracor") pursuant to Fed. R. Civ. P. 12(f), for an Order to strike the jury trial demand

of Defendants Dey, L.P., and Dey, Inc. (collectively "Dey").

## I.    INTRODUCTION/PROCEDURAL HISTORY

### A.    Hatch-Waxman Act

This action for patent infringement arises under the Drug Price Competition and

Patent Term Restoration Act of 1984 (the "Hatch-Waxman Act").[1]  Courts have aptly

summarized this unique type of patent infringement action. *See, e.g., Syntex (U.S.A.)*

*LLC v. Apotex, Inc.*, 407 F.3d 1371, 1375-76 (Fed. Cir. 2005); *Aventis Pharma*

*Deutschland GmbH v. Cobalt Pharms., Inc.*, 355 F. Supp. 2d 586, 588-89 (D. Mass.

2005).  Under the Hatch-Waxman Act, a generic drug manufacturer may use patented

drugs for which another manufacturer has already obtained approval from the U.S. Food

and Drug Administration ("FDA") to develop a generic drug and seek approval for its

manufacture and sale. *Aventis*, 355 F. Supp. 2d at 588 (citing 35 U.S.C. § 271(e)(1)).  A

generic manufacturer seeks approval from FDA by filing an Abbreviated New Drug

Application ("ANDA") in which "generic manufacturers must demonstrate that the

proposed generic drug is the bioequivalent of a drug previously approved by the FDA."

*Aventis*, 355 F. Supp. 2d at 588 (citing 21 U.S.C. § 355(j)).

The Hatch-Waxman Act requires that a party submitting an ANDA address any

unexpired patents covering the brand-name drug. *Aventis*, 355 F. Supp. 2d at 588-89

(citing 21 U.S.C. § 355(j)(2)(A)(vii)(IV)).  If an ANDA filer finds any such unexpired

patents, the generic drug company must also include in its ANDA a paragraph IV

---

[1]    Pub. L. No. 98-417, 98 Stat. 1585 (codified at various sections of Titles 21, 35 and 42 U.S.C.).

certification, indicating either that the patents will not be infringed by the manufacture and sale of the generic drug and/or that the existing patents are invalid. *Id.* at 588-89. Filing a paragraph IV certification further requires that the generic drug company notify the patent holder. *Id.* at 589 (citing 21 U.S.C. § 355(j)(2)(b)(i)). "The patent holder then has forty-five days to bring an infringement suit against the ANDA applicant under 35 U.S.C. § 271(e)(2)." *Id.* (citing 21 U.S.C. § 355(j)(5)(B)(iii)) "Because the ordinary ANDA applicant has not yet infringed the patents in any meaningful sense, § 271(e)(2) deems the filing of an ANDA an artificial act of infringement 'sufficient to create case or controversy jurisdiction to enable a court to promptly resolve any dispute concerning infringement and validity.'" *Aventis*, 355 F. Supp. 2d at 589 (footnotes omitted) (citing *Glaxo, Inc. v. Novopharm Ltd.,* 110 F.3d 1562, 1569 (Fed. Cir. 1997)).

It is the responsibility of the district court to ascertain whether the generic drug company's paragraph IV certification is valid or "whether the patent in question is 'invalid or *will not be infringed* by the manufacture, use, or sale of the drug for which the [ANDA] is submitted.'" *Id.* (quoting *Novopharm*, 110 F.3d at 1569) (quoting 21 U.S.C. § 355(j)(2)(A)(vii)(IV)).

### B.    Sepracor's Patents

Sepracor is the owner of the five United States Patents at issue in this case (collectively, the "Sepracor Patents").[2] The Sepracor Patents collectively cover *inter alia* Sepracor's XOPENEX® (levalbuterol hydrochloride) inhalation solutions and FDA approved methods of use thereof.

---

[2]    These include U.S. Patent Nos. 5,362,755, 5,547,994, 5,760,090, 5,844,002 and 6,083,993.

2

C.    **Dey's ANDA**

Dey filed its ANDA No. 77-800 with FDA, allegedly under the provisions of 21 U.S.C. § 355(j), in order to obtain approval to engage in the commercial manufacture, use and sale of generic copies of certain XOPENEX® (levalbuterol hydrochloride) inhalation solutions before the expiration of the Sepracor Patents.

On January 9, 2006, Sepracor received a letter from Dey's counsel notifying Sepracor that Dey had filed its ANDA No. 77-800, and further notifying Sepracor that Dey had filed a paragraph IV certification pursuant to section 505(j)(2)(A)(vii)(IV) of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 355(j)(2)(A)(vii)(IV), directed to the Sepracor Patents. In its letter of January 9, 2006, Dey asserted that its ANDA No. 77-800 contained a certification under 21 U.S.C. § 355(j)(2)(A)(vii)(IV), and that, in Dey's opinion, the Sepracor Patents are invalid, unenforceable and/or not infringed.

D.    **Sepracor's Hatch-Waxman Action Against Dey**

On February 22, 2006, Sepracor initiated this statutory action by filing a Complaint in the United States District Court for the District of Delaware (D.I. 1), thereby timely filing this action within 45 days of receipt of Dey's paragraph IV notice letter. Sepracor's Complaint seeks relief in the form of a declaratory judgment, as well as permanent injunctive relief to prevent Dey from making, using, selling, offering to sell, and/or importing its generic levalbuterol inhalation solutions until after the expiration of the last to expire of the infringed Sepracor Patents.

In response to Sepracor's Complaint, Dey filed its Answer, Counterclaims and Demand for Jury Trial ("Answer") on June 7, 2006 (D.I. 12). In response to Dey's demand for a jury trial, Sepracor respectfully submits the accompanying motion to strike and this opening brief in support of Sepracor's motion to strike.

3

## II.     APPLICABLE LAW

### A.     Motions To Strike Under Rule 12(f)

Rule 12(f) of the Federal Rules of Civil Procedure provides, in pertinent part, as

follows:

> **(f)     Motion to Strike.**  Upon motion made by a party before
> responding to a pleading . . . , the court may order stricken from any
> pleading any insufficient defense or any redundant, immaterial,
> impertinent, or scandalous matter.

Fed. R. Civ. P. 12(f).

### B.     There is No Right to a Jury Trial in a Statutory Action Under The Hatch-Waxman Act

Courts have held that, in the absence of a claim for damages, there is no right to a

jury trial in an action for patent infringement brought under the Hatch-Waxman Act.[3]

*Glaxo Group Ltd. v. Apotex, Inc.*, No. 00 C 5791, 2001 WL 1246628 (N.D. Ill. Oct. 16,

2001) (a copy is attached); *Biovail Labs., Inc. v. Torpharm, Inc.*, No. 01 C 9008, 2002

WL 1732372 (N.D. Ill. July 25, 2002) (a copy is attached); *Sanofi-Synthelabo v. Apotex

Inc.*, No. 02 Civ. 2255 RWS, 2002 WL 1917871 (S.D.N.Y. Aug. 20, 2002) (a copy is

attached).

In *Glaxo Group*, the court began its analysis with the basic premise that "[t]he

Seventh Amendment to the United States Constitution guarantees litigants the right to a

jury trial in suits at common law." *Glaxo Group*, 2001 WL 1246628, at *1.  A "suit at

common law" is one in which "'legal rights are to be ascertained and determined, in

contra distinction to those where equitable rights alone are recognized and equitable

---

[3]     The Federal Circuit has recently affirmed that there is no right to a jury trial in an
action where the patentee only seeks injunctive relief, whether or not there is a claim of
patent invalidity. *In re Tech. Licensing Corp.*, 423 F.3d 1286, 1286-91 (Fed. Cir. 2005);
*see also Tegal Corp. v. Tokyo Electra Am. Inc.*, 257 F.3d 1331, 1339-41 (Fed. Cir. 2001).

4

remedies are administered.'" *Id.* (quoting *Chauffeurs Local No. 391 v. Terry*, 494 U.S.

558, 563 (1990)) (citation omitted).  The court next applied the Supreme Court's two-part

test to determine whether an action involves legal rights or equitable rights: "First, we

compare the statutory action to the 18th Century actions brought in the courts of England

prior to the merger of the courts of law and equity.  Second, we examine the remedy

sought and determine whether it is legal or equitable in nature." *Id.* (quoting *Tull v.

United States*, 481 U.S. 412, 417-18 (1987)) (citation omitted).  Prior to *Glaxo Group*, the

Federal Circuit had addressed the right to jury trial in patent infringement cases, but not

in the specific context of a statutory action brought under the Hatch-Waxman Act.  The

district court therefore looked to the available non-Hatch-Waxman case law, including *In

re Lockwood*, 50 F.3d 966, 969 (Fed. Cir. 1995), *cert. granted*, 515 U.S. 1121, *vacated*,

515 U.S. 1182 (1995),[4] and applied it to the Hatch-Waxman case before it.

    The court in *Glaxo Group* concluded that no right to damages existed because the

defendant had not yet attempted to market or sell the product.  *Glaxo Group*, 2001 WL

1246628, at *4.  The defendant had committed only a "technical" or "artificial" act of

infringement by submitting an ANDA to the FDA; thus, the plaintiff's claims under §

271(e)(2)(A) were premised on a statutorily defined act of infringement intended by

Congress "to provide patentees with a defined act of infringement sufficient to create case

or controversy jurisdiction to enable the court to resolve any dispute concerning

---

[4]    *In re Lockwood* did not involve an action brought under the Hatch-Waxman Act,
but did involve a detailed analysis of the difference between legal and equitable remedies
in patent infringement cases.  Although the Supreme Court vacated the decision in
*Lockwood*, it did so after Lockwood withdrew its jury demand.  Nonetheless, *Lockwood*
is still considered "persuasive as a 'source of guidance' and as an indication of the Federal
Circuit's likely position on the Seventh Amendment question." *Pfizer Inc. v. Novopharm
Ltd.*, No. 00 C 1475, 2001 WL 477163, at *3 (N.D. Ill. May 3, 2001) (a copy is attached).

infringement and validity promptly." *Id.* (citing *Glaxo, Inc. v. Novopharm, Ltd.*, 110

F.3d 1562, 1569 (Fed. Cir. 1997)). Plaintiff would only be entitled to damages under §

271(e)(4) if the defendant had already engaged in the commercial manufacture, use or

sale of the drug without FDA approval. *Glaxo Group*, 2001 WL 1246628,

at *4.

After recognizing the statutory limitations on the remedies available to the

plaintiff, the court turned its attention to the counterclaims for declaratory judgment of

invalidity and non-infringement raised by the defendant. Like the instant action, it was

the defendant, and not the plaintiff, that sought a jury trial on all issues. Because of the

statutory nature of the action, the court concluded, it does not make a difference which

party requests a jury trial. Following *Pfizer*, a Hatch-Waxman case in which the

defendant requested a jury trial on its affirmative defense of invalidity, the district court

reasoned that "even under the non-precedential *Lockwood* analysis, the parties are not

entitled to a jury trial in an infringement action of this sort." *Glaxo Group*, 2001 WL

1246628, at *5. The "sort" of action involved was "a controversy of recent vintage

created by Congress for the specific purpose of posturing drug patent claims for

adjudication *before* actual infringement occurs. As such, it is inherently equitable, and

the remedies are limited accordingly." *Id.* (quoting *Pfizer*, 2001 WL 477163, at *3)

(emphasis in original).

The district court then applied the same rationale to the counterclaims of

invalidity and non-infringement asserted by the defendant:

> This court agrees with the analysis in *Pfizer* that an action brought
> pursuant to § 271(e)(2) is inherently equitable in nature, and that the
> remedies are limited accordingly. Therefore, . . . both prongs of the *Tull*
> test point to equity, *and neither plaintiff nor defendant is entitled to a jury*

6

*on any of the issues raised in this case.* The mere fact that invalidity has
been raised in a counterclaim rather than in an affirmative defense does
nothing to change this characterization.

*Id.* (emphasis added). The district court therefore granted plaintiff's motion to strike the

defendant's jury demand.[5]

Other courts have reached similar conclusions. *See, e.g., Biovail Labs., supra*

(granting defendant's motion to strike plaintiff's jury demand in a Hatch-Waxman case);

*Sanofi-Synthelabo, supra* (granting defendant's motion to strike plaintiff's demand for

jury trial on defendant's counterclaims seeking declaratory judgment of invalidity and

non-infringement).

## III.   THERE IS NO RIGHT TO A JURY TRIAL IN THIS ACTION

Like *Glaxo Group* and the other cases cited above, there are no claims for

damages in this action. *See* Sepracor's Complaint; Dey's Answer. Sepracor seeks relief

in the form of a declaratory judgment, as well as permanent injunctive relief to prevent

Dey from making, using, selling, offering to sell or importing its generic levalbuterol

inhalation solutions until after the expiration of the last to expire of the infringed

Sepracor Patents. The declaratory and injunctive relief sought by Sepracor is inherently

equitable, not legal. This is because the Hatch-Waxman Act prohibits a claim for

damages except where the generic defendant has already engaged in the commercial

---

[5]     The defendant in *Glaxo Group* petitioned the Federal Circuit for a writ of
mandamus directing the district court to vacate its order granting plaintiff's motion to
strike. Recognizing the persuasive, albeit non-binding *Lockwood*, the Federal Circuit
agreed with the district court that because the defendant had not yet marketed any
infringing products, the nature of the remedy was equitable and no right to a jury trial
exists "where the nature of the underlying controversy is entirely equitable." *In re Apotex
Inc.*, 49 Fed. Appx. 902, 903 (Fed. Cir. 2002). Thus, the Federal Circuit denied the
defendant's petition for a writ of mandamus, thereby affirming the district court's decision
to strike the defendant's jury demand. That decision, however, is not citable as precedent
pursuant to Fed. Cir. R. 47.6.

manufacture, use or sale of the drug without FDA approval. 35 U.S.C. § 271(e)(4).

Indeed, Dey avers in its Answer that, at this time, "Sepracor is not entitled to damages . . .

