# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

222 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

October 30, 2006

VIA ELECTRONIC FILING

The Honorable Kent A. Jordan
United States District Court
844 North King Street
Wilmington, Delaware 19801

**REDACTED PUBLIC
VERSION**

Re:    *Sepracor, Inc. v. Dey, L.P. and Dey, Inc.,* (No. 06-113-KAJ)

Dear Judge Jordan:

This firm, along with the firm Frommer Lawrence & Haug, represent Dey, L.P. and Dey, Inc. ("Dey") in the above-captioned matter. We write in advance of the discovery dispute teleconference set for November 1 at 4:00 p.m. Dey is forced to seek the Court's assistance to resolve a number of discovery disputes involving document production and interrogatory responses. We regret that we must bring these issues to the Court's attention, but our best efforts to resolve them have failed.

**Background of Litigation**
Sepracor brought this suit for patent infringement based upon Dey's filing an Abbreviated New Drug Application ("ANDA") seeking approval to market a generic form of Sepracor's Xopenex levalbuterol hydrochloride inhalation solutions. As the Court is aware, the Hatch-Waxman Act prevents the FDA from granting final approval for an ANDA product until the patents listed in the Orange Book by the brand pharmaceutical company are found invalid or not infringed, or 30 months have elapsed since the brand was notified of the filing of the ANDA. Any delay in resolving the litigation benefits the brand, in this case Sepracor.

As the Court may recall, Sepracor sought a much lengthier discovery schedule than is typical in this District, which the Court rejected in setting a July 2, 2007 discovery cut-off date. Apparently unhappy with that result, as detailed below, Sepracor has resorted to self-help by doing everything in its power to delay the pace of meaningful discovery. Dey raises this issue with the Court now in the hopes of keeping this case on the Court ordered schedule.

**Delay of Document Production**
Dey served its first set of document requests on July 17, 2006. Sepracor served objections, but no documents on August 18th. **(Ex. 1)** The first documents were not produced until October 17th, three months after the requests were served and a second set of documents was served on October 27th. The produced documents consist of REDACTED concerning Sepracor products. While Dey understands that it cannot choose the order in which document production takes place, the amount of time it took Sepracor to produce documents which are easily obtained from the company's REDACTED department raises grave concerns about when it will produce other documents that are not so easily obtainable from a single source.

Sepracor has not provided any other responsive documents that are necessary for Dey to prove its case. For example, Sepracor has not produced any documents relating to the development of the invention, such as:

The Honorable Kent A. Jordan
October 30, 2006
Page 2

- documents concerning the conception or reduction to practice of any inventions disclosed or claimed in the patents in suit (Doc. Req. No. 2),
- documents concerning any contribution by the named inventors to the inventions (Doc. Req. No. 3).
- laboratory notebooks, disclosures, invention disclosures, notes, memoranda, reports or other documents concerning or relating to the inventions of the patent in suite (Doc. Req. No. 7)
- documents relating to work performed prior to January 5, 1990 concerning any invention disclosed or claimed in the patents in suit (Doc. Req. No. 14).[1]

Sepracor's failure to produce these documents is particularly troubling given that in telephone conferences between the parties, Dey previously agreed to forego seeking Court involvement on Sepracor's in exchange for Sepracor's commitment to produce documents on October 17, 2006. During these calls Dey made clear that it expected Sepracor's production on October 17th to be a "meaningful production" and include documents such as inventor notebooks. Dey further made clear that Dey would seek immediate court involvement Sepracor did not make a meaningful production. At no point did Sepracor indicate that it would not be producing development documents.

Even worse, Sepracor has refused to state when it will produce additional documents, asserting "Sepracor has produced and will produce documents in an order that Sepracor deems appropriate based on Dey's document requests. Sepracor has not made and will not make any commitments to do otherwise." LTR OF J. WOLFGANG TO K. MCGRAW DATED OCT. 24, 2006 (Ex. 2)

Throughout the course of this litigation, Sepracor has exhibited a pattern of delay, as evidenced by the attached communications. *See* COMMUNICATIONS DATED SEPT. 15, 19, 20, 29, OCT. 3, 6, 13, 17, 19, 20, 23, 30. (Exs. 3-15) To provide only one example, in the end of July, Sepracor stated they would not be able to obtain the information required to be exchanged by the default discovery rules until at least the end of August because the head of the IT department would be away for three weeks. LTR OF K. MCGRAW TO J. WOLFGANG DATED SEPT. 29, 2006. (Ex. 6) On September 7th, Sepracor stated that it could not produce documents until the parties discussed issues relating to e-discovery and that it would not available to have such a discussion until the week of September 18th. *Id.* When asked why production of non-electronic documents could not occur until e-discovery issues were addressed, Sepracor stated it would be more efficient to discuss everything at once. LTR OF J. WOLFGANG TO K. MCGRAW DATED SEPT. 20, 2006. (Ex. 5) Sepracor did not make itself available to discuss e-discovery issues the end of September. *Id.*

Dey's concern that Sepracor is engaged in delay tactics is heightened by Sepracor's statement "Sepracor began collecting documents months before it received Dey's requests." LTR OF J WOLFGANG TO K MCGRAW DATED OCT. 6, 2006. (Ex. 8) If Sepracor has been collecting responsive documents since at least May in anticipation of Dey's discovery requests, why has it not produced them? Dey notes that because expert reports are due on April 2, 2007, the bulk if not all of the fact discovery in this case, including depositions, must be completed by early March 2007.

### Deficient Interrogatory Responses

In addition to the delay in producing documents, Sepracor's responses to Dey's first set of interrogatories were highly deficient and provided Dey with very little of the information it requested. Dey sent Sepracor

---

[1] Dey has served sixty-two document requests. Due to the three page limitation, this letter only identifies some of the document requests relating to development of the invention. By focusing on this narrow category, Dey does not mean to imply that these are the only documents that were not produced.

The Honorable Kent A. Jordan
October 30, 2006
Page 3

a letter on September 26 detailing the deficiencies and requesting that Sepracor supplement its responses within 10 days. A copy of that letter is attached. **(Ex. 16)**

Having received no response from Sepracor by October 9, Dey sent a letter requesting a meet and confer be held to discuss Sepracor's failure to adequately respond to Dey's interrogatories. **(Ex. 17)** Rather than respond to the request for the meet and confer, Sepracor again delayed: "We are carefully reviewing and considering each of the issues you have raised and will respond to your comments regarding those issues as soon as we have completed our review." LTR FROM S. DADIO TO E. LEFF DATED OCT. 11, 2006. **(Ex. 18)** Dey responded that same day that the Court's assistance would be sought if Dey did not receive responses by October 17. **(Ex. 19)** In an e-mail sent at 7:34 p.m. on October 17, Sepracor stated it would respond on Friday, October 20. **(Ex. 20)** Sepracor's "response" was sent after the close of business on October 20 and consisted of a letter containing mostly argument about why responses to the issues raised were not necessary. A copy of that letter is attached. **(Ex. 21)**

For example, in response to Interrogatory No. 2 requesting Sepracor to "describe in full detail ... how Sepracor contends each element of each asserted claim should be construed", Sepracor responded by

REDACTED

. In its September 26 letter, Dey requested that Sepracor provide the ordinary and customary meaning it attaches to the claim terms it asserts have such a meaning. Instead of providing the meaning, Sepracor argues that "Dey did not request Sepracor to 'identify the ordinary and customary meaning...'"

Likewise in response to Dey's Interrogatory No. 3 which requests that Sepracor describe "in full detail" the basis for Sepracor's infringement contentions, Sepracor argues that it could not respond until it

REDACTED

Sepracor's
argument that it cannot                    **REDACTED**
        is simply another attempt to avoid its obligations to provide discovery.

The above are but two examples of Sepracor's arguments as to why it should not have to respond to Dey's interrogatories. For the Court's convenience, we have attached the letters which identify the other inadequate interrogatory responses and Sepracor's arguments as to why it need not respond at this time.

<u>Conclusion</u>
Sepracor's dilatory conduct has forced Dey to seek the Court's assistance in keeping this litigation on schedule. Dey respectfully requests that this Court enter an order commanding Sepracor to produce documents responsive to Dey First Set of Document Requests and to fully respond to Dey's First Set of Interrogatories within ten days so that this case can remain on this Court's established schedule.

Respectfully,

*/s/ Tiffany Geyer Lydon*

Tiffany Geyer Lydon

Attachments
174682.1
c:    Richard D. Kirk, Esquire (by hand delivery; w/attachments)
      Jack M. Stover, Esquire (via electronic mail; w/attachments)
      Todd R. Walters, Esquire (via electronic mail; w/attachments)

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Sepracor, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-113-KAJ |
| | ) | |
| Dey, L.P. and Dey, Inc. | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' FIRST SET OF REQUESTS FOR
## THE PRODUCTION OF DOCUMENTS AND THINGS

Defendants, Dey, L.P. and Dey, Inc. (collectively "Dey"), submit the following requests

for production of documents and things to plaintiff, Sepracor, Inc., pursuant to Rule 34 of the

Federal Rules of Civil Procedure. Plaintiff shall produce responsive documents and things

requested at the offices of Frommer Lawrence & Haug LLP, 745 Fifth Avenue, New York, New

York 10151.

