**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SEPRACOR, INC., | ) |
| | ) |
| Plaintiff, | ) |
| Counterclaim-Defendant, | ) C.A. No. 06-113-***(MPT) |
| | ) C.A. No. 06-604-***(MPT) |
| v. | ) (Consolidated) |
| | ) |
| DEY, L.P. and DEY, INC., | ) |
| | ) |
| Defendants, | ) |
| Counterclaim Plaintiffs. | ) |

**DEFENDANTS' OBJECTIONS AND RESPONSES**
**TO SEPRACOR'S NOTICES OF RULE 30(b)(6) DEPOSITION**

Defendants Dey, L.P., and Dey, Inc. (collectively "Dey") hereby make the following

consolidated objections to the Notices of Rule 30(b)(6) Deposition ("Notice of Deposition")

topics served by Sepracor, Inc. ("Sepracor") on April 3, 2007, and noticed for 9:00 am on April

26, 2007 at the offices of Buchanan Ingersoll & Rooney PC, 1737 King Street, Suite 500,

Alexandria VA 22314.

## GENERAL OBJECTIONS

Dey makes the following General Objections to the topics of examination set forth in Exhibit A to the Notice Deposition:

1. Dey objects to each and every topic of examination to the extent that it seeks to impose requirements or obligations on Dey in addition to or different from those imposed by the Federal Rules of Civil Procedure and/or the Local Civil Rules for the District of Delaware.

2. Dey objects to each and every topic of examination to the extent that it calls for testimony that is protected from discovery by the attorney-client privilege, the work product doctrine and/or any other applicable privilege or immunity. Nothing contained in these objections is intended to be, or in any way constitutes, a waiver of any such applicable privilege or immunity.

3. Dey objects to Sepracor's use of undefined terms that are subject to multiple interpretations, thus rendering a topic vague and ambiguous. Dey's responses will be based on its interpretation of undefined terms, which may be inconsistent with Sepracor's interpretation.

4. Dey objects to any topic calling for information that concerns the exploratory efforts of Dey's counsel in investigating the issues in this case and preparing this case for trial. *See Mass. v. First Nat'l Supermarkets, Inc.*, 112 F.R.D. 149, 153 (D. Mass. 1986); *Besly-Welles Corp. v. Balax, Inc.*, 43 F.R.D. 368, 370-71 (E.D. Wis. 1968). Such topics would tend to reveal counsel's mental impressions, conclusions, opinions, or legal theories. Consequently, such materials are beyond the ambit of discovery. *See* Fed. R. Civ. P. 26(b)(3).

5. Dey objects to any topic to the extent it seeks the identification of "all" facts, factual bases, legal bases, or communications since such an interrogatory is overly broad, unduly burdensome, and oppressive.

6.    Dey objects to the April 26, 2007 date as unduly burdensome.  Dey will work with Sepracor to arrive at a mutually agreeable date.

7.    Dey objects to the noticed location.  Dey will make designated witnesses available in Napa California.

## SPECIFIC OBJECTIONS

**Topic of Examination No. 1**

All facts and circumstances upon which Dey, Inc. (hereinafter "Dey") intends to rely to support any contention that Dey has not infringed, and will not infringe (directly, indirectly, contributorily, and/or by inducement) any claim of U.S. Patent Nos. 5,362,755, 5,547,994, 5,760,090, 5,844,002, and 6,083,993 (hereafter the " '755, '994, '090, '002, and '993 patents.)

**Response to Topic of Examination No. 1**

See the General Objections.  Dey also objects to this topic of examination as duplicative of Sepracor's other discovery requests.  (*See, e.g.,* Sepracor's Interrogatory Nos. 1, 2, 6 and 7).

Dey objects on the basis that this topic of examination improperly seeks to elicit legal conclusions, legal theories, or legal defenses, or otherwise confidential information protected by the attorney work product doctrine, or attorney-client privilege.  See, e.g., *JPMorgan Chase Bank ex rel. Mahonia Ltd. v. Liberty Mut. Ins. Co.*, 209 F.R.D. 361, 363 (S.D.N.Y. 2002)(denying plaintiff's request to compel 30(b)(6) responses and holding that its requests for 'facts' were a guise for requesting "mental impressions, conclusions, opinions, and legal theory," which as classic work product, is shielded from discovery under Fed. R. Civ. P 26(b)(3)); S.E.C. v. Buntrock, 2004 WL 1470278 at *3 (N.D. Ill. 2004)(holding that the magistrate was correct in finding that what the 30(b)(6) deposition sought "as 'facts' are not merely facts at all, but legal theories and explanation of those theories" and quashing 30(b)(6) deposition).  Dey also further objects to this topic of examination as improperly addressed to deposition rather than to interrogatory form because contention depositions are not permitted in the District of Delaware.

> It has been the consistent position of this Court that a lay person shouldn't be required to formulate a party's contention in response to deposition questioning and that not even a lawyer should be required to formulate trial strategy and contentions in immediate response to questions on deposition.  And it has accordingly been the consistent practice to require that contention discovery, which is clearly permissible and very constructive in narrowing the issues, but to confine it to interrogatories to a party, period.

*Tiegel Manufacturing Co. v. Globe-Union, Inc.,* C.A. No. 84-483 (D. Del. 1984), Hearing

Transcript at p. 14. (attached as Exhibit A.) See, also, *S.E.C. v. Rosenfeld,* 1997 U.S. Dist.

LEXIS 13996 at *6 (S.D.N.Y. 1997) (granting motion for protective order where subject matter

of 30(b)(6) deposition "would include disclosure of [] legal and factual theories . . . and other

matters constituting attorney work product" and where defendant had shown no reason not to

utilize interrogatories appropriate to the stage of discovery).

Dey objects to this topic insofar as it requires expert testimony. Dey further objects to

this topic as premature inasmuch as the Court has not construed the meaning of any claim

language. Dey also objects to this topic insofar as it calls for Dey to furnish evidence on matters

Sepracor must prove to prevail at trial, and thus seeks to shift the burden of proof from Sepracor

to Dey.

For the foregoing reasons, Dey will not produce a 30(b)(6) deposition witness in response

to this topic.

## Topic of Examination No. 2

All facts and circumstances upon which Dey intends to rely to support any contention
that the claims of the '755, '994, '090, '002, and '993 patents are so limited that no claim can be
construed as covering any activity for which the levalbuterol inhalation products of ANDA Nos.
77-800 and 78-309 will be used.

