# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

500 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

May 2, 2007

VIA ELECTRONIC FILING

The Honorable Mary Pat Thynge
United States District Court
844 North King Street
Wilmington, Delaware 19801

**REDACTED
PUBLIC VERSION**

> Re:   *Sepracor, Inc. v. Dey, L.P. and Dey, Inc.*
>        C.A. No. 06-CV-113-*** (MPT); (Consolidated)

Dear Judge Thynge:

We write in advance of the teleconference set for May 4, 2007 at 8:00 a.m. to request the Court to compel Sepracor, Inc. ("Sepracor") to produce: (1) e-mails from its backup media; and (2) letters written to former employees

## SEPRACOR'S "FIRST CLASS" E-MAIL BACKUP MEDIA

First, Dey seeks a Court order compelling Sepracor to produce responsive non-privileged e-mails from the period 1995-1999 from Sepracor's backup media. The information sought is both highly relevant and limited in scope. As Dey currently understands it,

**REDACTED**                        However, as detailed below, the information about back-up media provided to Dey has changed over time.

Sepracor's first disclosure of its backup e-mail was made on October 3, 2006.

**REDACTED**

The Honorable Mary Pat Thynge
May 2, 2007
Page 2


**REDACTED**


In response to Dey's inquiries about Sepracor's backup media,


**REDACTED**


(Ex. D, at p. 4, emphasis added.)  It is unclear from this exactly what backup media for the **REDACTED** system Sepracor actually has.  Sepracor's April 27, 2007, letter further muddies the waters:


**REDACTED**


Moreover, as the transcript of the February 28 conference with the Court makes clear, Sepracor did agree to produce the **REDACTED** backup tapes:

> MS. LEFF: . . . We've agreed that *the set of backup tapes from* **REDACTED** *which is identified at page three* and any logs of those tapes, if possible, *will be produced* within two-to-three weeks.

                    *                    *                    *

The Honorable Mary Pat Thynge
May 2, 2007
Page 3

       THE COURT: All right. So far, are you in agreement, Bill, concerning this?

       MR. DAVIS: *Yes, Your Honor*.

(Ex. B, at p. 14, emphasis added.)

**REDACTED**

Sepracor repeatedly states that the              backup media is of "limited accessibility" and argues that these e-mails will contain little of relevance:

       The expense and time that would be involved in retrieving information from Sepracor's outdated backup media cannot be justified because, *inter alia,* the files on that backup media are not likely to yield any relevant information from the periods of time relevant to any claim or defense in this case. Under these circumstances, there is no basis to require Sepracor to produce backup media.

(Ex. D, at 3.) It is unclear why Sepracor believes the email backups "are not likely to yield any relevant information from the periods of time relevant to any claim or defense in this case." The period of time in question, 1995-1999, is highly relevant to the claims and defenses in this case. The first patent-in-suit did not issue until November 1994. The remaining four patents issued after 1995 and were therefore being examined in the patent office during the period in question.

       Sepracor's concerns about the burden and cost to extract, review, and produce this "limited-accessibility" information presume that native file restoration is the only way to obtain the data. It is not. Non-native file restoration exists, and Dey understands that it is typically much less expensive and burdensome. Dey requests this Court to order production of the backup e-mails.

**P**RODUCTION OF **U**NPRIVILEGED **D**OCUMENTS

       Sepracor has asserted attorney-client privilege for its communications with James Young and other former employees. This assertion is unsupported by the law of this circuit. Third Circuit case law holds that attorney client privilege only extends to privileged communications with former employees that occurred *"during* the employment relationship." *U.S. v. Merck-Medco*, 340 F.Supp. 2d 554, 557 (E.D. Pa. 2004) (emphasis added), citing *Infosystems v. Ceridian*, 197 F.R.D. 303 (E.D. Mich. 2000); *see also U.S. v. Merck-Medco*, 2004 U.S. Dist. Lexis 23431, at *8 (Nov. 15, 2004). This limitation of attorney-client privilege comports with the long-standing policy of narrowly construing the attorney-client privilege in the Third Circuit. As recently as 2006, district courts in the Third Circuit have reiterated that because "the [attorney-client] privilege obstructs the search for the truth and because its benefits are, at best indirect and speculative, it must be 'strictly confined within the narrowest possible limits consistent with the logic of its principle.'" *In re Grand Jury Investigation*, 599 F.2d 1224, 1235 (quoting 8 *Wigmore on Evidence* § 2291, at 545 (1961)); *see Gilliland v. Geramita*, 2006 U.S. Dist. LEXIS 65546, *5 (W.D. Pa. 2006).

       Accordingly, Dey respectfully requests that this Court order Sepracor to produce any and all communications with former employees that did not occur during the period of employment.

The Honorable Mary Pat Thynge
May 2, 2007
Page 4

Respectfully,

*/s/ John G. Day*

John G. Day (I.D. #2403)

JGD: nml
180157.1

cc:   Richard D. Kirk, Esquire (via electronic mail)
      Elizabeth A. Leff, Esquire (via electronic mail)
      Jack M. Stover, Esquire (via electronic mail)
      Todd R. Walters, Esquire (via electronic mail)

# EXHIBIT A

# REDACTED

# EXHIBIT B

06-610 [1]

1                  IN THE UNITED STATES DISTRICT COURT

2                IN AND FOR THE DISTRICT OF DELAWARE

3                          - - -

SEPRACOR, INC.,

4                        :      CIVIL ACTION

            Plaintiff,     :

5                        :

          v             :

6                        :

DEY, L.P. and DEY, INC.,    :

7                        :

                      :     NO. 06-113 (***)

8           Defendants.

                        - - -

9

                    Wilmington, Delaware

10            Wednesday, February 28, 2007 at 3:02 p.m.

                   TELEPHONE CONFERENCE

11

12                        - - -

BEFORE:   HONORABLE **MARY PAT THYNGE**, U.S. MAGISTRATE JUDGE

13

                      - - -

14  APPEARANCES:

15

16          THE BAYARD FIRM

          BY:  RICHARD D. KIRK, ESQ.