." Dey's Answer at ¶38.

Likewise, the counterclaims asserted by Dey in this action involve purely

equitable, and not legal, remedies, as they arise only by virtue of the action filed by

Sepracor. Like Sepracor's claims against Dey, Dey's counterclaims against Sepracor arise

only out of the Hatch-Waxman Act, which expressly prohibits a generic drug company

from asserting a claim for declaratory judgment, except as a counterclaim in an action

brought by the patentee within the 45 day period. 21 U.S.C. § 355(j)(2)(C).

Further, there is no indication, and it is not alleged, that Dey has yet engaged in

the commercial manufacture, use, offer of sale or sale of a generic version of Sepracor's

XOPENEX®. The Sepracor Patents have not yet been infringed in the traditional, non-

Hatch-Waxman sense; rather, this is an anticipatory action for patent infringement which

is uniquely a creature of statute. Because there has been no commercial manufacture, use

or sale, there is no claim for damages. Dey does not assert any claim for damages in its

counterclaims because it has none. Therefore, the only remedies available, to either party

are equitable. Accordingly, there is no right to a jury trial under the Seventh

Amendment.

Finally, neither party's claim for attorneys fees under 35 U.S.C. § 285 changes the

outcome of this analysis. Under Section 285, "[t]he court in exceptional cases may award

reasonable attorney's fees to the prevailing party." 35 U.S.C. § 285. An "exceptional

case" has been described as one where "there has been some material inappropriate

conduct related to the matter in litigation, such as willful infringement, fraud or

8

inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions." *Brooks Furniture Mfg. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005); *see also Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1346 (Fed. Cir. 2000) (holding that "a baseless and 'wholly unjustified' paragraph IV certification in an ANDA filing, when combined with litigation misconduct, warranted an exceptional case finding."). The plain language of Section 285 permits a *court* to award attorney's fees in an exceptional case. To the extent this is an "exceptional case," due to willful infringement or otherwise, a claim for attorneys' fees by either party arises only by virtue of the statutory action for declaratory and injunctive relief. The statutory remedy of attorney's fees does not convert the nature of this action from equitable to legal. "*[T]he remedy of attorneys, [sic] fees was available to both the courts of law and equity prior to 1791, creating the inference that the remedy does not involve legal rights. Given that the awarding of attorney's fees was left to the judge in courts of law,* the nature of the remedy must be described as equitable as well." *Continental Bank, N.A v. Everett*, No. 90 C 1476, 1994 WL 171660, at *3 (N.D. Ill. March 30, 1994) (citations omitted) (emphasis original) (a copy is attached). "The fact that the relief sought . . . will take the form of a monetary judgment does not necessarily make the remedy 'legal. Instead, it is the context of the legal action in which the remedy is sought which determines its legal or equitable nature.'" *Id.* The remedies here are purely equitable; a demand or prayer for an award of attorneys' fees does not alter this conclusion.

9

IV.    **CONCLUSION AND REQUESTED RELIEF**

For the foregoing reasons, Plaintiff Sepracor Inc. respectfully requests that this

Court grant its Motion to Strike the Jury Trial Demand of Defendants Dey, L.P. and Dey,

Inc.

July 7, 2006                                    THE BAYARD FIRM

                                                /s/ Richard D. Kirk (rk0922)
                                                Richard D. Kirk (rk0922)
                                                Ashley B. Stitzer (as3891)
                                                222 Delaware Avenue, Suite 900
                                                P.O. Box 25130
                                                Wilmington, DE 19899-5130
                                                (302) 655-5000
                                                rkirk@bayardfirm.com

                                                Attorneys for Plaintiff,
                                                SEPRACOR INC.

OF COUNSEL:

Jack M. Stover
Jayson R. Wolfgang
BUCHANAN INGERSOLL & ROONEY PC
One South Market Square
213 Market Street, 3rd Floor
Harrisburg, PA 17101-2121
(717) 237-4800 (Phone)
(717) 233-0852 (Facsimile)
stoverjm@bipc.com
wolfgangjr@bipc.com

Todd R. Walters
Susan M. Dadio
BUCHANAN INGERSOLL & ROONEY PC
1737 King Street, Suite 500
Alexandria, VA 22314-2727
(703) 836-6620 (Phone)
(703) 836-2021 (Facsimile)
walterstr@bipc.com
dadiosm@bipc.com

**UNREPORTED CASE LAW**

Westlaw.

Not Reported in F.Supp.2d                                                                                    Page 1
Not Reported in F.Supp.2d, 2002 WL 1917871 (S.D.N.Y.), 64 U.S.P.Q.2d 1684
**(Cite as: Not Reported in F.Supp.2d)**

H

Briefs and Other Related Documents

United States District Court, S.D. New York.
SANOFI-SYNTHELABO, Sanofi-Synthelabo Inc.,
and Bristol-Myers Squibb Sanofi Pharmaceuticals
Holding Partnership, Plaintiffs,
v.
APOTEX INC. and Apotex Corp., Defendants.
**No. 02 Civ.2255 RWS.**

Aug. 20, 2002.

Holder and licensee of patents sued alleged
infringers. On a defense motion to strike the
plaintiffs' jury demand, the District Court, Sweet, J.,
held that there was no right to a jury trial on
counterclaims seeking a declaration of non-
infringement or invalidity.

Motion granted.

West Headnotes

**[1] Jury 230 ⇒14(12.5)**

230 Jury
    230II Right to Trial by Jury
        230k14 Particular Actions and Proceedings
            230k14(12.5) k. Declaratory Judgment
Cases. Most Cited Cases
In a patent infringement suit, there was no right to a
jury trial on counterclaims seeking a declaration of
non-infringement or invalidity in the absence of any
issue of past infringement for which damages could
conceivably be recovered. U.S.C.A. Const. Amend.
VII; 35 U.S.C.A. § 271(e)(2); Fed.R.Civ.P. 39(a).

**[2] Jury 230 ⇒25(11)**

230 Jury
    230II Right to Trial by Jury
        230k25 Demand for Jury
            230k25(11) k. Determination of Right. Most
Cited Cases
Defense motion to strike plaintiffs' jury demand
premised on counterclaims seeking a declaration of
non-infringement or invalidity was not premature,
despite possibility that damages might be incurred at
some future time; if the possibility of damages came
about, plaintiffs could request leave to file an

amended complaint with a jury demand. 35 U.S.C.A.
§ 271(e)(4)(C).

**Patents 291 ⇒328(2)**

291 Patents
    291XIII Decisions on the Validity, Construction,
and Infringement of Particular Patents
        291k328 Patents Enumerated
            291k328(2) k. Original Utility. Most Cited
Cases
4,847,265, 5,576,328. Cited.

Fitzpatrick, Cella, Harper & Scinto, New York, NY,
By: Robert L. Baechtold, Thomas H. Beck, Cravath,
Swaine & Moore, New York, NY, By: Evan R.
Chesler, Richard J. Stark, for Plaintiffs, of counsel.
Amster, Rothstein & Ebenstein, New York, NY, By:
Anthony F. LoCicero, Caesar, Rivise, Bernstein,
Cohen & Pokotilow, Philadelphia, PA, By: Alan H.
Bernstein, Robert J. Silver, William J. Castillo, for
Defendants, of counsel.

                              *OPINION*
SWEET, J.
*1 Defendants Apotex Inc. and Apotex Corp.
(collectively "Apotex") have moved to strike the jury
demand of plaintiffs Sanofi-Synthelabo, Sanofi-
Synthelabo Inc. and Bristol-Myers Squibb ("BMS")
Sanofi Pharmaceuticals Holdings Partnership (the
"Partnership") (collectively "Sanofi") in this patent
infringement action pursuant to 35 U.S.C. §
271(e)(2).

For the following reasons, that motion is granted.

                              *Facts*

                              *Parties*

Sanofi-Synthelabo is a corporation organized and
existing under the laws of France, having its principal
place of business at 174 Avenue de France, Paris,
France. Sanofi-Synthelabo is a global health care
company, whose core therapeutic areas are
cardiovascular disease and thrombosis, diseases of
the central nervous system, cancer and internal
medicine.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                  Page 2
Not Reported in F.Supp.2d, 2002 WL 1917871 (S.D.N.Y.), 64 U.S.P.Q.2d 1684
**(Cite as: Not Reported in F.Supp.2d)**

Sanofi-Synthelabo Inc. is the U.S. subsidiary of Sanofi-Synthelabo, and is a Delaware corporation having commercial headquarters at 90 Park Avenue, New York, New York 10016.

The Partnership is a partnership registered in the State of Delaware, and having a mailing address at P.O. Box 4000, Route 206 and Province Line Road, Princeton, New Jersey 08543. The Partnership is responsible for the marketing and sale of Plavix® in the United States and numerous countries in the Americas and elsewhere.

Apotex Inc. is a Canadian corporation having its principal place of business at 150 Signet Drive, Toronto, Canada M9L 1T9.

Apotex Corp. is a corporation incorporated under the laws of the State of Delaware, and has its sales and marketing headquarters in Weston, Florida.

*Background*

Sanofi-Synthelabo Inc. holds approved new drug application ("NDA") 20-839 for Plavix® , the active ingredient in which is clopidogrel bisulfate and which is indicated for the reduction of atherosclerotic events (myocardial infarction, stroke and vascular death) in patients with atherosclerosis documented by recent stroke, recent myocardial infarction, or established peripheral arterial disease. The FDA approved Plavix® on February 17, 1997.

Sanofi-Synthelabo is the owner of U.S. Patent No. 4,847,265 (the "265 Patent") and No. 5,576,328 (the "328 Patent"). The 265 Patent discloses and claims clopidogrel, clopidogrel bisulfate, other salts of clopidogrel, and pharmaceutical compositions containing those compounds. The 265 Patent was issued on July 11, 1989, and is exclusively licensed to the Partnership. The 328 Patent discloses and claims among other things a method for the prevention of secondary ischemic events by administering clopidogrel or its salt. The 328 Patent was issued on November 19, 1996, and is exclusively licensed to the Partnership.

Apotex submitted to the FDA an ANDA under the provisions of 21 U.S.C. § 355(j), also known as Section 505(j) of the Food, Drug and Cosmetic Act ("FDCA"), seeking approval to engage in the commercial manufacture, use, and sale of clopidogrel bisulfate tablets prior to the expiration of the 265 and

328 Patents. As part of this application, Apotex included a certification under 21 U.S.C. § 355(j)(2)(vii)(IV) that, in its opinion and to the best of its knowledge, both the 265 and 328 Patents were invalid and/or would not be infringed by the manufacture, use, or sale of its clopidogrel bisulfate formulation.<sup>FN1</sup>

> FN1. Pursuant to Section 505(j)(2)(A) of the FDCA, when an applicant such as Apotex submits an ANDA to the FDA, the applicant must certify one of four things: (1) that such patent information has not been filed by the patentee (a "paragraph I Certification"); (2) that such patent has expired (a "paragraph II Certification"); (3) the date on which the patent will expire (a "paragraph III Certification"); or (4) that such patent is invalid or that it will not be infringed by the manufacture, use or sale of the new drug for which the ANDA is submitted (a "paragraph IV Certification"). 21 U .S.C. § 355(j)(2)(A)(vii). Apotex thus filed a paragraph IV Certification, the purpose of which is to obtain quicker FDA approval as compared with waiting for patent expiration as is the case with a paragraph III Certification. Including a paragraph IV Certification in an ANDA is deemed an act of infringement under the laws of the United States to provide case or controversy jurisdiction to decide the patent issue. 35 U.S.C. § 271(e)(2)(A).

*2 Pursuant to § 271(e)(2) of the Drug Price Competition and Patent Term Restoration Act of 1984, also known as the Waxman-Hatch Act (the "Act"), this ANDA filing provided Sanofi with a constructed artificial act of infringement to create case or controversy jurisdiction. Sanofi filed suit pursuant to the Act on March 21, 2002, and demanded a jury trial on April 5, 2002. Apotex filed an answer and counterclaim on April 9, 2002. The counterclaim seeks a declaratory judgment that the 328 Patent would not be infringed by a product made in accordance with Apotex's ANDA and that the 265 Patent is invalid.

On May 10, 2002, Apotex filed the instant motion. Oral argument was heard on June 19, 2002, and the motion was considered fully submitted at that time.

*Discussion*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 3
Not Reported in F.Supp.2d, 2002 WL 1917871 (S.D.N.Y.), 64 U.S.P.Q.2d 1684
**(Cite as: Not Reported in F.Supp.2d)**

*I. Subject Matter Jurisdiction*

This Court has subject matter jurisdiction pursuant to
28 U.S.C. § § 1331 and 1338(a).

*II. The Legal Standard*

The Federal Rules of Civil Procedure contemplate
that a jury trial will be conducted on all issues
properly triable before a jury once a demand has been
made unless,
(1) the parties or their attorneys of record, by written
stipulation made in open court and entered in the
record, consent to trial by the court sitting without a
jury or (2) the court upon motion or of its own
initiative finds that a right to a trial by jury of some
or all of those issues does not exist under the
Constitution or statutes of the United States.

Fed.R.Civ.P. 39(a).

Sanofi rests its claim to a jury trial on the
Constitution. The Seventh Amendment to the United
States Constitution guarantees the right to trial by
jury only for "[s]uits at common law." U.S. Const.
Amend. VII. The phrase "[s]uits at common law"
refers to "suits in which legal rights [are] to be
ascertained and determined, in contradistinction to
those where equitable rights alone [are] recognized,
and equitable remedies were administered."
*Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 41,
109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) (*quoting
Parsons v. Bedford,* 28 U.S. (3 Pet.) 433, 447, 7
L.Ed. 732 (1830)).

To determine whether a particular action will resolve
legal rights, courts look first to the nature of the
issues involved by comparing the action to the 18th-
century action brought in the courts of England prior
to the merger of the courts of law and equity, and
second to the nature of the remedy sought. *German
v. Connecticut Nat'l Bank,* 988 F.2d 1323, 1328 (2d
Cir.1993) (citing *Granfinanciera,* 492 U.S. at 42).
The second stage of this analysis is more important
than the first. *Granfinanciera,* 492 U.S. at 42.