## DEFINITIONS

1.      "Albuterol" shall mean the chemical compound 2-(hydroxymethyl)-4-(1-

hydroxy-2-tert-butylamino-ethyl)-phenol, [also known as $\alpha^1$[(tert-Butylamino)methyl]-4-

hydroxy-m-xylene-$\alpha$, $\alpha'$-diol], and to any salt or ester thereof.

2.      "R(-)isomer" shall mean albuterol which is composed of at least 90% of the

R(-) isomer of albuterol and a maximum of 10% of the S(+)isomer of albuterol.

3.      "S(+)isomer" shall mean albuterol which is composed of at least 90% of the

S(+) isomer of albuterol and a maximum of 10% of the R(-)isomer of albuterol.

4.      "ANDA" shall mean an abbreviated new drug application as provided under

21 U.S.C. § 355(j), and the corresponding implementing regulations at 21 C.F.R. § 314 *et*

*seq.*

5.      "NDA" shall mean New Drug Application.

6.      "FDA" shall mean the United States Food and Drug Administration.

7.      "The '755 patent" shall mean U.S. Patent No. 5,362,755, and any applications in the chain of applications leading to the '755 patent, and including any continuation, continuation-in-part, division, reissue or re-examination of any of the foregoing.

8.      "The '994 patent" shall mean U.S. Patent No. 5,547,994, and any applications in the chain of applications leading to the '994 patent, and including any continuation, continuation-in-part, division, reissue or re-examination of any of the foregoing.

9.      "The '090 patent" shall mean U.S. Patent No. 5,760,090, and any applications in the chain of applications leading to the '090 patent, and including any continuation, continuation-in-part, division, reissue or re-examination of any of the foregoing.

10.     "The '002 patent" shall mean U.S. Patent No. 5,884,002, and any applications in the chain of applications leading to the '002 patent, and including any continuation, continuation-in-part, division, reissue or re-examination of any of the foregoing.

11.     "The '993 patent" shall mean U.S. Patent No. 6,083,993, and any applications in the chain of applications leading to the '993 patent, and including any continuation, continuation-in-part, division, reissue or re-examination of any of the foregoing.

12.     "Present Action" shall mean the lawsuit entitled *Sepracor Inc. v. Dey, L.P. and Dey, Inc.*, C.A. No. 06-113-KAJ, pending in the United States District Court for the District of Delaware.

13.     "Related Litigation" shall mean any lawsuit filed by or against Sepracor Inc. concerning or relating to the '755 patent, the '994 patent, the '090 patent, the '002 patent, and/or the '993 patent, including but not limited to, the litigation captioned *Sepracor Inc. v.*

*Breath Ltd*, Case No. 1:05-CV-06095 (N.D. Ill) and *Sepracor Inc. v. Breath Ltd.*, Case No.

1:06-CV-10043  (D. Mass.)

14.    "You" or "your" shall mean Sepracor Inc.

15.    The term "communication" means the transmittal of information (in the form

of facts, ideas, inquiries or otherwise).

16.    The term "document" or "documents" is used herein in a comprehensive

sense as set forth in Rule 34(a) of the Federal Rules of Civil Procedure, including, without

limitation, electronic or computerized data.  A draft or non-identical copy is a separate

document within the meaning of this term.

17.    The term "person" is defined as any natural person or any business, legal or

governmental entity or association.

18.    When referring to a person, "identify" means to give, to the extent known, the

person's full name, present or last known address, and when referring to a natural person,

additionally, the present or last known place of employment.  Once a person has been

identified in accordance with this paragraph, only the name of that person need be listed in

response to subsequent discovery requesting the identification of that person.

19.    When referring to documents, "identify" means to give, to the extent known,

the: (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv)

author(s), addressee(s), and recipient(s).

20.    The term "concerning" means relating to, referring to, describing, evidencing,

or constituting.

21.    The term "relating to" means referring to, mentioning, discussing, describing,

reflecting, dealing with, consisting of, constituting, comprising, concerning, evidencing,

recording, or in any way pertaining to the subject, either in whole or in part, and either directly or indirectly.

22.    The terms "all" and "each" shall be construed as all and each.

23.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

24.    The use of the singular form of any word includes the plural and vice versa.

25.    The term "including" means without limitation.

## INSTRUCTIONS

1.    No request shall be construed with reference to any other request for purposes of limitation.

2.    These requests are intended to include any and all responsive documents within the possession, custody or control of Plaintiff, its officers, agents, representatives or employees, wherever located.

3.    Each requested document shall be produced in its entirety, including all attachments and enclosures. If a portion of a document is responsive to a request, produce the entire document, including all attachments, enclosures, "post-it"-type notes, and any other matter physically attached to the document. If a document responsive to any request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

4.    If a document responsive to any request is no longer in your possession, custody, or control, state: (i) its date; (ii) author(s); (iii) recipient(s); (iv) subject matter; (v) when such document was most recently in your possession, custody, or control; (vi) what

disposition was made of the document; and, (vii) the person or entity, if any, now in possession, custody, or control of the document. If a document has been destroyed, identify: (i) the date of destruction; (ii) the person who destroyed the document(s); (iii) the person who directed the document to be destroyed; and, (iv) the reason(s) for its destruction.

5.    All documents produced in response to these requests shall be produced in the same order as they are kept in the ordinary course of business and, where attached, shall not be separated or disassembled. If documents responsive to any request are normally kept in a file or folder, also produce that file or folder with any labels attached thereto, and indicate the company, division, department, and/or individual from whose files the document is being produced. If responsive documents are segregated or separated from other documents, whether by inclusion in binders, files, sub-files, or by use of dividers, tabs or any other method, produce such documents in that form.

6.    If, in responding to these document requests, you claim any ambiguity in interpreting either a request or a definition or instruction applicable thereto, such claim shall not be utilized by you as a basis for refusing to respond, but you shall set forth as part of your response to the request the language deemed to be ambiguous and the interpretation chosen to be used in responding to the request.

7.    If, in responding to these document requests, you assert a privilege to any particular request, you must identify the nature of the privilege (including work product) that is being claimed, and, if the privilege is governed by state law, indicate the state's privilege rule being invoked. In addition, the following information shall be provided in the objection:

a.    For documents: (i) the type of document; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where

— 5 —

appropriate, the author of the document, the addressees of the document, and any other recipients shown in the document, and, where not apparent, the relationship of the author, addressees, and recipients to each other;

b.    For oral communications: (i) the name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (ii) the date and place of communication; and (iii) the general subject matter of the communication.

8.    Each request for documents is continuing in nature. If, after responding to these requests, you obtain or become aware of further documents responsive to any request, such documents shall be produced promptly in accordance with Rule 26(e) of the Federal Rules of Civil Procedure and the definitions and instructions herein.

## REQUESTS

### Document Request No. 1

All documents and things concerning or relating to any NDA filed by or on behalf of Plaintiff concerning any levalbuterol hydrochloride inhalation solution product, or any product containing the R(-)isomer including but not limited to, the product with the brand name XOPENEX. Your response should include all amendments, supplements or additions thereto and all communications with the FDA relating to such NDA.

### Document Request No. 2

All documents and things concerning or relating to (a) the alleged conception and (b) the alleged reduction to practice of any inventions disclosed or claimed in the '755, '994, '090, '002 or '993 patents.

### Document Request No. 3

All documents and things concerning or relating to any contribution by each named inventor to the inventions disclosed or claimed in the '755, '994, '090, '002 or '993 patents.

**Document Request No. 4**

All documents and things concerning or relating to the inventions disclosed or claimed in the '755, '994, '090, '002 or '993 patents.

**Document Request No. 5**

All documents and things concerning or relating to any testing, studies or evaluations of any levalbuterol hydrochloride, R(-)isomer, S(+)isomer, and/or albuterol.

**Document Request No. 6**

All documents and things concerning or relating to any testing, studies or evaluations comparing the use of R(-)isomer, S(+)albuterol and/or albuterol to treat asthma, to treat an acute attack of asthma, to induce bronchodilation and/or to provide relief of bronchospasm.

**Document Request No. 7**

All laboratory or other notebooks, disclosures, invention disclosures, notes, memoranda, reports or other documents concerning or relating to the inventions disclosed or claimed in the '755, '994, '090, '002 or '993 patents.

**Document Request No. 8**

All laboratory or other notebooks, disclosures, invention disclosures, notes, memoranda, reports or other documents concerning the testing, study, or evaluation of levalbuterol hydrochloride, R(-)isomer, S(+)isomer, and/or albuterol.

**Document Request No. 9**

All laboratory or other notebooks, disclosures, invention disclosures, notes, memoranda, reports or other documents concerning the testing of levalbuterol hydrochloride, R(-)isomer, S(+)isomer, and/or albuterol to treat asthma, to treat an acute attack of asthma, to induce bronchodilation or to provide relief of bronchospasm.