## Response to Topic of Examination No. 2

See the General Objections. Dey also objects to this topic of examination as duplicative

of Sepracor's other discovery requests. (*See, e.g.,* Sepracor's Interrogatory Nos. 1, 2, 6 and 7).

Dey objects on the basis that this topic of examination improperly seeks to elicit legal

conclusions, legal theories, or legal defenses, or otherwise confidential information protected by

the doctrine of attorney work product, or attorney-client privilege. *See, e.g., JPMorgan Chase*

*Bank ex rel. Mahonia Ltd. v. Liberty Mut. Ins. Co.,* 209 F.R.D. 361, 363 (S.D.N.Y.

2002)(denying plaintiff's request to compel 30(b)(6) responses and holding that its requests for 'facts' were a guise for requesting "mental impressions, conclusions, opinions, and legal theory," which as classic work product, is shielded from discovery under Fed. R. Civ. P 26(b)(3)); *S.E.C. v. Buntrock*, 2004 WL 1470278 at *3 (N.D. Ill. 2004)(holding that the magistrate was correct in finding that what the 30(b)(6) deposition sought "as 'facts' are not merely facts at all, but legal theories and explanation of those theories" and quashing 30(b)(6) deposition). Dey also objects to this topic of examination as improperly addressed to deposition rather than to interrogatory form because contention depositions are not permitted in the District of Delaware.

> It has been the consistent position of this Court that a lay person shouldn't be required to formulate a party's contention in response to deposition questioning and that not even a lawyer should be required to formulate trial strategy and contentions in immediate response to questions on deposition. And it has accordingly been the consistent practice to require that contention discovery, which is clearly permissible and very constructive in narrowing the issues, but to confine it to interrogatories to a party, period.

*Tiegel Manufacturing Co. v. Globe-Union, Inc.*, C.A. No. 84-483 (D. Del. 1984), Hearing Transcript at p. 14. (attached as Exhibit A.). *See, also., S.E.C. v. Rosenfeld*, 1997 U.S. Dist. LEXIS 13996 at *6 (S.D.N.Y. 1997) (granting motion for protective order where subject matter of 30(b)(6) deposition "would include disclosure of [] legal and factual theories . . . and other matters constituting attorney work product" and where defendant had shown no reason not to utilize interrogatories appropriate to the stage of discovery).

Dey objects to this topic insofar as it requires expert testimony. Dey further objects to this topic as premature inasmuch as the Court has not construed the meaning of any claim language. Dey also objects to this topic insofar as it calls for Dey to furnish evidence on matters Sepracor must prove to prevail at trial, and thus seeks to shift the burden of proof from Sepracor to Dey.

For the foregoing reasons, Dey will not produce a 30(b)(6) deposition witness in response to this topic.

## Topic of Examination No. 3

All facts and circumstances upon which Dey intends to rely to support its contention that each and every asserted claim of '755, '994, '090, '002, and '993 patents is invalid for failure to meet one or more of the requirements of Title 35, United States Code, including Sections 101, 102, 103, and 112 and/or for improper double patenting.

## Response to Topic of Examination No. 3

See the General Objections. Dey also objects to this topic of examination as duplicative of Sepracor's other discovery requests. (*See, e.g.,* Sepracor's Interrogatory Nos. 4, 5, 8 and 12).

Dey objects on the basis that this topic of examination improperly seeks to elicit legal conclusions, legal theories, or legal defenses, or otherwise confidential information protected by the doctrine of attorney work product, or the attorney-client privilege. *See, e.g., JPMorgan Chase Bank ex rel. Mahonia Ltd. v. Liberty Mut. Ins. Co.*, 209 F.R.D. 361, 363 (S.D.N.Y. 2002) (denying plaintiff's request to compel 30(b)(6) responses and holding that its requests for 'facts' were a guise for requesting "mental impressions, conclusions, opinions, and legal theory," which as classic work product, is shielded from discovery under Fed. R. Civ. P 26(b)(3)); *S.E.C. v. Buntrock*, 2004 WL 1470278 at *3 (N.D. Ill. 2004) (holding that the magistrate was correct in finding that what the 30(b)(6) deposition sought "as 'facts' are not merely facts at all, but legal theories and explanation of those theories" and quashing the 30(b)(6) deposition). Dey also objects to this topic of examination as improperly addressed to deposition rather than to interrogatory form because contention depositions are not permitted in the District of Delaware.

> It has been the consistent position of this Court that a lay person shouldn't be required to formulate a party's contention in response to deposition questioning and that not even a lawyer should be required to formulate trial strategy and contentions in immediate response to questions on deposition. And it has accordingly been the consistent practice to require that contention discovery,

which is clearly permissible and very constructive in narrowing the issues, but to
confine it to interrogatories to a party, period.

*Tiegel Manufacturing Co. v. Globe-Union, Inc.*, C.A. No. 84-483 (D. Del. 1984), Hearing

Transcript at p. 14. (attached as Exhibit A.). *See, also, S.E.C. v. Rosenfeld*, 1997 U.S. Dist.

LEXIS 13996 at *6 (S.D.N.Y. 1997) (granting motion for protective order where subject matter

of 30(b)(6) deposition "would include disclosure of [] legal and factual theories . . . and other

matters constituting attorney work product" and where defendant had shown no reason not to

utilize interrogatories appropriate to the stage of discovery).

Dey objects to this topic insofar as it requires expert testimony. Dey objects to this topic

insofar as it requests expert information before the date for providing expert reports. Dey further

objects to this topic as premature inasmuch as the Court has not construed the meaning of any

claim language.

For the foregoing reasons, Dey will not produce a 30(b)(6) deposition witness in response

to this topic.

## Topic of Examination No. 4

All facts and circumstances upon which Dey intends to rely to support its contention that
Sepracor's case is not exceptional under 35 U.S.C. § 285.

## Response to Topic of Examination No. 4

See the General Objections. Dey objects on the basis that this topic of examination

improperly seeks to elicit legal conclusions, legal theories, or legal defenses, or otherwise

confidential information protected by the doctrine of attorney work product, or the attorney-

client privilege. *See, e.g., JPMorgan Chase Bank ex rel. Mahonia Ltd. v. Liberty Mut. Ins. Co.*,

209 F.R.D. 361, 363 (S.D.N.Y. 2002)(denying plaintiff's request to compel 30(b)(6) responses

and holding that its requests for 'facts' were a guise for requesting "mental impressions,

conclusions, opinions, and legal theory," which as classic work product, is shielded from

8

discovery under Fed. R. Civ. P 26(b)(3)); *S.E.C. v. Buntrock*, 2004 WL 1470278 at *3 (N.D. Ill.