17

             and

18          BUCHANAN INGERSOLL & ROONEY, PC

          BY:  WILLIAM E. DAVIS, ESQ.

19              (Miami, Florida)

20             and

21          BUCHANAN INGERSOLL & ROONEY, PC

          BY:  SUSAN M. DADIO, ESQ., and

22             BARBARA WEBB WALKER, Ph.D., ESQ.

             (Alexandria, Virginia)

23

             and

24

25                         Brian P. Gaffigan

                         Registered Merit Reporter

1    APPEARANCES: (Continued)

2

3                BUCHANAN INGERSOLL & ROONEY, PC
             BY:   JAYSON R. WOLFGANG, ESQ.
4                   (Harrisburg, Pennsylvania)

5                      Counsel for Plaintiff

6

7                ASHBY & GEDDES
             BY:   JOHN G. DAY, ESQ.
8
                      and
9
             FROMMER LAWRENCE & HAUG L.L.P.
10            BY:   JOHN S. GOETZ, ESQ.
                   (New York, New York)
11
                      and
12
             FROMMER LAWRENCE & HAUG L.L.P.
13            BY:   ELIZABETH A. LEFF, ESQ.
                   (Washington, District of Columbia)
14
                      Counsel for Defendants
15

16

17

18

19

20

21

22                      - oOo -

23               P R O C E E D I N G S

24               (REPORTER'S NOTE:  The following telephone

25    conference was held in chambers, beginning at 3:02 p.m.)

1  I'll be very pleased.

2              MS. LEFF:   Okay.

3              THE COURT:   Go ahead.

4              MS. LEFF:   Here goes.

5              We have been informed there are no backup tapes

6  from between 1989 to 1995.

7              In November 2002, the system was backed up and

8  there are between 100 to 116 backup tapes that were made.

9  There were also one set of the last backup tapes from the

10 first class e-mail system.

11             Between 1995, there was a litigation hold put

12 on in September-October '05.   That the backup tapes were

13 destroyed every 30 days pursuant to their policy.   There

14 are currently approximately 2,000 backup tapes from

15 September-October '05 to the present.   So what we've agreed

16 to at this point is that we would like to obtain the logs

17 for the 100 to the 116 backup tapes from November 2, 2002 to

18 determine if and which tapes we might want.   They estimate,

19 Sepracor's counsel estimates it will take them two-to-three

20 weeks to obtain the log and so we will wait for those.   And

21 that includes the log on the first class e-mail.

22             THE COURT:   Okay.

23             MS. LEFF:   We're also asking Sepracor to pull

24 the tapes from the 100 to 116 backup tapes now so we don't

25 have to wait an additional two-to-three weeks if we want to

1    inspect them.

2            We've agreed that the set of backup tapes from

3    first class which is identified at page three and any logs

4    of those tapes, if possible, will be produced within

5    two-to-three weeks.

6            THE COURT:  As I to understand, Elizabeth, on

7    the first tape issue, the 100 to the 116, that Sepracor has

8    agreed to pull the tapes now?

9            MS. LEFF:  Yes.

10           THE COURT:  Okay.

11           MS. LEFF:  But we are not going to inspect them

12   right away.

13           THE COURT:  I understand that.  I understand.

14           MS. LEFF:  Okay.  And then, finally, they

15   reserve the right to obtain the logs for and to inspect the

16   2,000 plus backup tapes which have been retained since

17   September to October '05 because of the litigation hold.  We

18   are not going to inspect either the logs or the tapes now

19   but we reserve our right to do so later in the litigation,

20   if necessary.

21           THE COURT:  All right.  So far, are you in

22   agreement, Bill, concerning this?

23           MR. DAVIS:  Yes, Your Honor.  I just would

24   like to point out, and I have explained it to counsel, using

25   of the term "log," what that will include is a document

1   which reflects the date range of the tapes and probably a

2   description of the systems which were backed up on the

3   tapes.  I don't want to suggest that there is any more

4   information than that at this point and the agreement is to

5   look at them and see where we are.

6           THE COURT:  All right.  And you're in agreement

7   with that understanding, Elizabeth?

8           MS. LEFF:  Yes, I am, Your Honor.

9           THE COURT:  All right.

10          MR. DAVIS:  There was one other matter, Your

11  Honor, that we had raised but counsel for Dey has agreed

12  to provide us with a definitive response to our various

13  correspondence regarding discovery issues by March the 9th.

14          THE COURT:  All right.  I think that dealt with

15  your letter of -- let me double-check.

16          MR. DAVIS:  There was a letter of February 22nd,

17  which was the follow-up letter to a number of letters, but

18  counsel has agreed with us that they will provide us a

19  definitive response to the issues we've raised in those

20  letters.

21          THE COURT:  And those various letters are

22  Exhibits A through D?

23          MR. DAVIS:  That is correct, Your Honor.

24          THE COURT:  All right.  Fine.  Is there anything

25  else, counsel, that we need to discuss or put on the record

# EXHIBIT C

# REDACTED

# EXHIBIT D

# REDACTED

# EXHIBIT E

# REDACTED