*III. The Right to a Jury Trial on Counterclaims of
Patent Invalidity and Non-Infringement in Cases
Brought Pursuant to § 271(e)(2)*

There is no question that Sanofi has no right to a jury

trial on its claims pursuant to § 271(e)(2), and Sanofi
does not so assert. *E.g., Warner-Lambert Co. v.
Purepac Pharmaceutical Co.,* 2001 WL 883232
(D.N.J. March 30, 2001) ("[Plaintiff] could not obtain
a jury trial on its § 271(e) claims, which are
equitable in nature."); *Pfizer Inc. v. Novopharm Ltd.,*
2001 WL 477163, at *5 (N.D.Ill. May 3, 2001)
("[Plaintiff] admittedly has no right to a jury trial on
its equitable claims for relief under § 271(e)(2).").

**\*3** [1] Sanofi does, however, claim that it is entitled
to a jury trial on Apotex's counterclaims seeking a
declaratory judgment of invalidity and non-
infringement. Although a handful of district courts
have addressed the topic, the Federal Circuit [FN2] has
not yet addressed the issue of a right to a jury trial
where such counter-claims arise in Waxman-Hatch
cases brought pursuant to § 271(e)(2). Brian D.
Coggio & Timothy E. DeMasi, The Right to a Jury
Trial Under the Waxman-Hatch Act-The Question
Revisited and Resolved, 57 Food & Drug L.J. 155,
158 (2002). As a result, Sanofi relies on Federal
Circuit cases involving patent infringement suits
brought pursuant to a different section than the one at
issue here, § 271(a). *Tegal Corp. v. Tokyo Electron
America, Inc.,* 25 F.3d 1331 (Fed.Cir.2001), *cert.
denied* 122 S.Ct. 1297 (2002); *In re SGS-Thomson
Microelectronics,* 60 F.3d 839 (Fed.Cir.1995)
(unpublished); [FN3] *In re Lockwood,* 50 F.3d 966
(Fed.Cir.), *cert. granted,* 515 U.S. 1121, 115 S.Ct.
2274, 132 L.Ed.2d 279, *vacated* 515 U.S. 1182, 116
S.Ct. 29, 132 L.Ed.2d 911 (1995) [FN4]

> FN2. Federal Circuit law controls
> substantive and procedural issues that
> pertain to patent law. *Midwest Indus. Inc. v.
> Karavan Trailers, Inc.,* 175 F.3d 1356
> (Fed.Cir.1999).

> FN3. Pursuant to Rule 47.6 of the Federal
> Circuit Rules, this order is not citable as
> precedent. Fed. Cir. R. 47.6.

> FN4. After accepting certiorari in
> *Lockwood,* the Supreme Court later vacated
> the Federal Circuit's opinion without
> comment after Lockwood withdrew the jury
> demand, thereby mooting the issue.
> *American Airlines v. Lockwood,* 515 U.S.
> 1182, 116 S.Ct. 29, 132 L.Ed.2d 911 (1995).
> However, *Lockwood* is still considered
> "persuasive as a 'source of guidance' and as
> an indication of the Federal Circuit's likely
> position on the Seventh Amendment

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1917871 (S.D.N.Y.), 64 U.S.P.Q.2d 1684
(Cite as: Not Reported in F.Supp.2d)

Page 4

question." *Pfizer Inc. v. Novopharm Ltd.,* *2001 WL 477163 (N.D.Ill. May 3, 2001)* (quoting *Christianson v. Colt Indus. Operating Corp.,* 870 F.2d 1292, 1298-99 (7th Cir.1989)); *see also Tegal Corp. v. Tokyo Electron America Inc.,* 257 F.3d 1331 (Fed.Cir.2001) (expressly re-affirming the reasoning of *Lockwood* ).

### A. Federal Circuit Cases

The seminal case involving a right to a jury trial in cases brought pursuant to § 271(a) is *Lockwood* There, the patentee brought suit pursuant to 35 U.S.C. § 271(a), alleging that American Airlines' computerized reservation system infringed two Lockwood patents. *Lockwood,* 50 F.3d at 969. Lockwood sought damages and an injunction and also demanded a jury trial. *Id* American asserted affirmative defenses and counterclaims for declaratory judgments of non-infringement and invalidity. *Id* The district court granted American's motion for summary judgment on the issue of non-infringement, and ordered that the case proceed on American's claim for a declaratory judgment of invalidity. *Id* The district court also struck Lockwood's demand that the issue of invalidity be tried to a jury. *Id*

The Federal Circuit granted Lockwood's petition for a writ of mandamus and directed the district court to reinstate Lockwood's jury demand. *Lockwood,* 50 F.3d at 980. The Court observed that declaratory judgment actions, which did not exist at common law, are only as legal or equitable as the controversies on which they are founded. *Id.* at 973. The Court then determined that the closest eighteenth-century analog to American's claim for declaratory judgment of invalidity was a suit for patent infringement where the affirmative defense of invalidity was pleaded. *Id.* at 974. It was up to the patentee whether such actions would be raised at law or in equity, depending on the patentee's choice of remedy. *Id.* at 976. If the patentee sought damages, the patentee brought an action at law, and the issue of validity would be tried to a jury; if the patentee sought only to enjoin future acts of infringement despite suffering past acts of infringement, the patentee could bring a suit in equity before the bench. *Id* The Court reasoned that it could not, consistent with the Seventh Amendment, deny Lockwood the same choice merely because the validity of his patents was raised in a declaratory judgment counterclaim rather than as an affirmative defense to a claim of infringement by Lockwood. *Id* Therefore,

the Court concluded that Lockwood was entitled to have the factual issues relating to validity tried to a jury. *Id., see also SGS,* 35 U.S.P.Q.2d at 1573 (relying on *Lockwood* and reinstating jury demand). [FN5]

> FN5. In *SGS,* the patentee sued SGS for patent infringement, seeking an injunction to prohibit future infringement. SGS asserted affirmative defenses and counterclaimed for declaratory judgments of non-infringement and invalidity. SGS demanded a jury trial on its counterclaims, which the district court denied. On SGS's petition for a writ of mandamus, the Federal Circuit directed the district court to reinstate SGS's jury demand *SGS,* 35 U.S.P.Q.2d at 1573. Relying on *Lockwood,* the Court reasoned that if SGS had brought an action seeking declaratory judgments of non-infringement or invalidity, either SGS or the patentee would have had a right to a jury trial. *Id* The Court rejected the patentee's argument that it determined whether SGS was entitled to a jury trial by the type of relief that it chose to seek to enforce its patent, because "the court based its decision on the legal nature of the declaratory judgment action, not the nature of the patentee's claim." *Id*

\*4 In describing the eighteenth-century analog, the *Lockwood* Court described the patentees' choices in a situation where they "fac[ed] past acts of infringement" and so could choose either to pursue a legal or equitable remedy. *Lockwood,* 50 F.3d at 976. It is not clear that the analogy holds true where, as in § 271(e)(2) cases, no past infringement has occurred. The *Lockwood* Court's discussion of a Ninth Circuit case, *Shubin v. United States District Court,* 313 F.2d 250 (9th Cir.1963) (striking jury demand), suggests that its rule may not be applicable to instances where there is no infringement, no damages, and therefore no choice as to whether to sue at law or at equity. In *Shubin,* the parties stipulated that infringement had not yet occurred, and therefore the patentee could not have brought a claim for damages. Because the patentee's only remedy was equitable, the Ninth Circuit held that there was no right to a jury on the accused infringer's action for declaratory judgment of invalidity. *Id* at 252. The Federal Circuit stated that, as in *Shubin,* it was focusing on the type of action the patentee could have brought at common law to raise the issues presented in the case. *Lockwood,* 50 F.3d at 977. Because Lockwood, unlike the patentee in

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1917871 (S.D.N.Y.), 64 U.S.P.Q.2d 1684
(Cite as: Not Reported in F.Supp.2d)

*Shubin,* could have sought damages in addition to an injunction, he could have brought an action at law and sought a jury trial.

The Federal Circuit addressed *Lockwood* most recently in *Tegal.* This decision does not, however, clarify what result should follow in the current situation. Tegal, the patentee, sued Tokyo Electron America ("TEA") for patent infringement and sought both damages and injunctive relief and requested a jury. TEA asserted affirmative defenses, but did not file any counterclaims. Six days before trial, Tegal dropped its claim for damages and the district court ordered the trial to proceed without a jury. TEA's motion for reconsideration of the court's order was denied. Following a bench trial, the court found that Tegal's patent was willfully infringed, enforceable and valid.

On appeal, the Federal Circuit affirmed the district court's decision on the jury trial issue, holding that a defendant, asserting only affirmative defenses and no counterclaims, does not have a right to a jury trial when the only remedy sought by the plaintiff-patentee is an injunction. *Tegal,* 257 F.3d at 1341. The Federal Circuit based its analysis on *Lockwood,* finding that the reasoning was still "pertinent." *Id.* Applying the framework described above, the Federal Circuit concluded that because Tegal sought only an injunction, it would have needed, in eighteenth-century England, to bring its case in a court of equity. Because Tegal's sole requested remedy was purely equitable, the Court concluded the neither party had a right to a jury trial. *Id.*

Sanofi cites *Lockwood* and its progeny for the proposition that a patentee or defendant has the right to a jury trial where invalidity is asserted in a counterclaim, even if the plaintiff cannot claim monetary damages. The discussion above reveals that Sanofi's interpretation is too broad. *Lockwood* turns on whether money damages *could* have been, but were not, sought. It is on the basis of this fact that *Lockwood* distinguished the Ninth Circuit case, *Shubin.* Further, the Federal Circuit's most recent analysis of *Lockwood,* in *Tegal,* focused on the fact that Tegal sought only an injunction in determining that a jury trial was not warranted.[FN6] As noted above, these cases did not involve the statutorily constructed cause of action under § 271(e)(2).

> FN6. Sanofi argues that *Tegal* is distinguishable as it involved only affirmative defenses rather than

counterclaims. As a result, there was only one cause of action-the initial one that the plaintiff commenced, that was clearly equitable in nature. Sanofi argues that a counterclaim, on the other hand, initiates another cause of action that, in the case of an action seeking a declaration of invalidity or non-infringement, is always legal in nature regardless of the remedy sought. Even if this argument explains the result in *Tegal,* Sanofi fails to explain the *Lockwood* Court's reading of *Shubin.*

### B. *District Court Opinions*

*5 At least four other districts have addressed the specific topic before this Court. The Northern District of Illinois and the District of Minnesota have both found that there is no right to a jury trial on counterclaims seeking a declaration of non-infringement or invalidity in cases brought pursuant to § 271(e)(2). E.g. *Biovail Labs, Inc. v. Torpharm, Inc.,* No. 01 Civ. 9008 (N.D.Ill. July 23, 2002)[FN7] (*citing Glaxo Group Ltd. v. Apotex, Inc.,* 2001 WL 1246628 (N.D.Ill. Oct.16, 2001); *Pfizer Inc. v. Novopharm Ltd.,* 2001 WL 477163, at *5 (N.D.Ill. May 3, 2001)); *Minnesota Mining v. Alphapharm Pty. Ltd.,* 2002 WL 1352426 (D.Minn. March 20, 2002). The District of New Jersey has held that there is such a right. *Warner-Lambert Co. v. Purepac Pharm. Co.,* 2001 WL 883232 (D.N.J. March 30, 2001) (holding that defendant was entitled to jury trial on counterclaim seeking a declaration of non-infringement, invalidity and unenforceability) (*citing Hoechst Marion Roussel Inc. v. Par Pharm., Inc.,* 39 U.S.P.Q.2d 1363 (D.N.J.1996) (marked not for publication)). Finally, the District of Massachusetts has held in this situation that it would be safer to have a jury trial and not need one than to need a jury trial and not have one. *Zeneca Ltd v Pharmachemie B.V,* 1998 U.S. Dist. LEXIS 21499, at *3-4 (D.Mass.1998) (refusing to strike jury demand because of uncertainty in law and "proceeding with a protracted non-jury trial runs the risk that if the right to a jury trial is sustained on appeal, the whole case would have to be retried").[FN8]

> FN7. By letter dated August 8, 2002, Sanofi attempted to distinguish *Biovail* as it only involved a case of non-infringement rather than patent invalidity. In discussing *Pfizer,* the court stated that "[h]ere, however, Torpharm does not raise the issue of patent invalidity; instead it argues that the patents

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1917871 (S.D.N.Y.), 64 U.S.P.Q.2d 1684
(Cite as: Not Reported in F.Supp.2d)

were not infringed." By this letter, Sanofi appears to argue for the first time that a declaratory judgment regarding patent invalidity merits a jury trial while one regarding non-infringement does not. *Biovail* does not support this argument-in fact it refutes it. After distinguishing *Pfizer,* it nonetheless stated that it "strongly support [s]" the argument that a right to jury trial does not exist in this case. Slip op. at 3. *Biovail* therefore is precedent in support of the finding that there is no right to a jury trial in a case involving either invalidity or non-infringement.

FN8. All three of the cases in opposition to the holding above were decided prior to the Federal Circuit's most recent Seventh Amendment decision, *Tegal*

This Court is in accord with the Northern District of Illinois and the District of Minnesota that no jury trial should attach "[i]n the absence of any issue of past infringement for which damages could conceivably be recovered." *Pfizer*, 2001 WL 477163, at *3.

For instance, in *Glaxo,* the defendant Apotex [FN9] answered the amended complaint with affirmative defenses of invalidity and non-infringement along with counterclaims for the same relief, demanding a jury trial. Glaxo successfully moved to strike the jury demand. The court noted that, unlike in *Lockwood,* "[t]he controversy in the instant case is not the inversion of a traditional infringement lawsuit ... [but] a controversy of recent purpose of posturing drug patent claims for adjudication *before* actual infringement occurs." *Id* at *5 (*citing Pfizer* ). As a result, "it is inherently equitable, and the remedies are limited accordingly." *Id*

FN9. The defendant is related to the present Defendant Apotex.