**Document Request No. 10**

All documents and things concerning or relating to any testing, studies or evaluations comparing the use of R(-)isomer, S(+)albuterol and/or albuterol.

**Document Request No. 11**

All documents and things concerning or relating to the advertising or promotion of any levalbuterol hydrochloride inhalation solution product.

**Document Request No. 12**

     All documents and things concerning or relating to the use of any levalbuterol hydrochloride inhalation solution, including but not limited to XOPENEX.

**Document Request No. 13**

     A sample of each levalbuterol hydrochloride inhalation solution product made by or for Plaintiff that is within the scope of any claim of either the '755, '994, '090, '002 or '993 patents, whether or not such product was ever commercialized, and for each such product produce documents and things sufficient to show the formulation of such product, including quantities of ingredients, and method(s) of preparation.

**Document Request No. 14**

     All documents and things concerning or relating to any work performed prior to January 5, 1990, concerning any invention disclosed or claimed in the '755, '994, '090, '002 or '993 patents.

**Document Request No. 15**

     All documents and things concerning or relating to any description of any invention disclosed or claimed in the '755, '994, '090, '002 or '993 patents prepared or dated before January 5, 1990.

**Document Request No. 16**

     All documents and things concerning or relating to any communications to or from Plaintiff concerning the '755, '994, '090, '002 or '993 patents or the inventions disclosed or claimed therein.

**Document Request No. 17**

     All documents and things concerning or relating to any United States or foreign patents or patent applications owned by, or licensed to, Plaintiff concerning levalbuterol hydrochloride inhalation solutions, R(-)isomer, and/or albuterol including, but not limited to, all foreign counterparts of the '755, '994, '090, '002 or '993 patents.

**Document Request No. 18**

     All documents and things concerning or relating to any United States or foreign patents or patent applications owned by, or licensed to, Sepracor relating to the use of levalbuterol hydrochloride inhalation solutions, R(-)isomer, and/or albuterol including, but not limited to, all foreign counterparts of the '755, '994, '090, '002 or '993 patents.

**Document Request No. 19**

All documents and things concerning or relating to the prosecution of any of the '755, '994, '090, '002 or '993 patents and/or any foreign counterparts.

**Document Request No. 20**

All documents and things that Plaintiff has evaluated as possible prior art to the '755, '994, '090, '002 or '993 patents.

**Document Request No. 21**

All documents and things concerning any prior art to the '755, '994, '090, '002 or '993 patents.

**Document Request No. 22**

All documents concerning or relating to the sale or use of levalbuterol hydrochloride, S(-) isomer and/or albuterol.

**Document Request No. 23**

All documents and things concerning or relating to any work performed prior to January 5, 1990 by anyone other than the named inventors concerning or relating to the subject matter disclosed or claimed in the '755, '994, '090, '002 or '993 patents.

**Document Request No. 24**

All documents and things concerning U.S. Patent No. 6,451,289.

**Document Request No. 25**

All documents and things concerning or relating to any improved or unexpected results, or lack thereof, provided by any invention disclosed or claimed in the '755, '994, '090, '002 or '993 patents.

**Document Request No. 26**

All documents and things concerning or relating to any long felt need fulfilled by any invention disclosed or claimed in the '755, '994, '090, '002 or '993 patents.

**Document Request No. 27**

All documents and things concerning any problem solved by any invention disclosed or claimed in the '755, '994, '090, '002 or '993 patents, including any unsuccessful attempt or failure by others to solve such problem.

**Document Request No. 28**

All documents and things concerning or relating to any commercial success enjoyed by any invention disclosed or claimed in the '755, '994, '090, '002 or '993 patents.

**Document Request No. 29**

All documents and things concerning any problems, criticisms, analysis or complaints concerning or relating to any invention disclosed or claimed in the '755, '994, '090, '002 or '993 patents.

**Document Request No. 30**

All documents and things concerning any lectures, seminars, speeches, talks, papers, articles, abstracts and, or protocols, whether internal or published, concerning or relating to levalbuterol hydrochloride, R(+)isomer, S(-)isomer and/or albuterol.

**Document Request No. 31**

All documents and things concerning or relating to the assignment of any rights in and/or to the '755, '994, '090, '002 or '993 patents or their foreign counterparts.

**Document Request No. 32**

All documents and things concerning or relating to any offer of or request for a license under the '755, '994, '090, '002 or '993 patents or their foreign counterparts.

**Document Request No. 33**

All documents and things concerning or relating to any agreement, contract or license that grants or conveys any rights under the '755, '994, '090, '002 or '993 patents or their foreign counterparts, or that constituted a covenant not to sue under any such patent.

**Document Request No. 34**

Documents sufficient to establish the chain of ownership of the '755, '994, '090, '002 or '993 patents and their foreign counterparts from the time that any invention disclosed or claimed therein was made to the present.

**Document Request No. 35**

All documents and things concerning or relating to any action or proceeding, other than the present action, relating in any way to the '755, '994, '090, '002 or '993 patents and their foreign counterparts.

**Document Request No. 36**

All documents and things concerning or relating to any instance, other than the present action, in which any owner or licensee of the '755, '994, '090, '002, or '993 patents alleged any party with infringement of any of those patents or their foreign counterparts.

**Document Request No. 37**

All documents and things concerning or relating to any instance, other than the present action, in which any owner or licensee of the '755, '994, '090, '002, or '993 patents concluded that any party was in possession of a product, the use of which would infringe any of the '755, '944, '090, '002, or '993 patents or their foreign counterparts.

**Document Request No. 38**

All documents and things concerning (a) a method of using any product by any person other than Dey that Plaintiff believes infringes the '755, '994, '090, '002, or '993 patents or their foreign counterparts, and (b) the reasons Plaintiff had or has this belief.

**Document Request No. 39**

All documents and things concerning or relating to the basis for Plaintiff's belief that the making, using, selling, offering to sell, and/or importing of Dey's levalbuteral hydrochloride inhalation solutions will infringe on one or more claims of the '755, '994, '090, '002 or '993 patents, including any tests conducted on Dey's product and the results thereof.

**Document Request No. 40**

All documents and things concerning or relating to any opinion or advice of counsel relating to whether (a) Dey has infringed the '755, '994, '090, '002 or '993 patents, or (b) the making, selling, using, offering to sell, and/or importing Dey's levalbuteral hydrochloride inhalation solutions will infringe on one or more claims of the '755, '994, '090, '002 or '993 patents.

**Document Request No. 41**

All documents and things concerning or relating to: (a) the patentability of any subject matter disclosed or claimed in the '755, '994, '090, '002 or '993 patents or their foreign counterparts; (b) the patentability of any levalbuterol hydrochloride inhalation solution product, and/or (c) the patentability of any method of using any such solution, including, but not limited to, any novelty, state of the art, validity, freedom-to-use or prior art searches, any reports concerning such searches, and any prior art resulting from such searches.

**Document Request No. 42**

All documents and things concerning or relating to the patentability, validity, infringement, enforceability, inventorship, or scope of any claim of the '755, '994, '090, '002, or '993 patents or their foreign counterparts. Your response should include, but not be limited to, any opinion or advice of any attorney, patent agent, or anyone else acting for or on behalf of Plaintiff, and any prior art mentioned in any such opinion or advice.

**Document Request No. 43**

All documents and things concerning or relating to any infringement litigation, interference, opposition or other contested action or proceeding concerning or related to (a) the '755, '994, '090, '002, or '993 patents, or their foreign counterparts of any of the foregoing, or (b) any U.S. or foreign patent or patent application concerning levalbuterol hydrochloride inhalation solutions, or a process for using or making them.

**Document Request No. 44**

All documents and things concerning or relating to any Related Litigation, including all documents concerning or related to any settlement or other resolution of any of the foregoing.

**Document Request No. 45**

All documents and things concerning, reflecting, or relating to any meetings held, or attended, by or on behalf of Plaintiff or any other owner or licensee of the '755, '994, '090, '002 or '993 patents, including but not limited to Board of Directors meetings, at which any of the following was discussed, or raised: (a) levalbuterol hydrochloride inhalation solutions or a process for making or using them; (b) R(-)isomer or a method for making or using it; (c) the '755, '994, '090, '002 or '993 patents, or any foreign counterparts thereof; or (d) any litigation or potential litigation concerning the '755, '994, '090, '002 or '993 patents or any foreign counterparts thereof.

**Document Request No. 46**

All documents and things concerning the location or contents of documents concerning or relating to levalbuterol hydrochloride, R(+)isomer, S(-)isomer and/or albuterol including any method of using such solutions including, but not limited to, any indices, lists and catalogs.

**Document Request No. 47**

All documents and things concerning agreements between Plaintiff and any other person concerning or relating to levalbuterol hydrochloride inhalation solutions, the R(-)isomer or any subject matter disclosed or claimed in the '755, '994, '090, '002 or '993 patents.

**Document Request No. 48**

All documents and things concerning or relating to agreements or communications between Plaintiff and any other person concerning or relating to patents claiming or disclosing levalbuterol hydrochloride inhalation solutions or the R(-)isomer or the uses of levalbuterol hydrochloride inhalation solutions or the R(-)isomer.