2004)(holding that the magistrate was correct in finding that what the 30(b)(6) deposition sought

"as 'facts' are not merely facts at all, but legal theories and explanation of those theories" and

quashing 30(b)(6) deposition). Dey also objects to this topic of examination as improperly

addressed to deposition rather than to interrogatory form because contention depositions are not

permitted in the District of Delaware.

> It has been the consistent position of this Court that a lay person shouldn't be required to formulate a party's contention in response to deposition questioning and that not even a lawyer should be required to formulate trial strategy and contentions in immediate response to questions on deposition. And it has accordingly been the consistent practice to require that contention discovery, which is clearly permissible and very constructive in narrowing the issues, but to confine it to interrogatories to a party, period.

*Tiegel Manufacturing Co. v. Globe-Union, Inc.*, C.A. No. 84-483 (D. Del. 1984), Hearing

Transcript at p. 14. (attached as Exhibit A.). *See, also, S.E.C. v. Rosenfeld*, 1997 U.S. Dist.

LEXIS 13996 at *6 (S.D.N.Y. 1997) (granting motion for protective order where subject matter

of 30(b)(6) deposition "would include disclosure of [] legal and factual theories . . . and other

matters constituting attorney work product" and where defendant had shown no reason not to

utilize interrogatories appropriate to the stage of discovery).

Dey further objects to this topic as premature because Dey's Motion to Strike Plaintiff's

Allegations Concerning Willful Infringement is pending.

For the foregoing reasons, Dey will not produce a 30(b)(6) deposition witness in response

to this topic.

## Topic of Examination No. 5

The existence of any opinions received by Dey or any corporate patent, subsidiaries, affiliates, divisions, predecessors, successors, or any other related entity of Dey prior to making its Paragraph IV Certification in ANDA Nos. 77-800 and 78-309 regarding infringement, validity, and/or enforceability of the '755, '994, '090, '002, and '993 patents, as well as any such opinions obtained by Dey or any corporate parent, subsidiaries, affiliates, divisions,

predecessors, successors, or any other related entity of Dey after the Paragraph IV Certifications were made in these ANDAs.

**Response to Topic of Examination No. 5**

See the General Objections. Dey further objects to this topic as premature because Dey's Motion to Strike Plaintiff's Allegations Concerning Willful Infringement is pending. Dey objects to the extent this topic calls for information protected by the attorney-client privilege, the attorney work product doctrine, or any other privilege or immunity.

For the foregoing reasons, Dey will not produce a 30(b)(6) deposition witness in response to this topic.

**Topic of Examination No. 6**

The nature and substance of the opinions expressed in the Notice Letters to Sepracor Inc. regarding ANDA No. 77-800, dated January 9, 2006 and ANDA No. 78-309, dated August 14, 2006.

**Response to Topic of Examination No. 6**

See the General Objections. Dey objects to topic of examination as vague and ambiguous in that the term "nature" of the opinion is incomprehensible. To the extent Dey understands what is meant by the "substance" of the opinions expressed in the Notice Letters, it is contained within the Notice Letters themselves.

Dey further objects to this topic as premature because Dey's Motion to Strike Plaintiff's Allegations Concerning Willful Infringement is pending. Dey objects to the extent this topic calls for information protected by the attorney-client privilege, the attorney work product doctrine, or any other privilege or immunity.

For the foregoing reasons, Dey will not produce a 30(b)(6) deposition witness in response to this topic.

**Topic of Examination No. 7**

All facts and circumstances upon which Dey intends to rely to support its contention that it is not properly a party in this action and Sepracor Inc. is not entitled to damages and any such claim is premature.

**Response to Topic of Examination No. 7**

See the General Objections.  Dey objects on the basis that this topic of examination improperly seeks to elicit legal conclusions, legal theories, or legal defenses, or otherwise confidential information protected by the doctrine of attorney work product, or the attorney-client privilege.  *See, e.g., JPMorgan Chase Bank ex rel. Mahonia Ltd. v. Liberty Mut. Ins. Co.,* 209 F.R.D. 361, 363 (S.D.N.Y. 2002)(denying plaintiff's request to compel 30(b)(6) responses and holding that its requests for 'facts' were a guise for requesting "mental impressions, conclusions, opinions, and legal theory," which as classic work product, is shielded from discovery under Fed. R. Civ. P 26(b)(3)); *S.E.C. v. Buntrock,* 2004 WL 1470278 at *3 (N.D. Ill. 2004)(holding that magistrate was correct in finding that what 30(b)(6) deposition sought "as 'facts' are not merely facts at all, but legal theories and explanation of those theories" and quashing 30(b)(6) deposition).  Dey also further objects to this topic of examination as improperly addressed to deposition rather than to interrogatory form because contention depositions are not permitted in the District of Delaware.

> It has been the consistent position of this Court that a lay person shouldn't be required to formulate a party's contention in response to deposition questioning and that not even a lawyer should be required to formulate trial strategy and contentions in immediate response to questions on deposition.  And it has accordingly been the consistent practice to require that contention discovery, which is clearly permissible and very constructive in narrowing the issues, but to confine it to interrogatories to a party, period.

*Tiegel Manufacturing Co. v. Globe-Union, Inc.,* C.A. No. 84-483 (D. Del. 1984), Hearing Transcript at p. 14. (attached as Exhibit A).  *See, also, S.E.C. v. Rosenfeld,* 1997 U.S. Dist. LEXIS 13996 at *6 (S.D.N.Y. 1997) (granting motion for protective order where subject matter

of 30(b)(6) deposition "would include disclosure of [] legal and factual theories . . . and other

matters constituting attorney work product" and where defendant had shown no reason not to

utilize interrogatories appropriate to stage of discovery).

For the foregoing reasons, Dey will not produce a 30(b)(6) deposition witness in response

to this topic.

## Topic of Examination No. 8

All facts and circumstances upon which Dey intends to rely to support its contention that
the '755, '994, '090, '002, and '993 patents are unenforceable due to inequitable conduct of
Sepracor, its agents, and/or attorneys.

## Response to Topic of Examination No. 8

See the General Objections. Dey objects on the basis that this topic of examination

improperly seeks to elicit legal conclusions, legal theories, or legal defenses, or otherwise

confidential information protected by the doctrine of attorney work product, or the attorney-

client privilege. *See, e.g., JPMorgan Chase Bank ex rel. Mahonia Ltd. v. Liberty Mut. Ins. Co.*,

209 F.R.D. 361, 363 (S.D.N.Y. 2002)(denying plaintiff's request to compel 30(b)(6) responses

and holding that its requests for 'facts' were a guise for requesting "mental impressions,

conclusions, opinions, and legal theory," which as classic work product, is shielded from

discovery under Fed. R. Civ. P 26(b)(3)); *S.E.C. v. Buntrock*, 2004 WL 1470278 at *3 (N.D. Ill.