The district's most recent case, *Biovail,* concludes: "Merely because some patent infringement actions may have been entitled to jury trials does not mean that all patent infringement actions have a right to a jury trial. No activities have yet occurred that would entitle the plaintiffs to damages in the present suit." *Biovail,* Slip Op., at 4.

Commentators who have analyzed the Federal Circuit case law as it relates to counterclaims asserted in Waxman-Hatch cases brought pursuant to §

271(e)(2) have also concluded that a patentee must seek damages in order to be entitled to a jury trial:

*6 [I]n a patent infringement action where the accused infringer does not assert any counterclaims, the parties' right to jury trial will depend on the patentee's requested remedy. If the patentee seeks damages, either party can demand a jury. If, however, the patentee demands only an injunction, neither party has the right to a jury. In an action that includes a request for a declaration of non-infringement or invalidity, asserted as either an original claim or a counterclaim, either party can demand a jury if the patentee sought damages.

Coggio & DeMasi, *supra,* at 158.

Sanofi relies on the District of New Jersey cases in arguing that its jury demand not be stricken. In *Hoechst Marion Roussel Inc. v. Par Pharm., Inc.,* 39 U.S.P.Q.2d 1363 (D.N.J.1996) (marked not for publication), the court cited *Lockwood* and held that a jury trial is permissible in an ANDA case where there is a counterclaim of invalidity:
I conclude that the Federal Circuit would hold that *Lockwood* and *SGS-Thomson* control in the circumstances of this case. Notwithstanding that Hoechst brought this action pursuant to § 271(e)(2) rather than § 271(a), the counterclaim seeks declaratory judgment of non-infringement and invalidity. Par could have sought such relief under § 271(a) had it initiated a declaratory judgment action rather than filing a counterclaim. Under the ruling of *Lockwood* and *SGS-Thomson,* it cannot be deprived of a jury trial.

I conclude that the Federal Circuit would hold that Lockwood and SGS-Thomson control in the circumstances of this case. Notwithstanding that Hoechst brought this action pursuant to § 271(e)(2) rather than § 271(a), the counterclaim seeks declaratory judgment of non-infringement and invalidity. Par could have sought such relief under § 271(a) had it initiated a declaratory judgment action rather than filing a counterclaim. Under the ruling of Lockwood and SGS-Thomson, it cannot be deprived of a jury trial. *Hoechst*, 39 U.S.P.Q.2d at 1365; see also *Warner-Lambert Co. v. Purepac Pharm. Co.,* 2001 WL 883232 (D.N.J. March 20, 2001) (holding that defendant was entitled to jury trial on counterclaim seeking a declaration of non-infringement, invalidity and unenforceability).

While Hoechst and Warner-Lambert hold inappositely from the cases cited above, they are not

binding on this Court. Further, both cases were decided prior to Tegal, and their analysis of Lockwood does not adequately persuade that the analogy employed in Lockwood applies to a counterclaim in a § 271(e)(2) action.

The purpose of the § 271(e)(2) cause of action is to construct a case and controversy where there otherwise would be none in the interests of allowing challenges to patents to proceed prior to the date patents expire. Thus, at this stage, Sanofi does not have the same "choice" with which Lockwood hypothetically was presented: to proceed in equity or at law. If Sanofi were to file a suit for patent infringement now, it could only seek to prevent future infringement - an indisputably equitable remedy. As a result, it is held that there is no right to a jury trial on counterclaims seeking a declaration of non-infringement or invalidity in a case commenced pursuant to § 271(e)(2) in the absence of actual damages.

### IV. The Motion Is Not Premature

[2] Sanofi urges the Court to deny the motion as premature, suggesting that damages might be incurred at some future time.

Pursuant to § 271(e)(4)(C), "damages or other monetary relief may be awarded against an infringer only if there has been a commercial manufacture, use, offer to sell, or sale within the United States or importation into the United States of an approved drug." 35 U.S.C. § 271(e)(4)(C). Apotex has not yet engaged in such activities.

It is, of course, possible that Apotex will engage in such activities prior to the resolution of this case. Under the relevant statutes, the FDA must suspend approval of Apotex's ANDA for a maximum of thirty months, or until the court rules. 21 U.S.C. § 335(j)(4)(B)(iii)(I)-(III). If a trial takes place after thirty months have expired, the ANDA may be approved prior to trial. Should this action go to trial after the thirty-month period has elapsed and Apotex has started to manufacture, market or sell clopidogrel bisulfate, the possibility of damages would then exist. If that situation arises, Sanofi can request leave to file an amended complaint with a jury demand. *Biovail,* slip op. at 5 (granting permission to file amended complaint with jury demand if prior to trial defendant engaged in manufacture, use, sale or offer of sale of subject of disputed ANDA); *see also Minnesota Mining,* 2002 WL 1352426, at *3 (denying motion to strike jury where plaintiff moved two weeks after defendant began to engage in manufacture, use, sale or offer of sale of drug, and "this case has transformed into a typical patent infringement case involving both legal and equitable claims").

### *Conclusion*

*7 For the foregoing reasons, Apotex's motion to strike is granted. Sanofi has leave to file a motion to amend its complaint to include a jury demand prior to trial if damages should be incurred as discussed above.

It is so ordered.

S.D.N.Y.,2002.
Sanofi-Synthelabo v. Apotex, Inc.
Not Reported in F.Supp.2d, 2002 WL 1917871 (S.D.N.Y.), 64 U.S.P.Q.2d 1684

Briefs and Other Related Documents (Back to top)

• 1:02cv02255 (Docket) (Mar. 21, 2002)

END OF DOCUMENT



Not Reported in F.Supp.
Not Reported in F.Supp., 1994 WL 171660 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
CONTINENTAL BANK, N.A., Plaintiff,
v.
Robinson EVERETT, Katherine Everett, and J.H.
Froelich, Defendants.
**No. 90 C 1476.**

March 30, 1994.

MEMORANDUM OPINION AND ORDER
NORDBERG, District Judge.

STATEMENT OF FACTS

**\*1** Defendants are shareholders of Guilford
Telecasters, Inc. ("Guilford"), and guarantors of a
$4.2 million loan made to Guilford by plaintiff,
Continental Bank. Guilford has undergone Chapter
11 reorganization in the Middle District of North
Carolina Bankruptcy Court, and all payments to be
made to plaintiff under its reorganization plan have
been made. Meanwhile, in this district, plaintiffs
were found to be entitled to costs and attorneys fees
incurred in connection with the enforcement of the
guarantees, the amount of which could be determined
in a post-judgment proceeding. _Continental Bank
N.A. v. Everett_, 768 F.Supp. 246, 247-48 (N.D. Ill
1991). Judgment in favor of plaintiff was affirmed
by the Seventh Circuit, _Continental Bank N.A. v.
Everett_, 964 F.2d 701 (7th Cir.), _cert. denied_, 113
S.Ct. 816 (1992).

During appeal of the judgment, this court referred
plaintiff's petition for costs and fees to Magistrate
Judge Pallmeyer, who transferred the case to
Magistrate Judge Bucklo. The fee petition is in fact
two separate petitions, one for costs and fees incurred
in enforcing defendants' guarantees, and a second,
supplemental petition for costs and fees incurred
since filing of the initial petition. The court is now
in possession of the magistrate judge's report and
recommendation concerning both petitions, and
defendants' objections to it.

ANALYSIS

A petition for attorneys' fees is not one of the
enumerated duties assignable to a magistrate judge
under the statute determining their jurisdiction,
instead falling under the statute's catch all provision
for "such additional duties as are not inconsistent
with the Constitution and laws of the United States."
28 U.S.C. § 636(b)(3). The local rules for this
district do not specifically provide for the referral of
petitions for attorneys' fees either, although such a
matter is within the general grant of authority
provided in Local Rule 1.70(A). Consequently, in
reviewing the report and recommendation, the most
appropriate course of action for the court is to adopt
the standard of review provided for pretrial matters
dispositive of a claim or defense of a party,
Fed.R.Civ.P. 72. 12 Wright & Miller: Federal
Practice and Procedure, § 3076.5, at p. 48 (1993
Pocket Part).

In the case of Rule 72(b) matters, once a timely
objection has been made to the magistrate judge's
report and recommendation, the district court to
whom the case is assigned shall conduct a _de novo_
review upon the record. The court may accept,
reject or modify the recommended decision.
Fed.R.Civ.P. 72(b). The court need not conduct a
new hearing, but must give "fresh consideration to
those issues to which specific objections have been
made." 12 Wright & Miller: Federal Practice and
Procedure, § 3076.8, at p. 57 (1993 Pocket Part).

Defendants' main and, as they might characterize it,
solitary objection to the report and recommendation
at this point is that they are entitled to a jury trial or,
failing that, an evidentiary hearing as to the
reasonableness of plaintiff's attorneys' fees.
Defendants have indicated that their specific
objections to the fee petition thus far have been
"merely suggestive" of the errors they believe it
contains, and that "it is simply impractical to mention
each and every excessive instance." This is certainly
a foreboding statement. However, before that may
be considered, the court must first determine if
defendants are indeed entitled to a jury trial or
evidentiary hearing at all.

I. The Right to a Jury Trial

**\*2** The magistrate judge concluded that defendants

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1994 WL 171660 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.)

Page 2

were not entitled to a jury trial on the issue of attorneys' fees, relying on *A.G. Becker-Kipnis & Co. v. Letterman Commodities,* 553 F.Supp. 118 (N.D. Ill 1982) and *Medcom Holding Co. v. Baxter Travenol Laboratories, Inc.,* Case No. 87 C 9853, 1990 WL 129595 (N.D. Ill. September 5, 1990). These opinions themselves relied on the three factor analysis created by the Supreme Court in *Ross v. Bernhard,* 396 U.S. 531, 538, n. 10 (1970), for determining whether an issue is legal or equitable for purposes of the Seventh Amendment. Decisions subsequent to Ross have modified its analysis, encouraging reexamination of the question.

The Seventh Amendment requires a jury trial for "suits at common law," as of the date of ratification of the Amendment, 1791. However, the phrase "Suits at common law" refers to more than the common-law forms of action recognized in 1791, but all "suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies administered." *Parsons v. Bedford,* 3 Pet. 433, 447, 7 L.Ed. 732 (1830). To determine whether a particular action will resolve legal rights, the court first compares the action to 18th century actions brought in the courts of England prior to the merger of the courts of law and equity. This step seeks an inference from the fact that, prior to 1791, jury trials were customary in suits brought in the English law courts. *Tull v. U.S.,* 481 U.S. 412, 417 (1987). Second, the court examines the nature of the remedy sought, and determines whether it is legal or equitable. *Id.,* at 417-18. The second inquiry is the more important in the court's analysis. *Local 391 v. Terry,* 494 U.S. 558, 110 S.Ct. 1339, 1345 (1990) (citing *Granfinanciera, S.A. V. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 2790 (1989). A third factor cited by the *Ross* court, the practical abilities and limitations of juries, has been relegated to instances where Congress has entrusted the resolution of certain disputes to an administrative agency or specialized court of equity. *Terry,* 110 S.Ct. at 1835, n. 4 (citing *Granfinanciera,* 109 S.Ct. at 2790, n. 4).

The purpose of this test is to determine whether a right to jury trial exists for "actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty." *Granfinanciera,* 109 S.Ct. at 2790. Since the availability of attorneys' fees in certain statutory actions predates the Seventh Amendment, the inquiry appears unnecessary. The

English courts have allowed costs, including attorneys' fees, to the prevailing party in specific statutory-authorized actions for centuries. *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247 (1975) (citing Goodhart, *Costs,* 38 Yale L.J. 849 (1929)). In the courts of law, the determination of costs was left to the judge, as it obviously was to the Chancellor in equity, the only difference being one of subject matter application. *Goodhart,* 38 Yale L.J. at 852-854. Hence, defendants do not appear to have a right to jury trial on the issue of attorneys' fees.

**\*3** This result does not change even if the court chooses to put the two part *Tull* test through its paces. As stated *supra, the remedy of attorneys, fees was available to both the courts of law and equity prior to 1791, creating the inference that the remedy does not involve legal rights.* Given that the awarding of attorneys' fees was left to the judge in the courts of law, the nature of the remedy must be described as equitable as well.

The fact that the relief sought by plaintiff will take the form of a monetary judgment does not necessarily make the remedy "legal." *Terry,* 110 S.Ct. at 1347. Instead, it is the context of the legal action in which the remedy is sought which determines its legal or equitable nature. *See, e g Terry,* 110 S.Ct. at 1348-49 (remedy of backpay is equitable in the context of title VII but legal in the context of an unfair labor practice action under the NLRA). Hence, this case is distinguishable from *Simler v. Conner,* 372 U.S. 221 (1963), in which the court found a right to jury trial in an action by an attorney against his client for past unpaid legal services. For Seventh Amendment purposes there is a distinction between attorneys' fees as the measure of damages in an action in contract and attorneys' fees as a post-judgment remedy to be awarded to the prevailing party. *Becker-Kipnis,* 553 F.Supp. at 123.