**Document Request No. 49**

All documents and things concerning or relating to the preparation of the Complaint.

**Document Request No. 50**

All documents and things concerning or relating to any allegation of patent infringement asserted by Plaintiff in this action.

**Document Request No. 51**

All documents and things concerning or relating to any communications between Plaintiff and the FDA relating to Dey's accused product or the use of such product. You shall include any documents evidencing any tests or studies of Dey's accused product or Sepracor's product that concerns or relates to any issue raised in any such communication, regardless of whether the results of such test or study were communicated to FDA.

**Document Request No. 52**

All documents and things referred to in Plaintiff's Initial Disclosures made or to be made pursuant to Rule 26(a)(1), Fed. R. Civ. P.

**Document Request No. 53**

All documents and things concerning any document retention, document destruction or record keeping policy in effect at Sepracor or at any other owner of the '755, '994, '090, '002 or '993 patents at any time from when Sepreacor first began research or development of any isomer of albuterol to the present.

**Document Request No. 54**

All charts, outlines, pyramids, diagrams, employee lists and other documents describing Plaintiff's organizational structure from at least January 5, 1998 to the present.

**Document Request No. 55**

All documents and things Sepracor intends to rely on in support of any secondary considerations of non-obviousness.

**Document Request No. 56**

All documents and things that refer to, relate to, tend to prove or disprove the validity of the '755, '994, '090, '002, or '995 patents.

**Document Request No. 57**

All documents and things described in any searches, including patentability, validity, prior art, infringement, state of the art, or other searches relating to any claims of the '755, '994, '090, '002, or '993 patents.

**Document Request No. 58**

All documents and things that tend to prove or disprove the commercial success of the inventions claimed or disclosed in the '755, '994, '090, '002, or '993.

**Document Request No. 59**

All documents and things concerning or relating to the relationship or absence of relationship between the market for R(-)isomer, and the market for albuterol.

**Document Request No. 60**

All documents and things concerning or relating to the therapeutic substitutability of R(-)isomer and albuterol.

**Document Request No. 61**

All documents concerning or relating to the substitution of R(-)isomer for albuterol for the treatment of asthma, on acute attack of asthma, to induce brochodilation or providing relief of bronchospasm.

**Document Request No. 62**

All documents relating to the promotion of the use of levalbuterol inhalation solutions by or on behalf of Sepracor, including, but not limited to, the development of promotional strategies from the initial planning stage to present.

ASHBY & GEDDES

/s/ John G. Day

---

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
Telephone: (302) 654-1888
Fax: (302) 654-2067
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendants Dey, L.P.
and Dey, Inc.*

*Of Counsel:*

Edgar H. Haug
Kimberly J. McGra
FROMMER, LAWRENCE & HAUG L.L.P.
745 Fifth Avenue
New York, New York 10151
Telephone: (212) 588-0800
Fax: (212) 588-0500
ehaug@flhlaw.com
kmcgraw@flhlaw.com

Elizabeth A. Leff
FROMMER, LAWRENCE & HAUG L.L.P.
1667 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 292-1530
Fax: (202) 292-1531
eleff@flhlaw.com

Dated: July 17, 2006
171328.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of July, 2006, the attached **DEFENDANTS' FIRST**

**SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS** was

served upon the below-named counsel of record at the address and in the manner indicated:

Richard D. Kirk, Esquire                                  **HAND DELIVERY**
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899

Jack M. Stover, Esquire                                  **VIA FEDERAL EXPRESS**
Buchanan Ingersoll & Rooney PC
One South Market Square
213 Market Street, 3rd Floor
Harrisburg, PA 17101-2121

Todd R. Walters, Esquire                                  **VIA FEDERAL EXPRESS**
Buchanan Ingersoll & Rooney PC
1737 King Street, Suite 500
Alexandria, VA 22314-2727

*/s/ John G. Day*
_____
John G. Day

**REDACTED**

# EXHIBIT 2

# Buchanan Ingersoll & Rooney PC

One South Market Square
213 Market Street, 3rd Floor
Harrisburg, PA 17101-2121

P.O. Box 12023
Harrisburg, PA 17101-2023

**Jayson R. Wolfgang**
717 237 4852
jayson.wolfgang@bipc.com

T 717 237 4800
F 717 233 0852

www.buchananingersoll.com

October 24, 2006

*VIA E-MAIL*

Kimberly J. McGraw, Esquire
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, NY 10151

Re:  *Sepracor Inc. v. Dey, LP and Dey, Inc.*
     **United States District Court for the District of Delaware**
     **(No. 06-113-KAJ)**

Dear Kim:

This responds to your letter dated October 23, 2006, received by e-mail last night and demanding a response today.

The very first sentence of your letter states that you "have performed an initial review of the documents provided by Sepracor . . . ." LETTER FROM McGRAW TO DADIO DATED OCT. 23, 2006. This statement is very troubling given your written communications to us on October 19th and 20th, and your representations during the various telephone discussions with Ms. Walker and our firm's technical personnel.

Specifically, on October 19th, you stated that "[t]he documents Sepracor produced to Dey on Tuesday [October 17, 2006] in electronic format are *unreadable*." LETTER FROM McGRAW TO WOLFGANG DATED OCT. 19, 2006 (emphasis added). You further stated that your vendor explained to you that one of the DVDs is corrupted and cannot be copied, saved or loaded in any way[,]" and "the DII load files on the DVD which can be opened . . . contain improper spacing that prevents the files from being loaded . . . ." *Id.* You concluded you October 19 letter by stating, "[a]s such, Dey has essentially received no production from Sepracor"[1] and, therefore, Sepracor "must immediately provide its document production on [new DVDs] . . . ." *Id.*

---

[1] It must be noted that in addition to the production of over 138,000 pages of documents produced in electronic format on October 17, 2006, Sepracor produced 747 pages of documents to Dey on September 28, 2006.

Kimberly J. McGraw, Esquire
October 24, 2006
Page - 2 -

Because we had tested the DVDs before we delivered them to you and had successfully loaded the images into a Summation database on our network, we were uncertain why you were experiencing such difficulties. LETTER FROM WALKER TO MCGRAW DATED OCT. 20, 2006. Moreover, on the same date, we agreed to have a telephone conference with you, your firm's and vendor's technical personnel, and our firm's technical personnel and attempt to resolve the problems you were allegedly experiencing in being able to "read" the documents Sepracor produced. Incredibly, during that joint telephone conference, we received an e-mail from you chastising us for not assisting you. E-MAIL FROM MCGRAW TO WALKER SENT Oct. 20, 2006, 5:00 p.m.

Despite our attempts on the joint telephone call to assist you with your alleged technical difficulties, you still insisted that you were unable to "read" the documents. Accordingly, we agreed to provide you with new DVDs containing Sepracor's document production. These new DVDs were sent on Monday via overnight courier to your New York office, as requested, to be received today, Tuesday, October 24, 2006.

However, the letter you emailed to us last night says you "have performed an initial review" of the documents, obviously a review that occurred *before* you received the new DVDs. According to your prior representations, your receipt of the new DVDs would have been the first time you could "read" the documents produced by Sepracor. The obvious inconsistencies in your statements and the unnecessary disruption of Sepracor resources reflect Dey's vexatious litigation tactics, which are unacceptable.

As to the remaining portions of your October 23rd letter and as we discussed as early as September 28, 2006, the mutual production of documents that both parties commenced on October 17, 2006 is a rolling production. It is not clear to us why you now claim to have had an expectation that Dey was going to receive particular documents on October 17th, or why you think Dey is in a position to demand that documents be produced in any particular order. Sepracor is engaged in a rolling production of documents in response to Dey's extremely broad document requests, to which Sepracor has already served timely responses and objections. Sepracor has produced and will produce documents in an order that Sepracor deems appropriate based on Dey's document requests. Sepracor has not made and will not make any commitment to do otherwise. If Dey would prefer to withdraw its overly broad document requests and serve more specific document requests, particularly specifying the documents Dey would like to receive, Sepracor would be willing to consider such an approach.

Kimberly J. McGraw, Esquire
October 24, 2006
Page - 3 -


     Sepracor will continue preparing for production relevant, non-privileged documents that are responsive to Dey's overly broad document requests.  Sepracor will also continue to produce documents on a rolling basis, and expects Dey to do the same.

                        Very truly yours,


                        /s/ Jayson R. Wolfgang


JRW/cb

cc:    Elizabeth A. Leff, Esquire
       Susan M. Dadio, Esquire

#340501-v1

# EXHIBIT 3

**FLH** **FROMMER LAWRENCE & HAUG** LLP   New York
745 Fifth Avenue     www.flhlaw.com
New York, NY 10151   Washington, DC
Telephone: (212) 588-0800   Tokyo
Fax: (212) 588-0500

September 15, 2006                              Kimberly J. McGraw
                                               Kmcgraw@flhlaw.com

**VIA FACSIMILE**

Jayson R. Wolfgang, Esq.
Buchanan Ingersoll & Rooney P.C.
One South Market Street
213 Market Street, 3rd Floor
Harrisburg, PA 17101-2121

          Re:     Sepracor v. Dey

Dear Jayson:

          This is in response to your e-mail stating that you are no longer available to discuss
discovery matters next week and that the earliest that you are available is either September 25,
2006 or September 28, 2006. This delay is not acceptable and is holding up document
production.