2004)(holding that the magistrate was correct in finding that what the 30(b)(6) deposition sought

"as 'facts' are not merely facts at all, but legal theories and explanation of those theories" and

quashing the 30(b)(6) deposition). Dey also further objects to this topic of examination as

improperly addressed to deposition rather than to interrogatory form because contention

depositions are not permitted in the District of Delaware.

It has been the consistent position of this Court that a lay person shouldn't be
required to formulate a party's contention in response to deposition questioning
and that not even a lawyer should be required to formulate trial strategy and

12

> contentions in immediate response to questions on deposition. And it has
> accordingly been the consistent practice to require that contention discovery,
> which is clearly permissible and very constructive in narrowing the issues, but to
> confine it to interrogatories to a party, period.

*Tiegel Manufacturing Co. v. Globe-Union, Inc.*, C.A. No. 84-483 (D. Del. 1984), Hearing

Transcript at p. 14. (attached as Exhibit A.). *See, also, S.E.C. v. Rosenfeld*, 1997 U.S. Dist.

LEXIS 13996 at *6 (S.D.N.Y. 1997) (granting motion for protective order where subject matter

of 30(b)(6) deposition "would include disclosure of [] legal and factual theories . . . and other

matters constituting attorney work product" and where defendant had shown no reason not to

utilize interrogatories appropriate to stage of discovery).

Dey objects to this topic insofar as it requests information requiring expert testimony.

Dey further objects to this topic as premature inasmuch as the Court has not construed the

meaning of any claim language.

For the foregoing reasons, Dey will not produce a 30(b)(6) deposition witness in response

to this topic.

## Topic of Examination No. 9

All facts and circumstances upon which Dey intends to rely to support its contention that
the '755, '994, '090, '002, and '993 patents are invalid for improper inventorship under 35
U.S.C. § 102(f).

## Response to Topic of Examination No. 9

See the General Objections. Dey also objects to this topic of examination as duplicative

of Sepracor's other discovery requests. (*See, e.g.,* Sepracor's Interrogatory Nos. 4, 8 and 12).

Dey objects on the basis that this topic of examination improperly seeks to elicit legal

conclusions, legal theories, or legal defenses, or otherwise confidential information protected by

the doctrine of attorney work product, or the attorney-client privilege. *See, e.g., JPMorgan*

*Chase Bank ex rel. Mahonia Ltd. v. Liberty Mut. Ins. Co.*, 209 F.R.D. 361, 363 (S.D.N.Y. 2002)

(denying plaintiff's request to compel 30(b)(6) responses and holding that its requests for 'facts' were a guise for requesting "mental impressions, conclusions, opinions, and legal theory," which as classic work product, is shielded from discovery under Fed. R. Civ. P 26(b)(3))*; S.E.C. v. Buntrock*, 2004 WL 1470278 at *3 (N.D. Ill. 2004) (holding that the magistrate was correct in finding that what the 30(b)(6) deposition sought "as 'facts' are not merely facts at all, but legal theories and explanation of those theories" and quashing 30(b)(6) deposition).  Dey also further objects to this topic of examination as improperly addressed to deposition rather than to interrogatory form because contention depositions are not permitted in the District of Delaware.

> It has been the consistent position of this Court that a lay person shouldn't be required to formulate a party's contention in response to deposition questioning and that not even a lawyer should be required to formulate trial strategy and contentions in immediate response to questions on deposition.  And it has accordingly been the consistent practice to require that contention discovery, which is clearly permissible and very constructive in narrowing the issues, but to confine it to interrogatories to a party, period.

*Tiegel Manufacturing Co. v. Globe-Union, Inc.*, C.A. No. 84-483 (D. Del. 1984), Hearing Transcript at p. 14. (attached as Exhibit A.).  *See, also, S.E.C. v. Rosenfeld*, 1997 U.S. Dist. LEXIS 13996 at *6 (S.D.N.Y. 1997) (granting motion for protective order where subject matter of 30(b)(6) deposition "would include disclosure of [] legal and factual theories . . . and other matters constituting attorney work product" and where defendant had shown no reason not to utilize interrogatories appropriate to the stage of discovery).

Dey objects to this topic insofar as it requires expert testimony.

For the foregoing reasons, Dey will not produce a 30(b)(6) deposition witness in response to this topic.

## Topic of Examination No. 10

All facts and circumstances regarding ANDA Nos. 77-800 and 78-309, including the decision to file the ANDAs to obtain approval to engage in the commercial manufacture, use,

and/or sale of levalbuterol hydrochloride inhalation solutions and levalbuterol hydrochloride inhalation solution concentrate.

**Response to Topic of Examination No. 10**

See the General Objections. Dey further objects to this topic requesting all facts and circumstances regarding ANDA Nos. 77-800 and 78-309 as overly broad, unduly burdensome, vague and ambiguous. Dey objects to the extent this topic calls for information protected by the attorney-client privilege, work product immunity or any other privilege or immunity. Dey also objects to this topic of examination as duplicative of Sepracor's other discovery requests. (*See, e.g.,* Sepracor's Interrogatory No. 9).

Subject to the foregoing general and specific objections, Dey will designate a witness to testify on Dey's decision to obtain approval to manufacture and sell its levalbuterol ANDA products.

**Topic of Examination No. 11**

All facts and circumstances regarding any actual evaluations and projections of the market for levalbuterol products, projected sales and pricing of levalbuterol products, the advantages of levalbuterol over racemic albuterol, and the success of levalbuterol in the market in view of the availability of generic racemic albuterol products.

**Response to Topic of Examination No. 11**

See the General Objections. Dey objects to this topic of examination as overly broad, vague and ambiguous. Dey further objects to this topic as calling for expert testimony. Subject to the foregoing general and specific objections Dey will designate a witness to testify on any evaluations and projections of the market for levalbuterol products and any projected sales and pricing of levalbuterol products.