### II. The Right to An Evidentiary Hearing

Defendants' right to an evidentiary hearing on the amount of attorneys' fees, before the court if not before a jury, need not be grounded in the Seventh Amendment however. In diversity cases, state law governs the granting of attorneys' fees. *Jackman v. WMAC Investment Corp.,* 809 F.2d 377, 383 (7th Cir.1987). This principle applies not only to the right of a party to attorneys' fees, but to procedures for determining the amount of fees. *See id.,* at 384 (citing to Wisconsin law on sufficiency of evidence

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1994 WL 171660 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.)

of fees). In Illinois, the reasonableness of attorneys, fees is a matter of proof, and the party sought to be charged therewith should be afforded an ample opportunity to cross-examine as to the reasonableness of the amounts claimed, and, if necessary, to present evidence in rebuttal. *6334 N Sheridan Road Condo Association v. Ruehle,* 157 Ill.App.3d 829, 510 N.E.2d 975, 978 (1 Dist.1987); *In re Estate of Palm,* 11 Ill.App.3d 24, 295 N.E.2d 580, 584 (1 Dist 1973); *see also Zick v. Verson Allsteel Press Co.,* 623 F.Supp. 927, 933 (N.D. Ill.1985)

While a hearing on the reasonableness of attorneys' fees is not required, a party contesting an award is entitled to a hearing upon request. *People ex rel. Holland v. DeMichael,* 79 Ill.App.3d 974, 398 N.E.2d 1138, 1143 (1 Dist.1979); *Hogan v. Hogan,* 58 Ill.App.3d 661, 374 N.E.2d 1040, 1045 (1 Dist.1978) However, if there is no request for an evidentiary hearing, an award of attorney's fees otherwise supported by the record cannot be reversed because there was no evidentiary hearing. *People El Rel. Foster v. Louder,* 423 N.E.2d 1272, 1275, 97 Ill.App.3d 1104 (1981).

*4 In the instant case, Defendants did not specifically request an evidentiary hearing before the magistrate judge. On October 28, 1991, Plaintiff filed its first Petition for Costs, Fees and Expenses. Defendants filed their objections to Plaintiff's first petition in December 1991. Although the Defendants asked for a jury trial, they did not request an evidentiary hearing in the event the court denied their request for a jury trial. Neither side requested oral argument, and thus the magistrate judge did not schedule any.

On June 23, 1992, Plaintiff filed a Supplemental Fee Petition. Defendants subsequently filed a second set of objections. Once again, the Defendants did not request an evidentiary hearing and neither party requested oral argument.

The magistrate judge summoned the parties for a hearing on March 25, 1993. The magistrate judge indicated that she was prepared to rule on all but one of the issues raised in the fee petition. The one remaining issue on which the magistrate judge questioned the parties involved whether the Plaintiff had preserved its right to recover fees incurred in the Guilford bankruptcy proceedings. Not until the magistrate judge indicated her approval of most of the items requested in the fee petition did the Defendants mention an evidentiary hearing.

In her Report and Recommendation, the magistrate

judge stated that with respect to the Defendants' belated request for an evidentiary hearing, the Defendants have not raised any specific factual dispute warranting additional investigation. (Report and Recommendation at 5.) Similarly, in their objections to the magistrate judge's Report and Recommendation, the Defendants have not highlighted any specific factual dispute which they raised before the magistrate judge and which they argued warranted additional investigation. [FN1]

Defendants' assertion that the magistrate judge's report and recommendation is replete with findings of fact misses the point. As the Defendants were not entitled to a jury trial on the issue of attorneys' fees and costs and as Defendants did not request an evidentiary hearing in any of their briefs filed with the magistrate judge, the magistrate judge did not err in making findings where the briefs did not indicate any genuine issue of dispute. Although the Defendants now highlight certain factual findings made by the magistrate judge with which they disagree, they do not point to any factual issues which they argued to the magistrate judge warranted additional investigation. In light of this court's conclusion that the Defendants have waived their right to an evidentiary hearing (discussed below), Defendants' instant request to cross-examine various witnesses cannot justify a remand to the magistrate judge for an evidentiary hearing.

The Plaintiffs assert that the Defendants have waived their right to an evidentiary hearing. Defendants argue that their request for a jury trial encompassed a request for an evidentiary hearing and thus, contrary to Plaintiff's assertion, the Defendants have not waived their right to an evidentiary hearing. This court disagrees. The Defendants' request for a jury trial did not inform the court that the Defendants desired an evidentiary hearing if the court found that the Defendants were not entitled to a jury trial on the issue of attorney's fees. The Defendants gave the magistrate judge no indication that she could not decide the various issues regarding attorney's fees based on the briefs, affidavit and other materials submitted by the parties

*5 Defendants argue that the "fundamental tenor of [their] opposition to Continental's fee petitions before the magistrate was that an evidentiary hearing would be necessary to arrive at a definitive assessment of the fee petitions." (Defendants' Reply Brief at 2.) Again, this court disagrees. In their briefing before the magistrate judge, the Defendants asserted that, "[t]he above examples of excessive, unreasonable

Not Reported in F.Supp.
Not Reported in F.Supp., 1994 WL 171660 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

Page 4

and duplicative work done by MB & P are merely suggestive of over 1- 1/2 years of generally excessive legal fees. It is simply impractical to mention each and every excessive instance. Suffice it to say, the above examples suggest that Continental Bank's petition for legal fees should be substantially reduced." (Defendants' Joint objections to Continental Bank's Petition for Costs, Fees and Expenses at 23.) Defendants' assertion clearly does not amount to a request to examine and cross-examine witnesses, and thus did not convey to the magistrate judge that an evidentiary hearing was necessary before she could evaluate the fee petitions. The Defendants' assertion merely suggested that because the Defendants felt it was impractical to outline every instance of excessive fees, they chose to illustrate examples they believed representative.

Defendants argue further that in their briefing before the magistrate, they stated that they did not consent to the magistrate judge presiding over the proceedings and thus requested a transfer to the District court for a trial on the amount of any viable fees or expenses recoverable under the guarantees. *Id* at 33. Specifically, the Defendants requested that the magistrate return "the matter of Continental's Petition for Costs, Fees and Expenses to the district judge for dismissal or disallowance of the items of the claim which are not recoverable as a matter of law or under the provisions of the guarantees, and for trial by jury on the items of fees and expenses potentially recoverable under the guarantees." *Id* Defendants' request indicated that as opposed to the magistrate judge, they wanted the district judge to decide the issues of law and a jury to decide the issues of facts raised by their objection to Continental's Petition For Fees and Costs. However, Defendants' request did not indicate that if the magistrate judge recommended and the district judge confirmed that the Defendants' were not entitled to a jury trial on the issue of fees and costs, neither the magistrate judge nor the District Judge could decide the issues of fact based on the briefs submitted by the parties.

As this court concludes that the Defendants' request for a jury trial is not the equivalent of a request for an evidentiary hearing, this court holds that the Defendants waived their right to an evidentiary hearing. Where the parties do not request an evidentiary hearing and the award of attorneys fees is supported by the record, including detailed supporting affidavits, this court will not reverse an award because there was no evidentiary hearing. A request for attorneys' fees should not result in a second major litigation with its further delays.

*Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983).

### III. Other Matters

**\*6** In addition, there are several objections to the report and recommendation regarding the interpretation of the attorneys' fees provisions of defendants' guarantees which the court may decide without any further evidentiary hearing. First, the court finds that under the language of the guarantees, plaintiff is entitled to attorneys' fees incurred in litigating the two satellite actions brought by defendants in the North Carolina District Court. These actions were 92 CV 0233, a suit seeking to prevent plaintiff from collection default interest from defendants, and 92 CV 0234, a suit seeking to prevent plaintiff from recording its judgment in the North Carolina. The court agrees with plaintiff that litigating these actions, which were brought to forestall enforcing the guarantees against the defendants in whole or in part, was clearly within the scope of the language of the attorneys' fee clause of the guarantees.

It is irrelevant that defendants feel these claims to have been valid, or that they were not brought for an improper motive. It is only relevant that they are within the scope of the language of the guarantees. The fact that one of the defendants, Robinson Everett, has filed an affidavit concerning the contents of these lawsuits does not suddenly make interpretation of the purpose an "issue of fact." What is in the pleadings in these two suits is undisputed. The magistrate judge is perfectly capable of understanding them without holding an evidentiary hearing.

Second, the court finds that awarding plaintiff the fees of its in-house counsel does not constitute improper fee sharing between attorneys and non-attorneys. The language of the guarantees clearly allows recovery of attorneys' fees by attorneys who are employees of plaintiff. For professional responsibility purposes, these persons are attorneys first and employees of plaintiff second. No impermissible fee sharing will occur.

Next, defendants argue that the amount of fees incurred in collecting the amounts of the loan from Guilford Telecasters are collectible in excess of the limits of their individual guarantees. Plaintiff concedes this point, but stresses that, if the defendants have not paid up to their individual caps, then they may be assessed attorneys' fees for the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1994 WL 171660 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

Page 5

collection of the loan amount from Guilford up to that point. Plaintiff is correct. If Guilford Telecasters' debt to plaintiff has been satisfied without resort to defendants, guarantees, and room remains under any of their individual liability caps, attorneys' fees may still be assessed. Absent proof that any of defendants have paid plaintiff up to the limits of their individual guarantees, fees for collection of the loan liability from Guilford may be assessed against them.

Defendants also argue that the magistrate judge's interpretation of "collection" impermissibly entitles plaintiff to recover attorneys' fees for litigating the North Carolina District Court suits and collection of loan amount from Guilford Telecasters. Defendants do not object to the magistrate judge's interpretation of the term "liabilities" to include the amounts owed by Guilford Telecasters, or to the magistrate judge's finding that Guilford's loan agreement includes expenses of enforcement of the obligations of all guarantors. The Seventh Circuit has interpreted similar guaranty language to include attorneys' fees incurred in bankruptcy proceedings. *First Bank Southeast, N.A. v. Predco, Inc.,* 951 F.2d 842, 852 (7th Cir.1992). Defendant's objections on this score have no merit.

\*7 Finally, as plaintiff notes, the court has already commented on the propriety of defendant's argument that plaintiff's conduct during the Chapter 11 proceedings was unduly dilatory to those proceedings. *Continental Bank, N.A. v. Everett,* 760 F.Supp. 713, 724 (N.D. Ill.1991). Consequently, defendants, argument that plaintiffs attorneys, fees incurred in the Chapter 11 proceeding should be reduced fails.

### CONCLUSION

For the foregoing reasons, the court affirms and adopts the magistrate judge's Report and Recommendation. Thus, Continental is awarded $7,557.26 in costs and $792,342.95 in fees.

> FN1. This Court will not address factual disputes not previously raised by the parties before the Magistrate Judge. Fed.R.Civ.P. 72(b); Wright & Miller, 12 *Federal Practice and Procedure* § 3076.8 (1992) (stating the "de novo" determination called for in Rule 72(b) does not mean that the judge must conduct a new hearing, but

simply means that he must give fresh consideration to those issues to which specific objections have been made.)
N.D.Ill.,1994.
Continental Bank, N.A. v. Everett
Not Reported in F.Supp., 1994 WL 171660 (N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 1:90cv01476 (Docket) (Mar. 14, 1990)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2001 WL 477163 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

H
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
PFIZER INC. and Pfizer Technologies Limited,
Plaintiff,
v.
NOVOPHARM LIMITED, Defendant.
**No. 00 C 1475.**

May 3, 2001.

*MEMORANDUM OPINION*
KOCORAS, J.
**\*1** This matter is before the court on the motion of
Defendant Novopharm Limited to strike Plaintiffs'
jury demand. For the reasons set forth below, the
motion is granted.

BACKGROUND

Plaintiffs Pfizer, Inc. and Pfizer Technologies
Limited (collectively, "Pfizer") are the owner and
beneficial owner, respectively, of U.S. Patent No.
4,404,216 (the " '216 patent") for an antifungal
compound known as fluconazole. Pfizer markets
fluconazole under the trade name Diflucan® . In
January of 2000, Defendant Novopharm Limited
("Novopharm") submitted an Abbreviated New Drug
Application (the "ANDA") to the U.S. Food and
Drug Administration in an effort to obtain approval
to engage in the commercial manufacture, use or sale
of fluconazole tablets prior to the expiration of the
'216 patent. The ANDA included a Paragraph IV
Certification containing Novopharm's opinion that
Pfizer's '216 patent was invalid (the "ANDA"). *See*
21 U.S.C. § 355(j)(2)(A)(vii)(IV).

Shortly after it learned that the ANDA and Paragraph
IV Certification had been filed, Pfizer filed this
lawsuit. The complaint alleges a violation of 35
U.S.C. § 271(e)(2), which deems the submission of a
Paragraph IV Certification to be an act of
infringement. Pfizer does not allege that Novopharm
has engaged in the commercial manufacture, use,
offer to sell, or sale within the United States, or
importation into the United States, of its generic
fluconazole product, as would be required for Pfizer

to recover damages under 35 U.S.C. § 271(e)(4). The
only relief Pfizer seeks-and the only relief to which it
is entitled based on the submission of the Paragraph
IV ANDA-is equitable: (1) an order declaring the
'216 patent infringed; (2) an order providing that any
FDA approval of Novopharm's ANDA become
effective after the expiration of the '216 patent; (3) an
injunction against the commercial manufacture, use,
offer for sale, or sale of fluconazole tablets by
Novopharm before the expiration of the '216 patent;
and (4) an award of attorneys fees and costs.
Novopharm answered the complaint, raising the
affirmative defense of invalidity of Pfizer's patent.

The complaint contains a jury demand. Novopharm
has moved to strike the demand based on the purely
equitable nature of Pfizer's claims for relief. Pfizer
counters that by asserting the affirmative defense of
patent invalidity, Novopharm has raised a legal issue
which Pfizer has a Seventh Amendment right to try
before a jury. It has opposed the motion to strike on
this basis.

DISCUSSION

The Seventh Amendment to the United States
Constitution guarantees litigants the right to a jury
trial in "Suits at common law." In determining
whether a statutory cause of action encompasses a
right of trial by jury, we apply the two-prong test set
forth in *Tull v. U.S.,* 481 U.S. 412, 417, 107 S.Ct.
1831 (1987). "First, we compare the statutory action
to 18th-century actions brought in the courts of
England prior to the merger of the courts of law and
equity. Second, we examine the remedy sought and
determine whether it is legal or equitable in nature."
*Id.* at 417-18 (citations omitted).