          Dey served its document requests on Sepracor on July 17, 2006. Sepracor's responses
were served on August 18, 2006, but, as of yet, no documents have been produced. On
September 5, my colleague Elizabeth Leff asked Susan Dadio when Sepracor would begin its
rolling document production. Ms. Dadio responded that Sepracor would not be producing
documents until the electronic discovery meeting took place. When asked about Sepracor's
availability for the meeting, Ms. Dadio responded she would have to check with you. Several
days later Ms. Dadio called Ms. Leff and told her you would be available the week of September
18. Ms. Leff told Ms. Dadio that enough time had passed and she thought the meeting should
occur sooner. Ms. Dadio responded that she would explain Dey's position to you and find out if
you were available any sooner.

          As you are aware, Judge Jordan's rules require the parties to discuss the parameters of the
e-discovery at the Rule 26(f) conference. The parties did agree to follow the default standards
for electronic documents and further agreed to follow up and exchange information as required
by the default rules in early August after Sepracor's IT person returned from vacation. That
exchange and the corresponding meeting have still not taken place despite Dey's continued
requests.

00398102.DOC

Jayson R. Wolfgang, Esq.
September 15, 2006
Page 2


        Sepracor's continuous delay of discovery is unacceptable.  Dey is prepared to discuss
discovery matters now.  Sepracor's document production must begin without further delay.
Please provide me with your availability early next week for our discussion of e-discovery and
document production.


                                        Sincerely,


                                        Kimberly J. McGraw


KJM/ja


                                                                        00398:02

# EXHIBIT 4



**FLH FROMMER LAWRENCE & HAUG** LLP

New York          www.flhlaw.com
745 Fifth Avenue          Washington, DC
New York, NY 10151          Tokyo
Telephone: (212) 588-0800
Fax: (212) 588-0500

September 19, 2006

Kimberly J. McGraw
Kmcgraw@flhlaw.com

<u>**VIA FACSIMILE**</u>

Jayson R. Wolfgang, Esq.
Buchanan Ingersoll & Rooney P.C.
One South Market Street
213 Market Street, 3rd Floor
Harrisburg, PA 17101-2121

    Re:   <u>Sepracor v. Dey</u>

Dear Jayson:

    This letter is further to my letter of September 15, 2006 regarding Sepracor's continued inability to meet with Dey's counsel regarding electronic discovery and continued refusal to produce non-electronic documents until resolution of electronic discovery matters.  As of yet we have not received any response to the September 15, 2006 letter.

    Sepracor's continuing delay in meeting with Dey's counsel regarding e-discovery and production of non-electronic documents is severely prejudicing Dey's ability to prepare its case.

    Please advise us by the close of business today when plaintiffs are able to proceed with discussion of e-discovery and production of non-electronic documents or we shall be forced to contact the court regarding this matter.

          Sincerely,

          Kimberly J. McGraw

KJM/ja

# EXHIBIT 5

# Buchanan Ingersoll ∧ Rooney PC
### Attorneys & Government Relations Professionals

One South Market Square
213 Market Street, 3rd Floor
Harrisburg, PA 17101-2121

P.O. Box 12023
Harrisburg, PA 17101-2023
T 717 237 4800
F 717 233 0852
www.buchananingersoll.com

Jayson R. Wolfgang
717 237 4852
jayson.wolfgang@bipc.com

September 20, 2006

**VIA FACSIMILE**

Kimberly McGraw, Esq.
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York 10151

Re:  *Sepracor Inc. v. Dey, L.P. and Dey, Inc.*
*Civil Action No. 06-113 KAJ*

Dear Kim:

We are in receipt of your letters dated September 15, 2006 and September 19, 2006 in connection with the above-identified case.

Initially, we believe that there is a misunderstanding with respect to Sepracor's position concerning production of what you characterize as "non-electronic documents." We never stated that "non-electronic documents" would not be produced "until resolution of electronic discovery matters." Rather, we indicated that prior to production of documents there are a number of issues to discuss. Such issues include, for instance, the format in which "non-electronic documents" will be produced, the mutually agreeable date in which both parties will simultaneously begin their rolling production, whether the parties can agree to a cut-off date for collection and production of documents created after such date, and whether the parties can agree that privileged documents created after a certain date, *e.g.*, after suit has been brought, do not need to be included on a privileged log. Because these issues need to be resolved and we also need to discuss electronic discovery matters, we simply propose for efficiency purposes that we discuss all of these topics at the same time.

Your statement that Sepracor is "delay[ing] in meeting with Dey's counsel regarding e-discovery and production of non-electronic documents . . ." is incorrect. As you correctly noted, Ms. Dadio and Ms. Leff had a telephone call on September 7, 2006 in which Ms. Dadio indicated that we were available the week of September 18th to have the necessary discussions. While Ms. Leff desired to have such discussions at a different time, Ms. Dadio indicated that she only knew my availability for the week of September 18th. In an attempt to be as cooperative as possible, Ms. Dadio indicated that she would explain Dey's position to me and check with me to determine whether I could be available at a different time. However, Ms. Leff indicated that she

SEP 20 2006 17:00 FR BUCHANAN INGERSOLL    TO 912125880500#874 P.03

September 20, 2006
Page - 2 -

would check with you as to your availability and you would be in contact me. We did not receive any contact from you in this regard for over a week. Thus, on September 14th, we sent an e-mail to you providing some alternative dates. On September 15, 2006, I received an e-mail from you (sent at 11:43 a.m.) indicating that you were "available on 9/25 and 9/28[,]" and asking if I "[w]ould be able to have a 30 minute discussion sometime next week on just e-discovery matters[.]" I was preparing to respond to your e-mail when I received a recall notification (that you sent at 3:37 p.m.) with respect to your earlier e-mail. The next communication I received from you was your facsimile of September 15th (to which this letter responds), which I did not see until Monday, September 18, 2006.

In order to move forward, and in accordance with the dates you noted for your availability, and as Ms. Dadio and Ms. Leff discussed during the telephone call yesterday, we propose that we conduct our discussions on September 28, 2006 at 10:00 am. Please let us know if this time is convenient for you.

Sincerely,

*Jayson R. Wolfgang*

Jayson R. Wolfgang

JRW/

cc:    Elizabeth A. Leff, Esq.

# EXHIBIT 6

**FLH  FROMMER LAWRENCE & HAUG LLP**

New York                    www.flhlaw.com
745 Fifth Avenue            Washington, DC
New York, NY 10151          Tokyo
Telephone: (212) 588-0800
Fax: (212) 588-0500

September 29, 2006

Kimberly J. McGraw
Kmcgraw@flhlaw.com

**VIA FACSIMILE**

Jayson R. Wolfgang, Esq.
Buchanan Ingersoll & Rooney P.C.
One South Market Street
213 Market Street, 3rd Floor
Harrisburg, PA 17101-2121

        Re:    Sepracor v. Dey

Dear Jayson:

        This letter expresses Dey's concern over Sepracor's inability to exchange information yesterday about Sepracor's electronic systems as required by the Default Standard for Discovery of Electronic Documents (the "default e-discovery rules").

        On July 25, 2006, Sepracor stated that it would not be able to obtain the information set forth by the default e-discovery rules until at least the end of August because the head of the IT department would be away for three weeks. On September 7, 2006, Susan Dadio said Sepracor would not be available until September 18th to discuss e-discovery. We were subsequently informed you were not available until the week of the 25th of September. The telephone conference to exchange the information contemplated by the default e-discovery rules was finally scheduled for September 28th. However, instead of being prepared to exchange information, Sepracor claimed that it needed to agree upon a "format" to exchange this information. Questions about proper format should have been raised months ago, not on the telephone call where parties are to exchange information.

        Sepracor's intent on delay is even more apparent after receiving the Sepracor's proposed "format" (Ex. A), which is nothing more than a listing of the items that Judge Jordan's rules require be exchanged.

        Moreover, Sepracor's proposed format omits information that the default e-discovery rules require be exchanged. This information includes a general description of the parties electronic document retention policies for the systems (¶ 2), and notice of any problems reasonably anticipated to arise in connection with e-discovery (¶ 2). We have modified Sepracor's proposed chart to include this required information. With respect to the description of each system's electronic document retention policy, the description should include a description of the "back-up" policy relevant to that system. With respect to identifying which

Jayson R. Wolfgang, Esq.
September 29, 2006
Page 2

systems have limited accessibility, we propose that the parties explain why such systems have limited accessibility. Additionally, we propose that the parties identify the dates when each system was, or is, in use (i.e., when each system was first used, and, if appropriate, when a system was discontinued). We have modified Sepracor's proposed chart to include this information.