**Topic of Examination No. 12**

All facts and circumstances regarding any marketing plan or materials, including all marketing materials for ACCUNEB® racemic albuterol inhalation solutions, including those that refer in any way to levalbuterol, the (R) isomer of albuterol, the (S) isomer of albuterol, and/or

Sepracor's XOPENEX® (levalbuterol hydrochloride) inhalation solutions and/or Sepracor's XOPENEX® (levalbuterol hydrochloride) inhalation solution concentrate, including but not limited to the marketing materials developed by William Isaacs Health Communications and/or NIA Creative.

## Response to Topic of Examination No. 12

See the General Objections. Dey objects to this topic as vague and ambiguous in that it does not understand what is meant by "[a]ll facts and circumstances regarding any marketing plan …." Dey further objects to this topic of examination as overly broad, unduly burdensome in that information relating to ACCUNEB, a different product is neither relevant to any issue in this action nor reasonably calculated to lead to the discovery of admissible evidence. See Fed. R. Civ. P. 26(b)(1).

For the foregoing reasons, Dey will not produce a 30(b)(6) deposition witness in response to this topic.

## Topic of Examination No. 13

All facts and circumstances regarding the sales volumes, price, and market share of ACCUNEB® racemic albuterol inhalation solutions for each year since ACCUNEB® was introduced into the market.

## Response to Topic of Examination No. 13

See the General Objections. Dey objects to this topic as vague and ambiguous in that it does not understand what is meant by "[a]ll facts and circumstances regarding the sales volumes …." Dey further objects to this topic of examination as overly broad, unduly burdensome in that information relating to ACCUNEB, a different product is neither relevant to any issue in this action nor reasonably calculated to lead to the discovery of admissible evidence. Dey further objects because Sepracor can obtain this sales information, directly from IMS.

For the foregoing reasons, Dey will not produce a 30(b)(6) deposition witness in response to this topic.

**Topic of Examination No. 14**

All facts and circumstances regarding the relationship between Dey Inc. and Dey, L.P.

**Response to Topic of Examination No. 14**

See the General Objections. Dey objects to this topic in that "[a]ll facts and circumstances regarding the relationship…" is vague and ambiguous. Dey further objects to this topic to the extent it calls for information protected by the attorney-client privilege, attorney work product doctrine, or any other privilege or immunity. Subject to these objections, Dey will designate a witness to testify on the facts and circumstances regarding the relationship between Dey Inc. and Dey, L.P.

**Topic of Examination No. 15**

All facts and circumstances regarding any discussions and/or communications, whether oral or in writing, between Dey and Sepracor concerning levalbuterol.

**Response to Topic of Examination No. 15**

See the General Objections. Dey objects to this topic of examination as overly broad and unduly burdensome in that it requests "[a]ll facts and circumstances." Dey also objects to this topic insofar as it calls for Dey to furnish evidence that is equally available to Sepracor, or information or documents already in Sepracor's possession.

Subject to the foregoing general and specific objections, Dey will designate a witness to testify regarding any knowledge Dey has of discussions or communications between Sepracor and Dey concerning levalbuterol.

**Topic of Examination No. 16**

The nature and substance of all searches made by or on behalf of Dey to locate documents and things responsive to Sepracor's Document Requests.

17

**Response to Topic of Examination No. 16**

See the General Objections.  Dey objects to this topic as vague and ambiguous.  Dey does not understand what is meant by the "nature and substance" of searches.  Dey objects to this topic to the extent it calls for information protected by the attorney client privilege, the work product doctrine, or any other privilege or immunity.  Subject to the foregoing general and specific objections, Dey will designate a witness to testify regarding the procedure followed to locate documents and things responsive to Sepracor's document requests.

ASHBY & GEDDES

/s/ *John G. Day*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendants
Dey, L.P. and Dey, Inc.*

*Of Counsel:*

Edgar H. Haug
John S. Goetz
FROMMER, LAWRENCE & HAUG L.L.P.
745 Fifth Avenue
New York, New York 10151
(212) 588-0800

Elizabeth A. Leff
FROMMER, LAWRENCE & HAUG L.L.P.
1667 K Street, N.W.
Washington, D.C. 20006
(202) 292-1530

Dated: April 19, 2007
179846.1

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

TIEGEL MANU CO.,                 )
                                 )
                Plaintiff,       )
                                 )
        v.                       )        Civil Action No. 84-483
                                 )
GLOBE-UNION, INC.,               )
                                 )
                Defendant.       )


                                Wilmington, Delaware
                                October 5, 1984
                                2:25 o'clock p.m.


BEFORE:

                THE HON. WALTER K. STAPLETON, Chief Judge

                A P P E A R A N C E S

For Plaintiff:

                COLLINS J. SEITZ, JR., ESQUIRE
                Connolly, Bove, Lodge & Huts
                FRANK J. BENASUTTI, ESQUIRE
                C. FREDERICK KOENIG, III, ESQUIRE

For Defendant:

                MARY B. GRAHAM, ESQUIRE
                Morris, Nichols, Arsht & Tunnell
                GARY CLARK, ESQUIRE [By conference telephone]
                JAN WEIR, ESQUIRE [By conference telephone]

1          [The following occurred in Chambers:]

2              THE COURT: We are going to have one

3  participant from California whose name is --

4              MS. GRAHAM: Gary Clark.

5              MR. SEITZ: Your Honor, if this is a good

6  time for you, I'd like to move to admit Mr. Frank Benasutti

7  and Mr. Fred Koenig from Benasutti & Murray in

8  Philadelphia pro hac vice for this case.

9              THE COURT: All right. Happy to grant your

10  motion. Welcome back, gentlemen.

11             MR. BENASUTTI: Thank you, your Honor.

12             MR. SEITZ: Thank you, your Honor.

13             [The Court then turned on the telephone

14  conference box.]

15             THE COURT: Mr. Clark, are you on the

16  line?

17             MR. CLARK: Yes, your Honor.

18             THE COURT: Can you hear us all right?

19             MR. CLARK: Yes, I can.

20             THE COURT: All right. I believe it is

21  your application.

22             MR. CLARK: Yes, sir. May I, with

23  permission, your Honor, put you on the speaker phone so I

24  can have my hands free?

25             THE COURT: Certainly.

1    MR. CLARK:  Thank you.

2         Your Honor, I have with me here in the

3    office Jan Weir, an associate in our firm, who is of

4    record in the case.

5         Your Honor, we brought this motion because

6    we think that the nature of the discovery that they have

7    sought is more properly conducted by interrogatories.

8         When we received the notice, I called

9    personally Mr. Volpe, of Mr. Benasutti's firm, and explained

10   the situation to him and suggested that we would be very

11   willing to answer interrogatories directed to essentially

12   the same subject.  He said he'd get back to me the next

13   day.  When he did, he said discovery by interrogatory

14   wasn't acceptable because they needed the discovery before

15   the preliminary injunction hearing.