**\*2** In *In re Lockwood,* 50 F.3d 966 (1995), the
Federal Circuit addressed at length the issue of
whether the plaintiff in a suit for a declaratory
judgment of patent invalidity was entitled to a jury
trial. Patentee Lawrence Lockwood had filed suit
against American Airlines, alleging that the
company's computerized reservation system infringed
his patents relating to self-service terminals and
automatic ticket systems. Lockwood sought both
damages and injunctive relief, and made a timely jury
demand. American counterclaimed for a declaratory
judgment of noninfringement and of invalidity and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

unenforceability of Lockwood's patents. American eventually obtained a dismissal of Lockwood's infringement claims such that the only remaining cause of action was American's counterclaim for a declaratory judgment of invalidity of the patents. American then moved to strike Lockwood's jury demand, and the district court granted its motion.

Lockwood petitioned the Federal Circuit for a writ of mandamus directing the district court to reinstate his jury demand. Applying the *Tull* test, the Court sought "a single historical analog" for an action for a declaratory judgment of invalidity, "taking into consideration the nature of the cause of action and the remedy as two important factors." 50 F.3d at 972, n. 6 (quoting *Tull*, 481 U.S. at 421, n. 6). After examining the history of adjudication of patent validity, the court found this analog in a lawsuit for patent infringement in which the affirmative defense of invalidity has been pled. *Id* at 974. In 18th-century patent infringement actions, the court explained,

[t]he choice of forum and remedy, and thus of the method of trial, was left with the patentee....If the patentee sought only damages, the patentee brought an action at law; in such a case, the defense of invalidity was tried to the jury, assuming that a jury had been demanded. However, if the patentee facing past acts of infringement nevertheless sought *only* to enjoin future acts of infringement, the patentee could only bring a suit in equity, and the defense of invalidity ordinarily would be tried to the bench. Under both English and American jurisprudence, then, it was the patentee who decided in the first instance whether a jury trial on the factual questions relating to validity would be compelled. *Id* at 976 (citations omitted).

In the modern suit for declaratory judgment of invalidity, the court noted, the parties positions are "inverted" such that the patentee, as the defendant, can no longer control the method of trial by varying the relief it seeks. *Id* at 974-75. But because the patentee would historically have had such control, the court held that it could not, "consistent with the Seventh Amendment, deny Lockwood that same choice [of trial method] merely because the validity of his patents comes before the court in a declaratory judgment action for invalidity rather than as a defense in an infringement suit." *Id* at 976. The court therefore granted the plaintiff's petition for a writ of mandamus and directed the district court to reinstate the jury demand.

**\*3** The Supreme Court agreed to review *Lockwood*, but it eventually vacated the Federal Circuit's opinion without comment after Lockwood withdrew its jury demand. *See American Airlines, Inc. v. Lockwood, 116 S.Ct. 29 (1995)*; Barry S. Wilson, *Patent Invalidity and the Seventh Amendment: Is the Jury Out?*, 34 San Diego L.Rev. 1787, 1796 (1997). Thus *Lockwood* is not technically binding on this Court. Nonetheless, in combination with the concordant unpublished opinion in *In re SGS Thomson v. Microelectronics, 60 F.3d 839, reh'g and reh'g en banc denied, 61 F.3d 862, cert denied sub nom International Rectifier v. SGS-Thomson Microelectronics Inc., 116 S.Ct. 336 (1995)*, *Lockwood* is persuasive as a "source of guidance" and as an indication of the Federal Circuit's likely position on the Seventh Amendment question. *Christianson v. Colt Indus. Operating Corp., 870 F.2d 1292, 1298-99, n. 7 (7th Cir.1989)*.

At first blush, *Lockwood* and *SGS-Thomson* appear to support Pfizer's position that patent validity-no matter how raised and in what context-is a legal issue that may be tried to a jury as of right. However, neither Federal Circuit opinion addressed the situation presented in this case: patent invalidity raised only as an affirmative defense to an equitable action brought under 35 U.S.C. § 271(e)(2). Unlike the traditional patent infringement action under 35 U.S.C. § 271(a), which is based on the prior commercial manufacture, use or sale of a patented invention, a 271(e)(2)(A) action is premised solely on the defendant's submission to the FDA of an Abbreviated New Drug Application with a Paragraph IV Certification. The submission of a Paragraph IV ANDA is a "technical" or "artificial" act of infringement which Congress designated as such in order to "provide[ ] patentees with a defined act of infringement sufficient to create case or controversy jurisdiction to enable a court to promptly resolve any dispute concerning infringement and validity." *Glaxo, Inc. v. Novopharm, Ltd., 110 F.3d 1562, 1569 (Fed. Cir1997)*; *see also Bristol-Myers Squibb Co. v. Royce Labs, Inc., 69 F.3d 1130, 1135 (Fed.Cir.1995)*. It is the nature of an infringement action brought under § 271(e)(2)(a) that the allegedly infringing drug has not yet been marketed and therefore the question of infringement focuses on what the ANDA applicant will likely market if its application is approved by the FDA. *Glaxo, 110 F.3d at 1569*. Accordingly, the statute expressly precludes the plaintiff from recovering damages except in the rare situation where the defendant has already engaged in the commercial manufacture, use, or sale of the drug without FDA approval. *See 35 U.S.C. § 271(e)(4)*. There is no

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 477163 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

allegation of prior manufacture, use, or sale of fluconazole by Novopharm in the complaint, and Novopharm has stipulated that such infringement has not occurred. (See Stipulation attached as Exh. 6 to Memorandum in Support of Defendant's Motion, at ¶ ¶ 4-6.) This is therefore a typical § 271(e)(2)(a) action in which "infringement" in the traditional sense has not yet occurred and the patentee is statutorily limited to prospective equitable relief.

*4 Even under the non-precedential *Lockwood* analysis, the parties are not entitled to a jury trial in an infringement action of this sort. *See* Brian D. Coggio and Sandra A. Bresnick, *The Right to a Jury Trial in Actions Under the Hatch-Waxman Act,* 79 J. Pat. & Trademark Off. Soc'y 765, 782-85 (proposing that under prevailing case law a declaratory judgment claim premised solely on the filing of an ANDA is equitable, not legal, and no jury right attaches; *but see Hoechst Marion Roussel v. Par Pharmaceutical Inc.,* 39 U.S.P.Q.2d 1363, 1364-65 (D.N.J.1996) (arriving at opposite conclusion). As the Federal Circuit observed in that case, "declaratory judgment actions are, for Seventh Amendment purposes, only as legal or equitable in nature as the controversies on which they are founded." The controversy in the instant case is not an inversion of a traditional infringement lawsuit as was the declaratory judgment suit in *Lockwood. See* 50 F.3d at 980. Rather, it is a controversy of recent vintage created by Congress for the specific purpose of posturing drug patent claims for adjudication *before* actual infringement occurs. As such, it is inherently equitable, and the remedies are limited accordingly.

This case is therefore more akin to *Shubin v. United States District Court,* 313 F.2d 250 (9th Cir.), *cert denied,* 373 U.S. 936, 83 S.Ct. 1539 (1963) than it is to *Lockwood.* In *Shubin,* the alleged infringer sought a declaratory judgment of invalidity and the defendant patentee counterclaimed, seeking only injunctive relief. The parties later stipulated that no infringement had yet occurred. On these facts, the Ninth Circuit held that the parties had no right to a jury trial, since the only issue to be determined was the patentee's right to injunctive relief against future infringement. *Id* at 251-52. "[T]hreatened infringement," the court held, was not a legal issue. *Id* at 251 (emphasis in original). The *Lockwood* court considered *Shubin* and did not express disapproval of its holding. Rather, it found *Shubin* to be uniquely applicable to the situation where "[t]he patentee's counterclaim for a permanent injunction against future infringement, paired with its stipulation to the absence of any claim for infringement damages,

convinced the court that the issues in the case were purely equitable ones." We face an almost indistinguishable situation here.

Accordingly, we decline to find a Seventh Amendment right to a jury trial in this case. We are of the view that, in an action under § 271(e)(2) predicated solely on the filing of a Paragraph IV ANDA and the likely future infringement that will occur if that ANDA is approved, the issues before the court are purely equitable; the presence of an affirmative defense of invalidity does nothing to change this characterization. For this reason, and because the patentee in such a suit has no right to seek damages (it is limited by statute to only equitable relief), the patentee is not entitled to a jury trial in garden variety § 271(e)(2) infringement claims. *See Tull, supra; see also Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 564 (1990) (right to a jury trial does not extend to suits in equity). We need not be concerned, therefore, that an inversion of the infringement action, in the form of a declaratory judgment claim, will somehow eliminate the patentee's historical choice of trial method. In other words, our holding does not deprive the patentee of a right *it would otherwise have* merely because the alleged infringer has sought declaratory relief. *Cf Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 504, 79 S.Ct. 948 (1959) ("[I]f Beacon would have been entitled to a jury trial in a treble damages suit against Fox it cannot be deprived of that right merely because Fox took advantage of the availability of declaratory relief to sue Beacon first.").

*5 Pfizer admittedly has no right to a jury trial on its equitable claims for relief under § 271(e)(2). In the absence of any issue of past infringement for which damages could conceivably be recovered, we do not believe that Novopharm's invalidity defense alters this result in any way. Accordingly, Pfizer's demand for trial by jury is improper and must be stricken from the complaint.

## CONCLUSION

For the foregoing reasons, Defendant's motion is granted. The jury demand is stricken from the complaint.

N.D.Ill.,2001.
Pfizer Inc. v. Novopharm Ltd.
Not Reported in F.Supp.2d, 2001 WL 477163 (N.D.Ill.)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                              Page 4
Not Reported in F.Supp.2d, 2001 WL 477163 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**


Briefs and Other Related Documents (Back to top)

• 2002 WL 32509967 (Trial Motion, Memorandum
and Affidavit) Reply Memorandum in Further
Support of Plaintiffs' Motion for Summary Judgment
on Novophar's Defense that the Patent in Suit is
Invalid as Anticipated Pursuant to 35 U.S.C. %4F
102 (Jan. 28, 2002)
• 2001 WL 34554249 (Trial Motion, Memorandum
and Affidavit) Memorandum in Support of Plaintiffs'
Motion for Summary Judgment on Novopharm's
Defense that the Patent in Suit is Invalid as
Anticipated Pursuant to 35 U.S.C. %4F 102 (Dec. 26,
2001) Original Image of this Document with
Appendix (PDF)
• 1:00CV01475 (Docket) (Mar. 10, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                Page 1
Not Reported in F.Supp.2d, 2001 WL 1246628 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

▷
<u>Briefs and Other Related Documents</u>
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
GLAXO GROUP LIMITED and SMITHKLINE
BEECHAM CORP., Plaintiffs,
v.
APOTEX, INC., Defendant.
**No. 00 C 5791.**

Oct. 16, 2001

MEMORANDUM OPINION AND ORDER

<u>GETTLEMAN</u>, District J.
*1 Plaintiffs Glaxo Group Ltd. and Smithkline
Beecham Corp. (jointly, "plaintiff") have brought an
anticipatory patent infringement action seeking to
enjoin the defendant Apotex's importation and sale in
the United States of generic cefuroxime axetil tablets
until expiration of plaintiff's patents. Defendant has
answered the amended complaint, raising affirmative
defenses of invalidity and noninfringement, and
asserted a counterclaim seeking declaratory judgment
of invalidity and noninfringement. Defendant has
demanded a jury on all issues. Plaintiff has moved to
strike defendant's jury demand. For the reasons set
forth below, plaintiff's motion is granted.

*Background* <u>FN1</u>

FN1. A complete description of the case can
be found in the court's previous opinion,
*Glaxo Group Ltd. v. Apotex, Inc.*, 130
F.Supp.2d 1006.

Plaintiff is the owner of <u>U.S. Patent Nos. 4,562,181</u>
(the "181 patent") and <u>4,820,833 (the "833 patent")</u>
which cover amorphous cefuroxime axetil, and is the
holder of a New Drug Application ("NDA") for the
antibiotic sulfur cefuroxime axetil tablets, which is
covered by the patents and sold by plaintiff under the
brand name Ceftin.

On April 5, 2000, defendant filed an Abbreviated
New Drug Application ("ANDA") with the Food and
Drug Administration ("FDA"), seeking approval to
market a generic cefuroxime axetil product in the
United States. Plaintiff filed the instant lawsuit five
months later, seeking a declaratory judgment that
defendant's product will infringe <u>the 181 patent</u> and
that defendant's filing of the ANDA infringes <u>the 181
patent</u> under <u>35 U.S.C. § 271(e)(2)</u>. After receiving a
copy of defendant's ANDA through discovery,
plaintiff sought and was granted leave to file an
amended complaint asserting that defendant's
manufacturing process for its proposed generic
version is covered by <u>the 833 patent</u>. Plaintiff seeks a
declaratory judgment of infringement of <u>the 833
patent</u> and an injunction enjoining infringement of
that patent. Neither the original nor the amended
complaint alleges that defendant has or is currently
engaged in the commercial manufacture, use, offer to
sell or sale within the United States or importation
into the United States of its generic sulfur cefuroxime
product as would be required for plaintiff to recover
damages under <u>35 U.S.C. § 271(a)</u> or <u>§ 271(e)(4)</u>.
Thus, the only relief to which plaintiff is entitled is
declaratory and injunctive. Defendant has answered
the amended complaint, asserting affirmative
defenses and counterclaims for a declaration of
invalidity and noninfringement of the two patents.
Defendant seeks a jury on all issues.