The default e-discovery rules also require "within the first thirty (30) days of discovery, the parties should work towards an agreement (akin to the standard protective order) that outlines the steps each party shall take to segregate and preserve the integrity of all relevant documents. . . The retention coordinators shall: take steps to ensure that e-mail of identified custodians shall not be permanently deleted in the ordinary course of business and that electronic documents maintained by the individual custodians shall not be altered." (¶ 7). Sepracor has represented that they have taken steps to prevent the spoliation of evidence. Dey proposes that the steps that each party has taken to prevent the spoliation of evidence also be exchanged on October 3, 2006.

The default e-discovery rules also require within 30 days of discovery that the parties provide notice as to the criteria used for spam and/or virus filtering of e-mail and attachments. (¶ 7). Dey proposes that this information also be exchanged on October 3, 2006.

Finally, with respect to the relevant dates for describing the electronic systems, we propose that the parties use as a start date, the date that each party first began considering, developing, evaluating, or testing an enantiomer of albuterol. As U.S. Patent Application 07/461,262 was filed on January 5, 1990, a timeframe for Sepracor beginning in January 1990 is unacceptable. It will result in the exclusion of many highly relevant documents relating to the alleged invention, for reports or e-mails among the inventors regarding the alleged invention.

The Hatch-Waxman Act obligates litigants to "reasonably cooperate in expediting the action." 21 U.S.C. § 355(j)(5)(B)(iii). The Act's legislative history notes, "Each party to the action has an affirmative duty to reasonably cooperate in expediting the action." H.R. Rep. No. 98–857, pt. I, at 27, reprinted in 1984 U.S.C.C.A.N. 2647, 2660. To this end, Dey proposes that all of the information set forth in this letter be exchanged by October 3, 2006.

Sincerely,

Kimberly J. McGraw

KJM/ja

# EXHIBIT 7

**FLH   FROMMER LAWRENCE & HAUG** LLP

New York                    www.flhlaw.com
745 Fifth Avenue            Washington, DC
New York, NY 10151          Tokyo
Telephone: (212) 588-0800
Fax: (212) 588-0500

October 3, 2006                          Kimberly J. McGraw
                                         KMcGraw@flhlaw.com

Jayson R. Wolfgang, Esq.
Buchanan Ingersoll & Rooney P.C.
One South Market Street
213 Market Street, 3rd Floor
Harrisburg, PA 17101-2121

Re:    Sepracor v. Dey

Dear Jayson:

        This letter is in response to your letter dated October 2, 2006, sent after the close of business which I received this morning.

        As an initial matter, we are taken aback at your claim that Sepracor is not prepared to exchange the information required to be provided under the Default Discovery Rules today, as the parties had initially agreed, because an attachment was not provided with Dey's September 29th letter.

        First, it is common courtesy to inform the sender of a letter that an identified attachment was not attached. Had you informed us when you received my September 29th letter that the attachment was missing, we could have provided a copy to you immediately. Your failure to raise this issue until the day the parties had agreed to exchange information is consistent with Sepracor's intent to delay discovery in this case.

        Second, and more significantly, Dey's September 29th letter makes clear what additional information was to be added to Sepracor's proposed chart. The only additional information in the attachment that was not identified in the letter is which column the information should be entered into--this information is obviously of no substantial importance. Your claim that the lack of an attachment "will only delay the parties' ability to exchange information on October 3" further evidences Sepracor's continuing intent to delay discovery.

        We also do not understand your claim that you still need to consult with your client and possibly your vendor before committing to providing the other information identified in Dey's September 29th letter. All of the information that Dey proposed the parties exchange today is information required to be exchanged under the default discovery rules (*See e.g.,* Default electronic discovery rules ¶¶ 3, 7).

00401914.DOC

Jayson R. Wolfgang, Esq.
October 3, 2006
Page 2

Needless to say, we do not agree with many of your characterization of the parties'
September 28, 2006 telephone conference, including your view that "any neutral observer would
agree we accomplished a lot." Your statement that Dey was not prepared to provide you with a
list of the custodians of relevant electronic material is simply wrong. We identified the director
of Dey's information technology as he has access to all of the relevant electronic material.
Sepracor's definition of "everyone who might have written or received relevant electronic
materials" is simply unworkable and renders the term "custodian" meaningless. Moreover, it
was Dey, not Sepracor that was ready to exchange email search words. We remain ready and
willing to do so.

With respect to the need to agree to a "format" for the exchange of documents, we agree
that it is important and never stated otherwise. That is why we have been trying to discuss
format with you since July.

Your statement that we agreed that each side would begin production on the same date is
also wrong. We were very clear that because Dey's requests were served almost three weeks
earlier than Sepracor's, we did not agree a mutual production date is appropriate. Moreover,
your statement that Sepracor has produced documents to Dey is completely misleading and
disingenuous. The documents "Sepracor produced" were produced last week in response to
subpoenas Dey served on third parties. Sepracor requested Dey withdraw those subpoenas in
exchange for Sepracor producing the responsive documents by September 28th.

In the interest of moving the case along, Dey proposes the following:

1.      All of the information Sepracor proposed exchanging in its September 28th letter
        along with the additional information proposed by Dey, including a list of search
        terms, be exchanged on October 5, 2006. If Sepracor is unwilling to exchange all
        of this information on October 5th, Dey requests the parties hold a "meet and
        confer" on that date so that Dey can seek the court's assistance in resolving the
        matter.

2.      The parties produce all documents as single page, Group IV compressed, TIFF
        (.tiff) images with a Summation DII (.dii) load file. This is apparently another
        way of identifying multiple tiff files with page breaks--the format proposed by
        Dey during our September 27, 2006 telephone conference.

Jayson R. Wolfgang, Esq.
October 3, 2006
Page 3

As you have indicated that Sepracor will be ready to produce documents by October 11, Dey is willing to hold off filing a Motion to Compel. We consider the September 27th telephone conference to meet our duty to "meet and confer" prior to filing the motion. Should you disagree, please advise and provide us with a date to hold a meet and confer on Sepracor's refusal to produce documents, some 12 ½ weeks after being served with requests.

Very truly yours,

Kimberly J. McGraw

KJM/ja

00401914.DOC

# EXHIBIT 8

# Buchanan Ingersoll & Rooney PC

Attorneys & Government Relations Professionals

One South Market Square
213 Market Street, 3rd Floor
Harrisburg, PA 17101-2121

P.O. Box 12023
Harrisburg, PA 17101-2023
T 717 237 4800
F 717 233 0852
www.buchananingersoll.com

Jayson R. Wolfgang
717 237 4852
jayson.wolfgang@bipc.com

October 6, 2006

*VIA FACSIMILE*

Kimberly J. McGraw, Esquire
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, NY 10151

Re:    *Sepracor Inc. v. Dey, LP and Dey, Inc.*
       United States District Court for the District of Delaware
       (No. 06-113-KAJ)

Dear Kim:

We need to deal with one issue raised in our telephone conference of September 28, 2006, and further addressed in your facsimile of October 3, 2006 (the one sent at 18:10 pm). We never agreed to produce on October 11, 2006. Rather, our proposal was to begin mutual production of documents two weeks following agreement as to format. We did not receive your commitment to a format until October 3, 2006. Thus, we are prepared to begin mutual production on October 17, 2006.

It is our further understanding that Dey is unwilling to commit to a mutual exchange of documents on a date certain. Dey continues to insist that it should receive documents earlier than it produces documents to Sepracor because it served document requests three weeks earlier than Sepracor. Sepracor disagrees. Both parties have known since this case was filed and initial disclosures were exchanged that relevant documents, including the parties' respective ANDAs and NDAs, would have to be produced. Sepracor began collecting documents months before it received Dey's requests. As is usually the case in a paragraph IV litigation, the volume of Sepracor's production will be much larger than Dey's. We assume that Dey, like Sepracor, began collecting and processing documents for production long before it received Sepracor's document requests. To move things forward for both parties as quickly as possible Sepracor proposes that we agree to begin mutual document production on Monday, October 17, 2006, using the TIFF format to which the parties have now agreed. We look forward to receiving by

October 6, 2006
Page - 2 -

the close of business today your written confirmation that Dey will be prepared to exchange documents on that date.

In addition, we ask that in the future should you find it necessary to send letters to us after 5:30 p.m. that you send the letter as an attachment to an email because facsimiles received after 6:00 p.m. are not available to us until the morning of the next business day.

Finally, Sepracor strongly disagrees with your characterization of "the telephone conference of September 27th" as a meet and confer on the issue of document production. (Perhaps you meant the conference call of September 28th?) The telephone conference of September 28th was a first discussion in which we tried to resolve issues relating to document production and issues relating to e-discovery. You cannot denominate that call as a meet and confer after-the-fact. Your threats regarding motions to compel only delay resolution of more important issues that the parties should be working to resolve.

Very truly yours,

Jayson R. Wolfgang

JRW/cb

cc:    Elizabeth Leff, Esq.