16         I then offered to turn interrogatory

17   answers around in very short order, within a matter of

18   days, so that he would have them before the preliminary

19   injunction hearing, but I was told that that solution

20   wasn't acceptable, which was rejected out of hand without

21   an explanation.

22         We are now told that the discovery that

23   they need is urgent for the preliminary injunction hearing.

24   I don't think that this argument can be taken very

25   seriously.

1    Your Honor may recall that they were

2  originally prepared to have their preliminary injunction

3  motion heard within one week's time and in such short order

4  that they obviously did not leave any time for discovery

5  before it could be heard, and when they were taking that

6  position, they had our answer in hand and they knew what

7  our denials were.  So the position they are taking now

8  that there are denials in the answer which raise new

9  matters necessary to be explored on discovery before the

10  preliminary injunction hearing I think simply is not well

11  taken.

12    I would also note, in connection with their

13  argument, that this is designed to elicit discovery for

14  preliminary injunction, that the deposition notice very

15  mechanically lists each and every denial of our answer to

16  the complaint as an area of inquiry on deposition, without

17  any apparent regard to the relevance of each and every

18  point to their motion.

19    Category No. 3 is a prime example.  They

20  want to know the basis upon which we first sued Tiegel in

21  Los Angeles asserting venue over them there, but that has

22  no relevance to the preliminary injunction motion.  And,

23  more than that, it has already been the subject of briefs,

24  affidavits, and a hearing in Los Angeles.

25    So they are certainly well aware of our

5

position in that regard and do not need the discovery
before the preliminary injunction hearing on an issue such
as that.

We think that there would also be substantial
prejudice to Globe-Union from having to give an oral
deposition on the subjects of the bases for our denials in
the answer, particularly in the time frame in which they
want to take the deposition.

We have made the point that the answer is
outside counsel's work product.  Outside counsel is
uniquely qualified to state the basis for each denial.
Those denials obviously require an application by counsel
of law as facts based upon the facts as counsel understand
them, which is a far different thing from getting discovery
of merely underlying facts after interrogatories have
identified the factual basis and the witnesses and documents
that can support them.

So we think that the deposition creates a
risk of undue waiver of privilege and work product and that
it would be more appropriate for them to take it by
interrogatory.

I would also like to make the point that the
deposition comes at a time that could not be more disruptive
for both parties.  During the week that they have noticed
the deposition to take place we have had to spend substantial

time preparing our reply brief on the transfer motion
that is before your Honor.  Today we are filing an
opposition to a stay motion that they had on file in
San Francisco in connection with that action.  On Monday,
we have due our opposition to the preliminary injunction
motion.  And on Tuesday or Wednesday we have an extensive
status report due in San Francisco for Judge Schwartzer.

They have an answer due to our amended
complaint in San Francisco on Monday or Tuesday.  They
have answers due to our interrogatories and document
production requests in San Francisco due on Tuesday or
Wednesday of next week.  They have to put together a
reply to our preliminary injunction motion, and  they have
to assist us in putting together the joint status report
next week for Judge Schwartzer.

So it seems to me that there are so many
things going on that we can't possibly also squeeze a
deposition in.

In that regard, I'd like to conclude my
remarks by saying that it is unique in my experience that
counsel will file a motion such as this motion for preliminar
injunction, seek a hearing in very short order, and then get
their memo and supporting affidavits on file, and then come
to the Court and take the position that the motion isn't
adequately supported without additional discovery, discovery

1  which would only take place now after our opposition to their

2  motion is in.

3        It seems to me that the more appropriate

4  relief that they should be getting here is a postponement

5  of their preliminary injunction motion so that all parties

6  can have adequate time and we of course can have an

7  adequate opportunity to respond in writing to whatever

8  facts they think they might uncover in discovery and

9  utilize in supporting their preliminary injunction motion.

10        Thank you.

11        THE COURT: All right. Is it Tiegel -- is

12  that the way your client's name is pronounced?

13        MR. BENASUTTI: Yes, your Honor.

14        THE COURT: Who wants to speak on behalf of

15  Tiegel?

16        MR. BENASUTTI: I will, your Honor.

17        I have a great deal of difficulty with

18  recounting of all of those facts. I think the record will

19  show that at least the one that seemed to be most important

20  to them is that we filed the motion before their answer

21  came in in this case. We filed the motion because our

22  client in my belief is being grievously injured, right at

23  this very moment --

24        MR. CLARK: Your Honor, I'm afraid we can't

25  hear at this end.

1       THE COURT:  All right.  Do you want to speak

2   up, Mr. Benasutti?

3       MR. BENASUTTI:  I believe that we are being

4   grievously injured by --

5       MR. CLARK:  Hello --

6       THE COURT:  Do you want to speak up?

7       MR. BENASUTTI:  We're trying to speak up,

8   but if you make any noise on the other end, the problem is

9   that these boxes cut out the voice.

10       MR. CLARK:  I understand that.  We have not

11   been making any noise, but we haven't been able to hear

12   anything for about the last 30 or 45 seconds.

13       MR. BENASUTTI:  All right.  I am wondering

14   if I could pick up a telephone and talk into that and then

15   talk to the Court.  In that way I wouldn't have to shout

16   at the Court.  Is that possible?

17       [The Court then moved the telephone

18   conference box.]

19       MR. BENASUTTI:  Can you hear me now?

20       MR. CLARK:  Yes, I can.

21       MR. BENASUTTI:  All right.  They moved the

22   speaker a little closer.  I'll start from the beginning.

23       First of all, we didn't have their answer,

24   your Honor, when we filed our motion for a preliminary

25   injunction.  We brought this suit to stop them from suing us

9

and to stop them from suing our customers, which is
something they are doing right now, and therefore we want
action right now, and I think we are entitled to that
action as quick as possible. So we brought the motion.

We then got their answer. Now, in the
answer they have made denials. The denials are to the
very same things that we brought the motion on. We
brought the motion on the complaint, on the substance of
the complaint. If they have made denials, the usual course
of discovery is to take depositions to find out what the
substance of those denials is, what are the facts.

Counsel just mentioned that he has a factual
basis from which lawyers raise legal conclusions. We are
entitled to the facts of those things. The fact of the
matter is, interrogatories are generally used to identify
people and to identify things or documents, which you then
go through when you get document discovery, and then down
the line you start taking depositions. We want to avoid
all that. We want to avoid all this lawsuit. All we are
saying is, if you have facts that you are going to bring
to this Court's attention at next Monday's hearing, we have
a right now to find out what they are because we are out
front with what our position is and they have no business
covering up what their position is.