*Discussion*

The Seventh Amendment to the United States
Constitution guarantees litigants the right to a jury
trial in suits at common law. Whether a right to a jury
attaches to a particular case turns on whether the case
"is more similar to cases that were tried in courts of
law than to suits tried in courts of equity or
admiralty." <u>Tull v. United States, 481 U.S. 412, 417
(1987)</u>. The phrase "Suits at common law 'refers to
suits in which legal rights are to be ascertained and
determined, in contra distinction to those where
equitable rights alone are recognized and equitable
remedies are administered." ' <u>Chauffeurs, Local No.
391 v. Terry,</u> 494 U.S. 558, 563 (1990) (quoting
<u>Parsons v. Bedford,</u> 3 Pet. 443, 447, 7, 7 L.Ed. 732
(1830)). To determine whether a particular action
will resolve legal rights, the court must examine both
the nature of the issues involved and the remedy
sought. "First, we compare the statutory action to the
18th Century actions brought in the courts of England
prior to the merger of the courts of law and equity.
Second, we examine the remedy sought and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1246628 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

determine whether it is legal or equitable in nature." *Id* (quoting *Tull, 481 U.S. at 417-18*). The second inquiry is the more important in the analysis. *Id*

**\*2** The instant action involves a claim seeking to enjoin a future infringement, and a claim of technical or artificial acts of infringement (submission of an ANDA), in which plaintiff seeks injunctive relief with no claim for damages available. Defendant raises invalidity issues as affirmative defenses and as a counterclaim. Although the Federal Circuit has issued a number of opinions dealing with the right to a jury trial in infringement actions with invalidity defenses, there is no binding precedent comparing the exact issues raised in the instant action with those arising in 18th Century England.

In support of its position that defendant has no right to a jury on its defense and counterclaim of invalidity, plaintiff relies on *Tegal Corp. v. Tokyo Electron America, Inc., 257 F.3d 1331 (Fed.Cir.2001)*, the Federal Circuit's most recent decision on the issue. In *Tegal,* the patentee sued the defendant for patent infringement, seeking injunctive relief and damages. The defendant asserted affirmative defenses including invalidity, but no counterclaim. Six days before trial, the plaintiff dropped its claim for damages with the understanding that it would lose its right to trial by jury. The district court issued an order that the trial would proceed without a jury. The defendant filed a motion to reconsider that order, which was also denied. After a bench trial, the court found that the patents were not invalid, and the defendant had infringed. The defendant appealed a number of rulings, including the denial of its claimed right to a jury.

On appeal, the Federal Circuit described the issue before it as "whether a defendant, asserting only affirmative defenses and no counterclaims, has a right to a jury trial when the only remedy sought by the plaintiff-patentee is an injunction." *Id* at 1339. In reaching its decision that there is no right to a jury under such circumstances, the court applied the two part *Tull* test. In analyzing the first part of the *Tull* inquiry-- an examination of the nature of the action involved-- the court relied on the reasoning in its previous opinion in *In re Lockwood, 50 F.3d 966 (Fed.Cir.1995)*, *vacated*, *515 U.S. 1182 (1995)*, which had been vacated by the Supreme Court, but the reasoning of which the Federal Circuit held remained "pertinent." *Tegal, 257 F.3d at 1340*. After reviewing the *Lockwood* decision, the *Tegal* court concluded that the nature of the plaintiff's action was purely equitable. *Id* at 1341. The *Tegal* court then

stated that little analysis was required for the second and most important prong of the *Tull* test-- the nature of the remedy sought. The plaintiff sought only an injunction. Considering the two prongs, both of which pointed to equity, the *Tegal* court concluded that neither party had a right to a jury. *Id*

In contrast, defendant relies on the reasoning of *In re SGS-Thomson Microelectronics, Inc., 60 F.3d 839 (Fed.Cir.1995)*, an unpublished Federal Circuit opinion, issued after and relying upon *Lockwood,* but before *Tegal,* and of which *Tegal* makes no mention.[FN2] In *SGS-Thomson,* the plaintiff sued the defendant for patent infringement, seeking only equitable relief. The defendant asserted its defenses and counterclaim for declaratory judgment of noninfringement, invalidity and unenforceablity. The defendant demanded a jury trial on the counterclaims. The district court granted the plaintiff's motion to strike the jury demand without explanation. After the Federal Circuit's decision in *Lockwood,* the defendant moved to reconsider, which was again denied. Defendant then petitioned the Federal Circuit for a writ of mandamus. The Federal Circuit held that the defendant had a right to a jury on the counterclaim, concluding that under the *Lockwood* analysis, had defendant initiated the action by bringing suit for a declaration of invalidity, it would have been entitled to a jury. *Id*

> FN2. Federal Circuit Rule 47.6(b) provides that unpublished opinions "must not be employed or cited as precedent."

**\*3** At the heart of the Federal Circuit's decisions in *Tegal* and *SGS-Thomson,* is its vacated opinion in *Lockwood,* in which the plaintiff sued the defendant for patent infringement seeking both damages and injunctive relief. The plaintiff demanded a jury trial. The defendant raised invalidity as an affirmative defense and in a counterclaim for a declaration of noninfringement and invalidity. The court granted the defendant's motion for summary judgment of noninfringement, dismissed the infringement complaint, and then struck the plaintiff's demand that the issue of validity be tried to a jury. The plaintiff sought a writ of mandamus on the jury issue. The Federal Circuit issued the writ initially, holding that "[plaintiff's] underlying claim for infringement and damages is the basis of the action at the district court and the claim for infringement damages and any asserted defenses still exist in the case." *Lockwood, 50 F.3d at 969*.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

On petition for rehearing, the court issued the opinion that has formed the basis of its later opinions in *Tegal* and *SGS-Thomson*. In analyzing the patentee's right to a jury, the *Lockwood* court first determined that an action for declaratory judgment was only as legal and equitable in nature as the controversy on which it was founded. Therefore, because the declaratory judgment action itself is neither legal nor equitable, the historical inquiry required by the Seventh Amendment takes as its object the nature of the underlying controversy. Thus, the court had to "determine how patent validity was adjudicated prior to the merger [of courts of law and equity] and absent the declaratory judgment procedure." *Id* at 973.

In making this determination, the *Lockwood* court first noted that prior to the Declaratory Judgment Act, neither party had available to it a procedure to test the validity of a patent. Instead, a worried party could only wait for the patentee to bring an infringement action and then raise the patent's invalidity as an affirmative defense. "Patent validity simply was not litigated in isolation from an infringement action." *Id* at 974. The court then held that the defendant's counterclaim for invalidity "resembles nothing so much as a suit for patent infringement in which the affirmative defense of invalidity has been pled, and [plaintiff's] right to a jury trial must be determined accordingly." *Id*. The only difference between the defendant's counterclaim and the traditional infringement suit with an invalidity defense that prior to the Declaratory Judgment Act would have been required for an adjudication of invalidity, is that the position of the parties had been inverted. Such an inversion, the court said, could not operate to frustrate the plaintiff's Seventh Amendment rights. *Id*

Therefore, the court proceeded to determine what right to a jury trial the plaintiff "would have enjoyed had the validity of his patents been adjudicated in a suit for patent infringement according to 18th Century English practice," explaining, *Id* at 976 (citations omitted) (emphasis in original):

\*4 The choice of forum and remedy, and thus the method of trial was left with the patentee. Nineteenth Century American practice followed the same basic pattern. If the patentee sought only damages, the patentee brought an action at law; in such a case the defense of invalidity was tried to the jury, assuming that a jury had been demanded. However, if the patentee facing past acts of infringement nevertheless sought *only* to enjoin future acts of infringement, the patentee could only bring a suit in equity, and the defense of invalidity ordinarily would be tried to the bench. Under both English and American practice, then, it was the patentee who decided in the first instance whether a jury trial on the factual questions relating to validity would be compelled.

The court concluded, therefore, that the plaintiff could not be denied the choice of a jury on the validity issue simply because the case came before the court as a declaratory judgment action for invalidity rather than as a defense in an infringement action. *Id*

At first glance, *Lockwood* and *SGS-Thomson* would appear to support the position that patent validity, no matter how it is raised, is a legal issue that entitles either party to a jury. Because the later holding in *Tegal* refutes that position, however, defendant argues that it is entitled to a jury because it has raised invalidity in a counterclaim rather than solely in an affirmative defense as in *Tegal*. The unpublished opinion in *SGS-Thomson* appears to support this argument, but is of non precedential value. Federal Circuit Rule 47.6(b). Moreover, *Lockwood* clearly holds that the manner in which the issue comes before the court is not controlling, and that inversion of the parties cannot act to deny the patentee the choice.

In any event, neither *Lockwood, SGS-Thomson,* nor *Tegal* squarely addressed the issue before this court, because in each of those cases the patentee had a claim for damages, meaning that in 18th Century England the infringement suit could have been brought in a court of law. In the instant action, plaintiff can bring no claim for damages for infringement because defendant has not yet marketed or sold its product. Moreover, plaintiff's claim under § 271(e)(2)(A) is premised solely on defendant's submission of an ANDA to the FDA, which is considered a "technical" or "artificial" act of infringement that Congress created to provide patentees with a defined act of infringement sufficient to create case or controversy jurisdiction to enable a court to resolve any dispute concerning infringement and validity promptly. *Glaxo, Inc. v. Novopharm, Ltd.,* 110 F.3d 1562, 1569 (Fed.Cir.1997). The statute expressly precludes a plaintiff from recovering damages unless the defendant has already engaged in the commercial manufacture, use or sale of the drug without FDA approval. 35 U.S.C. § 271(e)(4).

Despite these obvious differences, at least two district courts have relied on *Lockwood* to hold that a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1246628 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 4

defendant is entitled to a jury on its counterclaim of invalidity when the plaintiff's infringement action was solely for injunctive relief pursuant to § 271(e)(2), because the defendant could have initiated a declaratory judgment for invalidity under § 271(a) rather than filing a counterclaim to the infringement action brought under § 271(e)(2). *Hoechst Marion Roussel, Inc. v. Par Pharmaceutical, Inc.,* 1996 WL 468593 at *3 (D.R.D.1996); *Warner-Lambert Co. v. PurePac Pharmaceutical Co.,* 2001 WL 883232 (N. N.J.2001).

*5 In contrast, in an analogous case not directly on point, Judge Kocoras of this district has held that a plaintiff in an action brought solely pursuant to § 271(e)(2) is not entitled to a jury on the defendant's affirmative defense of invalidity. *Pfizer Inc. v. Novopharm Ltd.,* 2001 WL 477163 (N.D.Ill.2001). After reviewing the relevant case law on the jury issue, as well as actions under § 271(e)(2), Judge Kocoras held that even under the non-precedential *Lockwood* analysis, the parties are not entitled to a jury trial in an infringement action of this sort, stating, *Id* at *3 (emphasis in original):

As the Federal Circuit observed in [*Lockwood*] 'declaratory judgment actions are, for Seventh Amendment purposes, only as legal or equitable in nature as the controversies on which they are founded.' The controversy in the instant case is not the inversion of a traditional infringement lawsuit as was the declaratory judgment suit in *Lockwood.* Rather, it is a controversy of recent vintage created by Congress for the specific purpose of posturing drug patent claims for adjudication *before* actual infringement occurs. As such, it is inherently equitable, and the remedies are limited accordingly.

This court agrees with the analysis in *Pfizer* that an action brought pursuant to § 271(e)(2) is inherently equitable in nature, and that the remedies are limited accordingly. Therefore, as in *Tegal,* both prongs of the *Tull* test point to equity, and neither plaintiff nor defendant is entitled to a jury on any of the issues raised in this case. The mere fact that invalidity has been raised in a counterclaim rather than in an affirmative defense does nothing to change this characterization. Unlike in *Lockwood, SGS-Thomson* or even *Tegal,* plaintiff in the instant action has no ability to bring a legal claim, because defendant has not made, used, offered to sell, or sold a patented invention without authorization in violation of 35 U.S.C. § 271(e). Therefore, this court respectfully disagrees with the statement in *Hoeschst* that the defendant could have instituted its declaratory

judgment action under § 271(a) rather than as a counterclaim to the § 271(e) action. As *Lockwood* points out, in 18th Century England, the validity of a patent where there was no claim for damages was equitable in nature and decided by the court. Accordingly, defendant's motion to strike plaintiff's jury demand is granted.

### Conclusion

For the reasons set forth above, plaintiff's motion to strike defendant's jury demand is granted.