# EXHIBIT 9

**FLH  FROMMER LAWRENCE & HAUG** LLP

New York                    www.flhlaw.com
745 Fifth Avenue            Washington, DC
New York, NY 10151          Tokyo
Telephone: (212) 588-0800
Fax: (212) 588-0500

October 6, 2006

Kimberly J. McGraw
Kmcgraw@flhlaw.com

**VIA FACSIMILE**

Jayson R. Wolfgang, Esq.
Buchanan Ingersoll & Rooney P.C.
One South Market Street
213 Market Street, 3rd Floor
Harrisburg, PA 17101-2121

Re:  Sepracor v. Dey

Dear Jayson:

This letter is in response to your letter of earlier today, in which Sepracor claims it now requires yet another delay of yet an additional week to begin producing documents. As set forth in our previous letters, Sepracor has repeatedly delayed producing documents responsive to Dey's document requests, which were served on July 17, 2006. We do not feel that we can delay any longer.

Although Sepracor is the plaintiff is this matter, and served its documents requests far after Dey served its requests, Sepracor demands both parties begin to exchange documents on the same date. While Dey does not believe that mutual production is required, or even appropriate, in the interest of moving discovery along, Dey is prepared to produce documents on the date you have designated, October 17, 2006.

We expect to receive a meaningful production from Sepracor on this date. A meaningful production includes the "relevant documents" that Sepracor admits it began collecting "months before it received Dey's requests." For example, we expect the October 17, 2006 production to include inventor notebooks.

In your letter of today, Sepracor admits that it has been engaged in document collection for at least six months. If Sepracor does not provide a meaningful production by October 17, 2006, we will immediately seek relief from the court. We look forward to receiving your response.

Sincerely,

Kimberly J. McGraw

KJM/ja

00402608

# EXHIBIT 10

**REDACTED**

# EXHIBIT 11

## McGraw, Kimberly

| | |
|---|---|
| **From:** | McGraw, Kimberly |
| **Sent:** | Tuesday, October 17, 2006 6:49 PM |
| **To:** | 'Wolfgang, Jayson' |
| **Cc:** | Leff, Elizabeth; Dadio, Susan |
| **Subject:** | RE: Document Production |

Dear Jayson,

Your complaint about our production "rings hollow." As you are fully aware, Dey's document production is occurring through Frommer Lawrence & Haug's New York office. Your delivery of Sepracor's document production to our DC office only shifts the burden of sending the documents to our New York office onto Dey.

Additionally, the parties never agreed, let alone discussed, that service of document production would be by hand delivery. As you are well aware, most document production does not occur by hand delivery, particularly when as here, the offices responsible for document production are in different cities.

Nor did Dey agreed to service of documents to FLH's DC office. Had Sepracor asked where it should serve its documents, rather than unilaterally choosing to send them to DC, we would have made clear that the document production should be made to FLH's NY office. Rather than being "inexcusable," my 4:00 email letting you know that I would be sending the documents to your Virginia office, but giving you the opportunity to have documents sent another office of your choice, was courteous.

In the future, Sepracor's document production that cannot be sent electronically should be sent to FLH's New York office via overnight Federal Express. Dey will continue to send its document production via overnight Federal Express from New York to your Alexandria office.

Kimberly

---

Kimberly J. McGraw, Esq.
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, NY 10151
tel: 212-588-0800
fax: 212-588-0500
direct dial: 212-863-2140
kmcgraw@flhlaw.com
www.flhlaw.com

---

**From:** Wolfgang, Jayson [mailto:jayson.wolfgang@bipc.com]
**Sent:** Tuesday, October 17, 2006 5:41 PM
**To:** McGraw, Kimberly
**Cc:** Leff, Elizabeth; Dadio, Susan
**Subject:** RE: Document Production

Dear Kim:

Your statement that Dey will be sending its document production out today for delivery tomorrow " rings hollow " in light of the parties' express agreement that mutual exchange of documents

10/30/2006

would begin today. Sepracor's document production was hand-delivered to your firm's Washington, D.C. office this afternoon, consistent with the parties' agreement. It is inexcusable that you waited until after 4 p.m. today to advise us of Dey's delay when you obviously knew that you would not be producing documents today.

Please forward Dey's production to our firm's Alexandria office.

Jayson

**Buchanan Ingersoll &**
**Rooney PC**
Attorneys & Government Relations Professionals
**Jayson R. Wolfgang**
Attorney at Law
T    717.237.4852          213 Market Street
F    717.233.0852          3rd Floor
jayson.wolfgang@bipc.com   Harrisburg, PA 17101

**From:** McGraw, Kimberly [mailto:KMcGraw@flhlaw.com]
**Sent:** Tuesday, October 17, 2006 4:10 PM
**To:** Wolfgang, Jayson; Dadlo, Susan
**Cc:** Leff, Elizabeth
**Subject:** Document Production

Dear Jayson & Susan,

As Dey's document production will be originating from New York, Dey will be sending its document production via Federal Express to Buchanan Ingersoll's Alexandria's office via Federal Express. If you would like the production sent to BI's Harrisburg office (or to any other location), please let us know as soon as possible.

Sincerely,

Kim

Kimberly J. McGraw, Esq.
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, NY 10151
tel: 212-588-0800
fax: 212-588-0500
direct dial: 212-863-2140
kmcgraw@flhlaw.com
www.flhlaw.com

TAX ADVICE DISCLAIMER: Any federal tax advice contained in this communication (including attachments) was not intended or written to be used, and it cannot be used, by you for the purpose of (1)

avoiding any penalty that may be imposed by the Internal Revenue Service or (2) promoting, marketing or recommending to another party any transaction or matter addressed herein. If you would like such advice, please contact us.

Above email is for intended recipient only and may be confidential and protected by attorney/client privilege.
If you are not the intended recipient, please advise the sender immediately.
Unauthorized use or distribution is prohibited and may be unlawful.

# EXHIBIT 12

**FLH** FROMMER LAWRENCE & HAUG LLP

New York                www.flhlaw.com
745 Fifth Avenue        Washington, DC
New York, NY 10151      Tokyo
Telephone: (212) 588-0800
Fax: (212) 588-0500

October 19, 2006                        Kimberly J. McGraw
                                        Kmcgraw@flhlaw.com

**VIA EMAIL**

Jayson R. Wolfgang, Esq.
Buchanan Ingersoll & Rooney P.C.
One South Market Street
213 Market Street, 3rd Floor
Harrisburg, PA 17101-2121

             Re:   Sepracor v. Dey  1:06-CV-113 (D. Del.)

Dear Jayson:

The documents Sepracor produced to Dey on Tuesday in electronic format are unreadable.
Sepracor must immediately provide Dey its document production in a format that Dey can use.

As explained by our vendor in the attached email, one of the DVDs is corrupted and cannot be
copied, saved or loaded in any way.

Additionally, the DII load files on the DVD which can be opened (and presumably also on the
corrupted DVD) contain improper spacing that prevents the files from being loaded until each
improper space is manually deleted. We do not know why Sepracor's files have these spaces.
When we discussed format you were advised that Dey is loading the documents onto Summation.
According to our vendor, any vendor should know not to generate DII load files containing spaces
because the spaces render the files unusable until each space has been manually removed.
Because the spaces must be manually removed, correction of the spacing problem on our end will
be a sizable task that will take a significant amount of manpower and time to correct.

As such, Dey has essentially received no production from Sepracor.

Sepracor must immediately provide its document production on non-corrupted disks in a format
that does not require substantial editing, e.g., without improper spaces. We expect that Sepracor
will be able to provide such a production tomorrow. I look forward to your immediate response.

                              Sincerely,


                              /s/  Kimberly J. McGraw


KJM/ja


cc:  Susan Dadio

                                                          00405544

-----Original Message-----
From: Pascal
Sent: Thursday, October 19, 2006 4:56 PM
To: McGraw, Kimberly
Subject: RE: Letter

They really should know because if they don't, they are really failing their
client.

    -----Original Message-----
    From: McGraw, Kimberly
    Sent: Thu 10/19/2006 4:42 PM
    To: Pascal
    Cc:
    Subject: RE: Letter


    Thank you very much.  Would any vendor realize that the spacing would
    render the DII files unusable and that in order to load these files,
the
    spaces must be manually removed from every one of the load files?

    -----Original Message-----
    From: Pascal
    Sent: Thursday, October 19, 2006 4:37 PM
    To: McGraw, Kimberly
    Subject: Letter

    Dear Kimberly

    This is in response to your question as to why you are not able to view
    any of the documents provided by Sepracor in their recent production of
    two DVDs that you provided to me yesterday.  There are two
    problems:


    First, the spacing in Sepracor's load files are incorrect.


    This is just an example:
    @T HBSR00001
    @D @I\HRFM001\images\0007\0001
    HBSR 00001.tif


    HBSR 00002.tif

    HBSR 00003.tif

    HBSR 00004.tif

    HBSR 00005.tif

    HBSR 00006.tif

00405574

which should be:

@T HBSR00001
@D @I\HRFM001\images\0007\0001

 HBSR00001.tif

 HBSR00002.tif

 HBSR00003.tif

 HBSR00004.tif

 HBSR00005.tif

 HBSR00006.tif

Summation does not work well with spaces in the tiff names. In order to
load these files, the spaces must be manually removed from every one of
the load files.