The purpose of this motion, as I see it, is

simply to keep us from getting those facts before the
hearing.  If that is true, then it is simply a motion
interposed for delay because they have indicated in their
motion that they are going to supply us with all the
answers we need.

　　　　　All we have to do is ask every conceivable
question in the world and they are going to be able to
answer it by the end of next week, from what I hear now.
That is the first time, incidentally, that we have heard
that, but let's assume that it is true.

　　　　　They are going to answer every question, and
every question has to be based on everything we know now.
In other words, we find out a fact and I guess we'd have to
write them another question, and then if we find another
fact, then we'd have to write them another question.  It is
an impossible proceeding to get done.

　　　　　The way to handle that is, you bring in a
witness and you have him testify.  Unfortunately, a lot of
attorneys -- and it is all of our fault -- consider that the
Federal Rules are an apple that you can take one bite out
of before they get stopped.

　　　　　I would submit to this Court that this
client has already had their one bite this year.  In the
co-pending case that I mentioned in my papers, involving
two of the same patents that are in suit, which is pending

1   now in the Southern District of Indiana, there was an

2   Order entered by Judge Sarah Evans Barker earlier this

3   year requiring them to comply with Rule 30[b][6] and to

4   provide a witness and to prepare that witness to fully and

5   completely answer questions posed at a deposition. And the

6   Judge went on to say, "Further, Johnson is now deemed on

7   notice as to the specific areas in which the defendants will

8   be making discovery inquiries when the deposition is

9   rescheduled." She said that the Court views their past

10  conduct in this matter to be such as to warrant a further

11  reminder of the sanctions available for the abuse of

12  discovery proceedings.

13          Here they are again with the same kind of

14  tactic. They are not going to produce a witness. The only

15  witness is -- if you look at all the different papers that

16  have been filed, the only place you will see a witness

17  appear is on paper -- it is as mysterious as it is

18  ubiquitous, because every time a paper is filed here,

19  well, the witness is over here. If you file a paper out

20  there, well, the witness is over there. The latest paper

21  they filed they don't even identify the witness and then

22  say to the Court, "Pay for him to come to the deposition."

23  We don't know if he is here in Wilmington. We don't know

24  who he is.

25          The purpose of 30[b][6] and the purpose of

1    laying out, as my colleague, Mr. Koenig did in a very

2    detailed and narrow attachment to notice a deposition,

3    is saying, this is the specific question or the specific

4    issue that we want to talk to that witness about.

5         This is not a broad general 30[b][6]

6    covering every aspect of the litigation. We want to go

7    down the little areas where they have made denials of

8    specific things that we have raised, and I think we are

9    entitled to do that, and I certainly hope that the

10   Court would want to have answers to that sort of thing at

11   the time that the Court is ready to rule on a motion for

12   preliminary injunction.

13        A motion for a preliminary injunction is not

14   like a TRO. We are not coming in here and taking a swat

15   at it. We are saying that they should be put out of

16   business on this lawsuit by laches and estoppel, and they

17   are saying that their conduct up to now doesn't warrant

18   that, and I think we are entitled to investigate into what

19   the basis for that is.

20        Now, we laid out in our brief in support of

21   our motion for preliminary injunction a very detailed

22   statement of each and every paper that we are relying on to

23   support our motion. We said, On such and such a date so-and-

24   so wrote so-and-so, and that sort of thing. And I think we

25   are entitled to see what their position is before we go to

1    Court.

2              THE COURT: All right. Mr. Clark?

3              MR. CLARK: Yes, your Honor. We're not

4    trying to deny them access to the underlying facts of which

5    they are speaking. In fact, that is the reason we offered

6    to answer interrogatories. That offer was specifically

7    made by me to Mr. Volpe, who I understand is not there,

8    unfortunately, and it was rejected. To think that we are

9    now going to go ahead on a preliminary injunction motion

10   and try to conceal from the Court the basis for our denials

11   to their answer -- or denying the relief they have asked for

12   in the preliminary injunction motion is really untenable.

13              Our opposition to that motion is due on

14   Monday. We have prepared affidavits, exhibits, and of

15   course our legal memorandum in opposition to that

16   motion. It will be filed on Monday, and  counsel at that

17   point, as is proper under the local rules of the Court,

18   will be apprised of everything upon which we rely in

19   opposition to the preliminary injunction motion.

20              So it is not the fact that he is going to

21   go into the hearing on the preliminary injunction motion on

22   Monday naked, totally unadvised of the basis of our

23   denial.

24              THE COURT: Does anybody else want to say

25   anything?

1      [No response.]

2         -         THE COURT:  I view the noticed discovery

3   as being contention discovery.  It has been the consistent

4   position of this Court that a lay person shouldn't be

5   required to formulate a party's contention in response to

6   deposition questioning and that not even a lawyer should

7   be required to formulate trial strategy and contentions in

8   immediate response to questions on deposition.  And it has

9   accordingly been the consistent practice to require that

10  contention discovery, which is clearly permissible and

11  very constructive in narrowing the issues, but to confine

12  it to interrogatories to a party, period.

13              Now, we appear to have a time problem here,

14  although I am not sure whether we have a time problem or

15  not.  When did you say you are prepared -- what did you say

16  your turnaround time on interrogatories would be, Mr.

17  Clark?

18              MR. CLARK:  Your Honor, of course it would

19  depend on the number and the scope of them, but I think that

20  within a matter of -- if they were served on us, for

21  instance, on Monday, I think by Thursday or Friday we could

22  probably have answers for them, assuming that they are of a

23  scope limited to the issues raised on preliminary injunction.

24              MR. BENASUTTI:  Your Honor, I might just add

25  one thing to this, and I think I covered it in my papers,

15

but as I understand what he is saying is -- and you
mentioned the word "lay person", and I would agree with you
as to the lay person -- I was asking a lay person only for
factual positions.  For example, their Mr. Burkhart and
other people who took affidavits had factual contentions,
and it is those things I think that I was entitled to.

        But if their contention is that outside
counsel is in the possession -- and on page 9 of their
brief they say that he is in possession of all the
information with respect to what their positions are,
including what was in their mind when they did certain acts,
then it seems to me I am entitled to take the deposition
and in fact call as a witness whatever counsel that was,
because I think that when you set up the mind of counsel
as being your defense -- you know, it is just like an
advice of counsel defense; when you put up an advice of
counsel defense, you are entitled to get all of the
attorney-client privilege documents and take that counsel's
deposition.