N.D.Ill.,2001.
Glaxo Group Ltd. v. Apotex, Inc.
Not Reported in F.Supp.2d, 2001 WL 1246628 (N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 2003 WL 23832137 (Trial Motion, Memorandum and Affidavit) Glaxosmthkline's Reply To Apotex's Opposition To Release the Security Bond (Jun. 10, 2003) Original Image of this Document (PDF)
• 2003 WL 23832140 (Trial Motion, Memorandum and Affidavit) Reply In Support of Apotex's Rule 59(e) Motion To Alter Or Amend the Judgment (Jun. 10, 2003)
• 2003 WL 23417254 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion to Release Security Bond (May. 20, 2003)
• 2003 WL 23832132 (Trial Motion, Memorandum and Affidavit) Defendant's Rule 59(e) Motion to Alter or Amend Judgment (May 15, 2003) Original Image of this Document (PDF)
• 2003 WL 23417250 (Trial Motion, Memorandum and Affidavit) Apotex's Motion for Increase in Amount of Preliminary-Injunction Bond (Mar. 10, 2003) Original Image of this Document (PDF)
• 2003 WL 23417247 (Trial Motion, Memorandum and Affidavit) Glaxosmithkline's Post-Trial Reply Memorandum (Jan. 13, 2003)
• 2003 WL 23832120 (Trial Motion, Memorandum and Affidavit) Glaxosmithkline's Post-Trial Reply Memorandum (Jan. 13, 2003) Original Image of this Document (PDF)
• 2003 WL 23832128 (Trial Pleading) Apotex's Answering Post-Trial Brief (Jan. 13, 2003)
• 2002 WL 32450674 (Trial Motion, Memorandum and Affidavit) Apotex's Opening Post-Trial Brief (Dec. 20, 2002)
• 2002 WL 32450681 (Trial Motion, Memorandum and Affidavit) Post-Trial Memorandum of Glaxosmithkline (Dec. 20, 2002) Original Image of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 5
Not Reported in F.Supp.2d, 2001 WL 1246628 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

this Document (PDF)
• 2002 WL 32693506 (Trial Motion, Memorandum
and Affidavit) Post-Trial Memorandum of
Glaxosmithkline (Dec. 20, 2002)
• 2002 WL 32450663 (Trial Motion, Memorandum
and Affidavit) Motion No. 1 Apotex's Motion in
Limine to Exclude the Testimony of Dr. Kenneth R.
Morris (Aug. 23, 2002)
• 2002 WL 32450666 (Trial Motion, Memorandum
and Affidavit) Motion No. 2 Apotex's Motion in
Limine to Exclude Testimony Regarding Alleged
Willful Infringement or Special Damages (Aug. 23,
2002) Original Image of this Document with
Appendix (PDF)
• 2002 WL 32693491 (Trial Motion, Memorandum
and Affidavit) Motion No. 1 Apotex's Motion in
Limine to Exclude the Testimony of Dr. Kenneth R.
Morris (Aug. 23, 2002)
• 2002 WL 32693498 (Trial Motion, Memorandum
and Affidavit) Motion No. 2 Apotex's Motion in
Limine to Exclude Testimony Regarding Alleged
Willful Infringement or Special Damages (Aug. 23,
2002)
• 2002 WL 32812040 (Trial Motion, Memorandum
and Affidavit) Declaration of Dr. Eli Shefter (May.
22, 2002)
• 2002 WL 32812037 (Trial Motion, Memorandum
and Affidavit) Declaration of Stuart M. Harding,
M.D. (May. 14, 2002)
• 2002 WL 32450654 (Trial Motion, Memorandum
and Affidavit) Confidential Under Protective Order
(Mar. 14, 2002)
• 2001 WL 34670851 (Trial Motion, Memorandum
and Affidavit) Apotex's Reply to Plaintiff's
Memorandum In Opposition to Apotex's motion to
Compel (Dec. 4, 2001) Original Image of this
Document with Appendix (PDF)
• 2001 WL 34483655 (Trial Pleading) First Amended
Complaint (Jun. 25, 2001)
• 2001 WL 34670849 (Trial Pleading) First Amended
Complaint (Jun. 25, 2001)
• 2000 WL 34304587 (Trial Pleading) Complaint
(Sep. 20, 2000)
• 2000 WL 34443823 (Trial Pleading) Complaint
(Sep. 20, 2000)
• 1:00CV05791 (Docket) (Sep. 20, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                    Page 1
Not Reported in F.Supp.2d, 2002 WL 1732372 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

---

H
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
   United States District Court, N.D. Illinois, Eastern
                        Division.
BIOVAIL LABORATORIES, INC., a corporation of
   Barbados, and TWFC, Inc., a Delaware corporation
                     Plaintiffs,
                          v.
   TORPHARM, INC., a Canadian corporation,
                     Defendant.
                   No. 01 C 9008.

                    July 25, 2002.

Owner and beneficial owner of patents covering a
heart drug brought a patent infringement suit against
a new drug applicant seeking to market a generic
version of the drug. On the applicant's motion to
strike the owners' jury demand, the District Court,
Edward A. Bobrick, United States Magistrate Judge,
held that the owners could not presently recover
damages, and thus, had no Seventh Amendment right
to a jury trial.

Motion granted.

                    West Headnotes

**Jury 230 ⟨⟩14(1.1)**

230 Jury
   230II Right to Trial by Jury
      230k14 Particular Actions and Proceedings
         230k14(1.1) k. Patent and Copyright Cases.
Most Cited Cases

**Patents 291 ⟨⟩319(1)**

291 Patents
   291XII Infringement
      291XII(C) Suits in Equity
         291k319 Damages
            291k319(1) k. In General. Most Cited
Cases
Owner and beneficial owner of patents covering a
heart drug could not presently recover damages in a
patent infringement suit against a new drug applicant
seeking to market a generic version of the drug where
the applicant had not engaged in the commercial
manufacture, use, offer to sell, or sale of the drug,

and thus, the owners had no Seventh Amendment
right to a jury trial; statutory remedies were entirely
equitable. U.S.C.A. Const. Amend. 7; 35 U.S.C.A. §
271(e)(4)(C).

              *MEMORANDUM, OPINION AND ORDER*

ANDERSEN, J.
**\*1** This matter is before the court on the motion of
Torpharm, Inc. to strike plaintiffs Biovail
Laboratories Inc.'s and TWFC Inc.'s jury demand.
For the reasons articulated below, the motion to strike
the jury demand is granted.

                    *BACKGROUND*

Plaintiffs TWFC, Inc., and Biovail Laboratories, Inc.
(jointly "plaintiffs") are the owner and beneficial
owner respectively of U.S. Patent Nos. 5,286,497,
5,439,689, and 5,470,584. These patents cover the
heart drug diltiazem hydrochloride, which is also
known by its trade name, Cardizem CD. Defendant
Torpharm, Inc. filed an Abbreviated New Drug
Application ("ANDA") seeking approval by the Food
and Drug Administration ("FDA") to market a
generic version of diltiazem hydrochloride. As part of
the ANDA, defendant submitted a Paragraph IV
Certification stating that it believed that the three
patents in suit would not be infringed. *See* 21 U.S.C.
§ 355(j)(2)(A)(vii)(IV).

In response to Torpharm's filing of the ANDA and
Paragraph IV Certification, plaintiffs filed the present
lawsuit under the Patent Infringement Act, 35 U.S.C.
§ 271, *et seq.* Section 271(e)(2)(A) of the Act
provides that "it shall be an act of infringement" to
file an ANDA for a drug claimed in a patent when
"the purpose of such a submission is to obtain
approval under [the Hatch Waxman Act] to engage in
the commercial manufacture, use, or sale of a drug ...
claimed in a patent or the use of which is claimed in a
patent before the expiration of such a patent." 35
U.S.C. § 271(e)(2)(A). Plaintiffs do not contend that
Torpharm has yet engaged in the commercial
manufacture, use, offer of sale, or sale within the
United States or importation into the United States of
the generic diltiazem hydrochloride product.

Torpharm has now moved to strike plaintiffs' jury

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1732372 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

demand on account of plaintiffs' purely equitable claims for relief. Plaintiffs contend, on the other hand, that damages are a potential remedy in this case and thus a right to a jury trial presently exists.

## DISCUSSION

The Seventh Amendment to the United States Constitution provides that, "[i]n Suits at common law, ... the right of trial by jury shall be preserved." U.S. Const. Amend. VII. Whether a cause of action qualifies as a suit at common law hinges on the two-part test advocated in Tull v. U.S., 481 U.S. 412, 417, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987). "First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." Id. at 417-418 (citations omitted). The Supreme Court has instructed that lower courts should weigh the second part of the test more heavily than the first part. Id.

In the present action, the plaintiffs are suing for patent infringement under 35 U.S.C. § 271(e)(2)(A). In its motion to strike plaintiffs' jury demand, Torpharm argues that plaintiffs are only entitled to equitable relief and, therefore, they have no right to a jury trial. In support of this *4. Plaintiffs interpret the Pfizer and Glaxo courts' reasoning as directly contrary to the statute. The statute specifically states that "damages or other monetary relief may be awarded against an infringer only if there has been commercial manufacture, use, offer to sell, or sale within the United States or importation into the United States of an approved drug." 35 U.S.C. § 271(e)(4)(C) (emphasis added). However, a closer inspection of Glaxo and Pfizer demonstrates that those decisions are in fact consistent with the statute. Section 271(e)(4)(C) bars the manufacture, use or sale of a drug that has been approved by the FDA if the manufacturer has infringed upon another's patent. The language in Pfizer and Glaxo appropriately interprets the statute as barring the manufacture, use or sale of the drug in those rare instances when there is no specific approval to do so by the FDA.

*2 Plaintiffs also contend that despite the language of Pfizer and Glaxo, they still may be awarded damages and thus are entitled to a jury trial. Plaintiffs are correct in stating that a patentee may be entitled to a jury trial when damages can be awarded. However, Section 271(e)(4)(C) is explicit when it states that damages are awarded "only if there has been

commercial manufacture, use, offer to sell, or sale within the United States ..." 35 U.S.C. § 271(e)(4)(C). Significantly, at this point in the case, Torpharm has not engaged in any of the activities listed in Section 271(e)(4)(C). Torpharm has only submitted a Paragraph IV Certification, which functions as a "technical" act of infringement in order to "provide[ ] patentees with a defined act of infringement sufficient to create case or controversy jurisdiction to enable a court to promptly resolve any dispute concerning infringement and validity." Pfizer at *3. Merely because some patent infringement actions may have been entitled to jury trials does not mean that all patent infringement actions have a right to a jury trial. No activities have yet occurred that would entitle the plaintiffs to damages in the present suit.

Admittedly, a small chance does exist that Torpharm's ANDA will obtain approval by the FDA and it will begin to manufacture diltiazem hydrochloride prior to trial, thereby potentially warranting damages. Under the relevant statutes, the FDA must suspend approval of the ANDA for a maximum of thirty months, or until the court rules. See 21 U.S.C. § 355(j)(4)(B)(iii)(I)-(III), 35 U.S.C. § 271(e)(4)(A). If a trial takes place after the thirty months have expired, the ANDA may be approved prior to the trial. Additionally, plaintiffs point out that Torpharm may offer to sell the drug prior to the trial, in violation of Section 271(e)(4)(C). However, at this point in the proceedings, none of this has occurred. Should this action go to trial after the thirty month period has elapsed and Torpharm has started to manufacture, market or sell diltiazem hydrochloride, the possibility of damages would then exist. If that situation arises, plaintiffs can request leave to file an amended complaint with a jury demand.

Accordingly this Court concurs with the reasoning of the Pfizer and Glaxo courts. In the present case, there has been no manufacture, use, sale, or offer of sale of diltiazem hydrochloride by Torpharm. As such, this action, brought before the Court pursuant to Section 271(e)(2)(A), is entirely equitable, and the remedies are limited accordingly. Therefore, we find that neither party has a Seventh Amendment right to a jury trial.

## CONCLUSION

For the foregoing reasons, Torpharm's motion to strike plaintiffs' jury demand is granted.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1732372 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

It is so ordered.

N.D.Ill.,2002.
Biovail Laboratories, Inc. v. Torpharm, Inc.
Not Reported in F.Supp.2d, 2002 WL 1732372
(N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 2004 WL 2257020 (Trial Motion, Memorandum
and Affidavit) Claim Interpretation Memorandum of
Biovail Laboratories, Inc. (Jul. 9, 2004) Original
Image of this Document with Appendix (PDF)
• 2004 WL 2257024 (Trial Motion, Memorandum
and Affidavit) Torpharm's Claim Construction Brief
(Jul. 9, 2004)
• 2004 WL 2257023 (Trial Motion, Memorandum
and Affidavit) Biovail's Response to Torpharm's
Counterclaims (Feb. 19, 2004) Original Image of this
Document (PDF)
• 2003 WL 23818623 (Trial Motion, Memorandum
and Affidavit) Biovail's Reply Memorandum of Law
in Support of Motion to Dismiss Counterclaims and
to Strke Affirmative Defenses of Invalidity and
Unenforceability from Torpharm's Second (""Sic")
Amended Answer, Affirmative Defenses and
Counterclaim (Oct. 31, 2003)
• 2003 WL 23818620 (Trial Motion, Memorandum
and Affidavit) Torpharm's Response to Biovail's
Motion to Dismiss Counterclaims and Strike
Affirmative Defenses Relating to Invalidity,
Unenforceability and Patent Misuse (Oct. 17, 2003)
• 2003 WL 23818618 (Trial Pleading) Torpharm's
Second Amended Answer, Affirmative Defenses and
Counterclaim (Aug. 25, 2003) Original Image of this
Document (PDF)
• 2003 WL 23819542 (Trial Pleading) Torpharm,
Inc.'s Amended Answer, Affirmative Defenses and
Counterclaim (May 18, 2003) Original Image of this
Document (PDF)
• 2003 WL 23818613 (Trial Motion, Memorandum
and Affidavit) Torpharm's Reply to Biovail's Rebuttal
Memorandum (May 7, 2003) Original Image of this
Document with Appendix (PDF)
• 2003 WL 23819540 (Trial Motion, Memorandum
and Affidavit) Torpharm's Reply Brief in Support of
Its Motion for Partial Judgment on the Pleadings
(Jan. 7, 2003)
• 2002 WL 32681128 (Trial Motion, Memorandum
and Affidavit) Biovail's Response to Torpharm's
Motion for Partial Judgment on the Pleadings (Dec.
13, 2002)
• 2002 WL 32681126 (Trial Motion, Memorandum
and Affidavit) Torpharm's Surreply Brief on TWFC's
Motion to Dismiss for Misjoinder (Sep. 24, 2002)

• 2002 WL 32681122 (Trial Motion, Memorandum
and Affidavit) Torpharm's Response to TWFC's
Motion to Dismiss for Misjoinder (Jul. 24, 2002)
• 2002 WL 32681117 (Trial Motion, Memorandum
and Affidavit) Plaintiffs' Reply to Defendant's
Counterclaims (Jan. 22, 2002)
• 2001 WL 34668386 (Trial Pleading) Complaint for
Patent Infringement (Nov. 21, 2001) Original Image
of this Document with Appendix (PDF)
• 1:01CV09008 (Docket) (Nov. 21, 2001)

END OF DOCUMENT

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on July 7, 2006, he electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send automatic notification of the filing to the following:

Steven J. Balick, Esquire
John G. Day, Esquire
Tiffany Geyer Lydon, Esquire
Ashby & Geddes
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899

The undersigned counsel further certifies that, on July 7, 2006, copies of the foregoing document were sent by email and hand to the above local counsel and by email and first class mail to the following non-registered participant:

Edgar H. Haug, Esquire
Kimberly J. McGraw, Esquire
Frommer, Lawrence & Haug, LLP
745 Fifth Avenue
New York, NY  10151

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk

629446v1