Secondly, one of the DVDs (the one containing tiffs SEP0070404 -0138012)
is corrupt.  We are not able to save, copy, or load any of the
information from this DVD.


Sincerely,

Pascal

00405574

# EXHIBIT 13

## McGraw, Kimberly

| | |
|---|---|
| **From:** | McGraw, Kimberly |
| **Sent:** | Friday, October 20, 2006 5:00 PM |
| **To:** | McGraw, Kimberly; 'Walker, Barbara' |
| **Cc:** | 'Wolfgang, Jayson'; 'Dadio, Susan'; Leff, Elizabeth |
| **Subject:** | RE: Letter re Production |

Dear Barbara,

This is in response to our conversation of a few minutes ago.   Sepracor's offer to find someone who can deal with the problem of Sepracor's problem document production on Monday morning is unacceptable. We sent you our letter advising you of the problems with Sepracor's production yesterday.   You waited until after 4:00 on a Friday afternoon to respond.

You now state that there is only one person who can help resolve this problem at they are not available until Monday.  You further advised that this person is in house at your law firm and was not involved in producing the DVDs sent to Dey.

You also refused to contact the vendor immediately who prepared the DVDs because the "vendor won't be able to help" and instead first want to check with your single in house person

Sepracor's continuing delay in providing suitable production is unexcusable.

Kim

---

**From:** McGraw, Kimberly
**Sent:** Friday, October 20, 2006 4:30 PM
**To:** 'Walker, Barbara'
**Cc:** Wolfgang, Jayson; Dadio, Susan; Leff, Elizabeth
**Subject:** RE: Letter re Production
**Importance:** High

Dear Barbara,

We would like for you to set up a call with your technical personnel as soon as possible.

Also, we did test the DVD on three separate computers and the DVD would not work on any of them.  As such, (and as we stated in our letter of yesterday) we do believe the DVD is corrupted and would like another copy sent as soon as possible. Additionally, I do not understand your statement that the .dii files were specifically prepared to take into account the spacing in the tiff image file names burned on the disk as the files we received still contain spacing that prevents the proper loading of the files.  However, perhaps the technical personnel can sort out.

Please contact me immediately so that we can arrange to have the technical personnel discuss how to resolve these problems.

Kim

**From:** Walker, Barbara [mailto:barbara.walker@bipc.com]
**Sent:** Friday, October 20, 2006 4:07 PM
**To:** McGraw, Kimberly
**Cc:** Wolfgang, Jayson; Dadio, Susan; Leff, Elizabeth
**Subject:** Letter re Production

Please see the attached letter.


TAX ADVICE DISCLAIMER: Any federal tax advice contained in this communication (including attachments) was not intended or written to be used, and it cannot be used, by you for the purpose of (1) avoiding any penalty that may be imposed by the Internal Revenue Service or (2) promoting, marketing or recommending to another party any transaction or matter addressed herein. If you would like such advice, please contact us.

Above email is for intended recipient only and may be confidential and protected by attorney/client privilege.
If you are not the intended recipient, please advise the sender immediately.
Unauthorized use or distribution is prohibited and may be unlawful.

10/30/2006

# EXHIBIT 14

**FL+H** **FROMMER LAWRENCE & HAUG** LLP

Washington DC          www.flhlaw.com
1667 K Street NW        New York
Washington, DC 20006    Tokyo
Telephone: (202) 292-1530
Fax: (202) 292-1531

October 23, 2006

Kimberly J. McGraw
KMcGraw@flhlaw.com

**VIA E-MAIL**

Susan Dadio
Buchanan Ingersoll & Rooney PC
1737 King Street, Suite 500
Alexandria, VA 22314-2727

Re:    *Sepracor v. Dey*; Our Reference No. 540013-502

Dear Susan:

We have performed an initial review of the documents provided by Sepracor and it appears that the only documents Sepracor has provided are Sepracor's NDA and associated FDA documents. We have not identified any documents relating to the development of the alleged invention of the patents in suit.

If Sepracor has indeed produced such documents, please identify by Bates Numbers where these documents are located.

We look forward to your response by the close of business tomorrow. If we do not hear from you, we shall contact the court regarding Sepracor's failure to produce responsive documents to Dey's document requests.

                    Very truly yours,


                    Kimberly McGraw


//yhw

cc:    Jayson Wolfgang, Esq.

00406267

# EXHIBIT 15

**REDACTED**

# EXHIBIT 16

**REDACTED**

# EXHIBIT 17

**FLH  FROMMER LAWRENCE & HAUG LLP**

Washington DC
1667 K Street NW
Washington, DC 20006
Telephone: (202) 292-1530
Fax: (202) 292-1531

www.flhlaw.com
New York
Tokyo

October 9, 2006

Elizabeth A. Leff
ELeff@flhlaw.com

**VIA E-MAIL**

Susan Dadio
Buchanan Ingersoll & Rooney PC
1737 King Street, Suite 500
Alexandria, VA 22314-2727

Re:    *Sepracor v. Dey*; Our Reference No. 540013-502

Dear Susan:

I have not yet received a response to my letter of September 26, 2006 regarding the deficiencies in Sepracor's responses to Dey's First Set of Interrogatories. In that letter, I requested that you respond within 10 days. That time has expired.

Accordingly, and pursuant to Local Rule 7.1, Dey requests a meet and confer telephone conference with Sepracor to discuss Sepracor's failure to adequately respond to Dey's interrogatories. We propose holding the telephone conference on Wednesday, October 11 at 2 p.m. Please advise if you are available. If you are not available, please suggest alternate times on October 11 or 12, 2006.

I look forward to hearing from you.

Very truly yours,

Elizabeth A. Leff

cc:    Steven Balick

00402906

# EXHIBIT 18

# Buchanan Ingersoll ∧ Rooney PC
### Attorneys & Government Relations Professionals

P.O. Box 1404
Alexandria, VA 22313-1404

1737 King Street, Suite 500
Alexandria, VA 22314-2727

T 703 836 6620
F 703 836 2021
www.buchananingersoll.com

Susan M. Dadio
703 838 6531
susan.dadio@bipc.com

October 11, 2006

VIA ELECTRONIC MAIL

Elizabeth A. Leff, Esq.
Frommer Lawrence & Haug, L.L.P.
1667 K Street, N.W.
Washington, D.C. 20006

    Re:    *Sepracor Inc. v. Dey, L.P. and Dey, Inc.*
            Civil Action No. 06-113 KAJ

Dear Elizabeth:

    We are in receipt of your letters dated September 26, 2006 and October 9, 2006 in connection with Sepracor's objections and responses to Dey's first set of interrogatories. We are carefully reviewing and considering each of the issues you have raised and will respond to your comments regarding those issues as soon as we have completed our review. Certainly, if appropriate, Sepracor will make every effort to supplement its objections and responses.

                Sincerely,

                BUCHANAN INGERSOLL & ROONEY PC

                Susan M. Dadio

SMD/lp

# EXHIBIT 19

**FLH** **FROMMER LAWRENCE & HAUG** LLP

Washington DC
1667 K Street NW
Washington, DC 20006
Telephone: (202) 292-1530
Fax: (202) 292-1531

www.flhlaw.com
New York
Tokyo

October 11, 2006

Elizabeth A. Leff
ELeff@flhlaw.com

**VIA E-MAIL**

Susan Dadio
Buchanan Ingersoll & Rooney PC
1737 King Street, Suite 500
Alexandria, VA 22314-2727

Re:    *Sepracor v. Dey*: Our Reference No. 540013-502

Dear Susan:

Thank you for your letter of this morning.  Your statement that you are carefully considering the issues raised in my September 26, 2006 letter rings hollow in light of the fact that it has been over two weeks since I sent you that letter, and your letter came only after I requested a meet and confer teleconference.  Rather, your slow response to my letter regarding Sepracor's deficient responses is in keeping with Sepracor's continuing delay in producing any documents.

If we do not receive substantive responses to my letter of September 26 by Tuesday, October 17, 2006, we will seek the assistance of the Court.

Very truly yours,

Elizabeth A. Leff

cc:    Steven Balick

00403442

# EXHIBIT 20

**From:** Dadio, Susan [mailto:susan.dadio@bipc.com]
**Sent:** Tuesday, October 17, 2006 7:34 PM
**To:** Leff, Elizabeth
**Subject:** RE: Sepracor v. Dey

Dear Elizabeth:

In our letter of October 11, 2006, we indicated that we would respond to your comments as soon as we completed our review and consideration of the issues you have raised concerning Sepracor's objections and responses to Dey's interrogatories.  We disagree that Dey can arbitrarily set deadlines for us.  We are diligently conducting the review of your comments and will have a response to you on Friday, October 20, 2006.

Sincerely,
Susan

# Buchanan Ingersoll & Rooney PC
**Susan M. Dadio, Esquire**
Shareholder

703 838-6531 direct       1737 King Street, Suite 500
703 836-2021 fax          Alexandria, VA  22314
dadiosm@bipc.com          www.bipc.com

# EXHIBIT 21

# REDACTED