        So I think there are maybe two questions,
if we bifurcate this thing.  First of all, if they have
facts that they are relying on, then a fact witness should
be provided.  But if they are saying that it is contentions
of counsel just on legal issues, that is one thing, but if
it is legal advice that they are hiding behind, then I think

1    that we are entitled to take his deposition, or even call

2    him as a witness at our preliminary injunction hearing.

3              THE COURT:  Let me express what I assume was

4    implicit, and that is, I'm not ruling on anything other

5    than the discovery that has been proposed and which is the

6    subject of the protective order.  It well may be that

7    Tiegel has the right to take the deposition of one or more

8    lawyers.  There are cases and issues where it is appropriate

9    to take the deposition of lawyers as fact witnesses.  I am

10   not taking any position with respect to anything other than

11   the protective order that is before me, and I am telling

12   you that as far as the subject matter as currently cast in

13   the notice of deposition, it is cast in my opinion as

14   contention discovery, and if you want to ask those kinds of

15   questions, I'm going to require that you do it by

16   interrogatory.  And I think certainly, under the circum-

17   stances, an offer to provide responses in three or four

18   days seems to me to be a reasonable undertaking.  If that

19   means you want to move back the current argument date on

20   your application for a preliminary injunction, I certainly

21   will be happy to consider that.

22             MR. BENASUTTI:  We want to go ahead with

23   that.

24             THE COURT:  Okay.

25             MR. BENASUTTI:  My only position would have

1   been that we really -- the use of the word "basis" I guess

2   is what seems to be troubling the Court, and what we

3   wanted was the factual basis. We don't care about their

4   contentions. They are already set out in their answer.

5   We know what their contentions are. I don't really have

6   too much to ask him in that regard. His contention is he

7   didn't do it, but I want to know what the basis for that

8   is, and that means, what is the factual basis for it.

9   If you interpret the word "basis" to mean "contention", I

10  already know what it is. He says -- his contention is that

11  he denies the allegation. He contends that he didn't

12  do it. So I was using the word "basis" in this context,

13  and I would limit it in any deposition that I got to factual

14  basis, not legal contention. I am not interested in his

15  legal contentions. They are already a matter of record.

16          So I would again say to the Court, if we

17  want to file interrogatories as to legal contentions, maybe

18  we can think of some, but that certainly wasn't our object

19  in preparing this notice of deposition to use the word

20  "basis" to mean "contention". Basis meant basis in

21  fact.

22          In fact, I think the notice says that

23  somebody is going to testify as to facts. I think it says

24  that, testify as to facts.

25          THE COURT: Well, if contention

18

1   interrogatories are filed on Monday, I will require a

2   response by service -- I am talking on the other side --

3   by 5:00 o'clock on Thursday. If fact discovery is noticed,

4   I will look at it and we will see whether it is

5   appropriate or not appropriate. And we will keep the

6   5:00 o'clock Monday, October 15 time for presentation of

7   both the motion for a preliminary injunction and the

8   transfer motion. Is that right?

9           [Counsel indicate in the affirmative.]

10         THE COURT: All right. Thank you.

11         MR. CLARK: Your Honor --

12         THE COURT: Yes. Is there anything else we

13   can profitably address?

14         MR. CLARK: Your Honor, in connection with

15   your Order allowing them to serve interrogatories, could it

16   require that their service of them be in such a manner that

17   it gets it in the hands of all counsel on Globe-Union's

18   side of the case on Monday, including the house counsel in

19   ▓▓▓▓▓▓▓▓ he is listed -- I guess he is not listed on

20   ▓▓▓▓▓▓▓, but I can provide that identity to counsel

21   for Tiegel.

22         MR. BENASUTTI: I wonder if we could have

23   the identity of this witness who is going to testify on

24   your behalf, the one that is mentioned in your brief.

25   Could we have the identity of that person?

1    THE COURT:  Could you hear that?

2    MR. CLARK:  I didn't, your Honor.

3    MR. BENASUTTI:  I wonder if we could have

the identity of the person listed --

5    MR. CLARK:  Joseph Gofman.  He's on the

6    pleadings of the San Francisco action.

7    MR. BENASUTTI:  Excuse me.  You didn't let

8    me finish the question.  I know he is your in-house counsel

9    in Milwaukee, along with John Ryan.  I wonder if we could

10    have the identity of the person who is otherwise unidentified

11    in your brief who is going to testify with respect to the

12    matters raised by our motion for a preliminary injunction.

13    THE COURT:  I am  not sure I understood the

14    question.

15    MR. BENASUTTI:  The question is, your

16    Honor, that they mention in their motion for a protective

17    order that they would have to bring a certain witness in to

18    testify in response to 30[b][6], and I want to know who

19    that person is because, as your Honor has indicated, we

20    could make application to take fact information from that

21    person, and I'd like to know who he is and where he is,

22    because we might want to take his deposition in the

23    meantime as to the facts.

24    THE COURT:  I don't think you can ask

25    somebody to designate a 30[b] witness when you don't know

1   what the subject matter is.  So when you -- pardon me; if

2   you can't hear, please sing out, Mr. Clark.

3           MR. CLARK:  All right, I will.  We didn't

4   hear the last bit.

5           THE COURT:  What I said was that it turns

6   out that Mr. Benasutti was asking you to designate your

7   30[b] witness as to a hypothetical deposition that he is

8   considering taking apparently in some fact areas, and I

9   told him that I didn't think I could in fairness require you

10   to designate a witness until such time as the fact area to

11   be explored in such a deposition was identified.

12           MR. BENASUTTI:  I guess I made myself

13   unclear and I apologize to the Court.  I was asking for the

14   identity of the witness which they mentioned in their

15   brief.  They mentioned a witness.  All I want is the

16   identity of the person they had in mind, not the identifying

17   of somebody who is hypothetical.  This is a person that

18   they mentioned in their brief as being in existence.  And

19   all I'd like to know is who he is or she or them.

20           THE COURT:  There isn't going to be the

21   deposition that is the subject matter of these papers, and

22   I don't want to spend time discussing something that is not

23   going to come to pass.

24           Is there anything else we can profitably

25   discuss?

21

MR. CLARK: No, your Honor, I think not.

THE COURT: Okay. Thank you.

MR. CLARK: Thank you.

MR. BENASUTTI: Thank you, your Honor.

[Hearing concluded.]

- - - -